

 No Items in Cart

**Civil Docket Report**

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 190800135 |
| **Case Caption:** | D. VS BOY SCOUTS OF AMERICA ETAL |
| **Filing Date:** | Monday , August 05th, 2019 |
| **Court:** | MAJOR JURY-STANDARD |
| **Location:** | City Hall |
| **Jury:** | JURY |
| **Case Type:** | PERSONAL INJURY - OTHER |
| **Status:** | LISTED FOR SETTLEMENT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

| Event | Date/Time | Room | Location | Judge |
|---|---|---|---|---|
| PROJECTED SETTLEMENT CONF DATE | 07-DEC-2020 09:00 AM | City Hall | Courtroom 285 | ANDERS, DANIEL J |
| PROJECTED PRE-TRIAL CONF. DATE | 01-FEB-2021 09:00 AM | City Hall | Courtroom 285 | ANDERS, DANIEL J |
| PROJECTED TRIAL DATE | 01-MAR-2021 09:00 AM | City Hall | Courtroom 285 | ANDERS, DANIEL J |

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | EISENBERG, STEWART J |
| **Address:** EISENBERG ROTHWEILER WINKLER EISENBERG & JECK PC | | **Aliases:** *none* | | |

| | | | | |
|---|---|---|---|---|
| | 1634 SPRUCE ST<br>PHILADELPHIA PA<br>19103<br>(215)546-6636 | | | |

| 2 | 1 | | PLAINTIFF | D, S |
|---|---|---|---|---|
| **Address:** | NONE GIVEN<br>WILKES-BARRE PA<br>18704 | **Aliases:** | *none* | |

| 3 | 9 | | DEFENDANT | BOY SCOUTS OF<br>AMERICA |
|---|---|---|---|---|
| **Address:** | 1325 W WALNUT HILL<br>LN<br>SUITE 406<br>IRVING TX 75038 | **Aliases:** | *none* | |

| 4 | 9 | | DEFENDANT | PENN MOUNTAINS<br>COUNCIL BOY SCOUTS<br>OF AMERICA |
|---|---|---|---|---|
| **Address:** | KINGSTON<br>CORNERS BUILDING<br>KINGSTON PA 18704 | **Aliases:** | *none* | |

| 5 | 8 | | DEFENDANT | ANTOSH, PAUL |
|---|---|---|---|---|
| **Address:** | 6 CRESCENT DR<br>WILKES-BARRE PA<br>18705 | **Aliases:** | *none* | |

| 6 | 1 | | ATTORNEY FOR<br>PLAINTIFF | SCHWARTZ, JOSHUA B |
|---|---|---|---|---|
| **Address:** | Eisenberg, Rothweiler,<br>Winkler<br>Eisenberg&Jeck, P.C.<br>1634 Spruce Street<br>PHILADELPHIA PA<br>19103<br>(215)546-6636 | **Aliases:** | *none* | |

| 7 | | 05-JAN-2020 | TEAM LEADER | NEW, ARNOLD L |
|---|---|---|---|---|
| **Address:** | 606 CITY HALL PHILADELPHIA PA 19107 (215)686-7260 | **Aliases:** | *none* | |

| 8 | | | ATTORNEY FOR DEFENDANT | PRICE, JOSEPH G |
|---|---|---|---|---|
| **Address:** | 612 SPRUCE STREET SCRANTON PA 18503 (570)880-0612 | **Aliases:** | *none* | |

| 9 | | | ATTORNEY FOR DEFENDANT | RICHARDS, JOSHUA W |
|---|---|---|---|---|
| **Address:** | SAUL EWING ARNSTEIN & LEHR LLP 1500 MARKET ST., 38TH FLOOR CENTRE SQUARE WEST PHILADELPHIA PA 19102 (215)972-7737 | **Aliases:** | *none* | |

| 10 | 9 | | ATTORNEY FOR DEFENDANT | SMITH, MATTHEW J |
|---|---|---|---|---|
| **Address:** | SAUL EWING LLP 1500 MARKET STREET 38TH FLOOR PHILADELPHIA PA 19102 (215)972-7535 | **Aliases:** | *none* | |

| 11 | 9 | | ATTORNEY FOR DEFENDANT | ODEA JR, JOSEPH F |
|---|---|---|---|---|
| **Address:** | 3800 CENTRE SQUARE WEST PHILADELPHIA PA 19102 | **Aliases:** | *none* | |

| 12 | 8 | | ATTORNEY FOR DEFENDANT | CORBETT, TIMOTHY |
|---|---|---|---|---|
| **Address:** | 612 SPRUCE STREER SCRANTON PA 18503 (570)880-0612 | **Aliases:** | *none* | |
| | | | | |
| 13 | | | TEAM LEADER | ANDERS, DANIEL J |
| **Address:** | ROOM 292 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

### Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount | Approval/ Entry Date |
|---|---|---|---|---|
| 05-AUG-2019 03:40 PM | ACTIVE CASE | | | 05-AUG-2019 03:53 PM |
| **Docket Entry:** | E-Filing Number: 1908008495 | | | |
| | | | | |
| 05-AUG-2019 03:40 PM | COMMENCEMENT CIVIL ACTION JURY | EISENBERG, STEWART J | | 05-AUG-2019 03:53 PM |
| **Documents:** | Click link(s) to preview/purchase the documents  Final Cover | **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 05-AUG-2019 03:40 PM | COMPLAINT FILED NOTICE GIVEN | EISENBERG, STEWART J | | 05-AUG-2019 03:53 PM |
| **Documents:** | Click link(s) to preview/purchase the documents  SD Complaint.pdf  SD Verification.pdf  Exhibit A - SD Complaint.pdf | **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | | | |

| 05-AUG-2019 03:40 PM | JURY TRIAL PERFECTED | EISENBERG, STEWART J | | 05-AUG-2019 03:53 PM |
|---|---|---|---|---|
| **Docket Entry:** | 12 JURORS REQUESTED. | | | |

| 05-AUG-2019 03:40 PM | WAITING TO LIST CASE MGMT CONF | EISENBERG, STEWART J | | 05-AUG-2019 03:53 PM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 06-AUG-2019 08:36 AM | ENTRY OF APPEARANCE-CO COUNSEL | SCHWARTZ, JOSHUA B | | 06-AUG-2019 09:07 AM |
|---|---|---|---|---|
| **Documents:** | ⚠ Click link(s) to preview/purchase the documents  EOA-JBS.pdf | **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF JOSHUA B SCHWARTZ AS CO-COUNSEL FILED. (FILED ON BEHALF OF S. D.) | | | |

| 13-AUG-2019 08:10 AM | AFFIDAVIT OF SERVICE FILED | SCHWARTZ, JOSHUA B | | 13-AUG-2019 09:34 AM |
|---|---|---|---|---|
| **Documents:** | ⚠ Click link(s) to preview/purchase the documents  Affidavit of Service - SD - BSA.pdf | **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON BOY SCOUTS OF AMERICA BY CERTIFIED MAIL ON 08/10/2019 FILED. (FILED ON BEHALF OF S. D.) | | | |

| 28-AUG-2019 11:39 AM | SHERIFF'S SERVICE | SCHWARTZ, JOSHUA B | | 28-AUG-2019 11:43 AM |
|---|---|---|---|---|
| **Documents:** | ⚠ Click link(s) to preview/purchase the documents  COS- Penn Mountains Council.pdf | **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | DEPUTIZED SERVICE OF PLAINTIFF'S COMPLAINT UPON PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA BY SHERIFF OF LACKAWANNA COUNTY ON 08/15/2019. (FILED ON BEHALF OF S. D.) | | | |

| 29-AUG-2019 03:55 PM | PRAECIPE TO REINSTATE CMPLT | SCHWARTZ, JOSHUA B | | 29-AUG-2019 03:56 PM |
|---|---|---|---|---|
| **Documents:** | 🔗 Click link(s) to preview/purchase the documents<br>Praecipe to Reinstate Complaint - SD - BSA.pdf | | **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF S. D.) | | | |
| | | | | |
| 13-SEP-2019 02:46 PM | PRAECIPE TO REINSTATE CMPLT | SCHWARTZ, JOSHUA B | | 13-SEP-2019 02:48 PM |
| **Documents:** | 🔗 Click link(s) to preview/purchase the documents<br>Praecipe to Reinstate Complaint - SD.pdf | | **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF S. D.) | | | |
| | | | | |
| 03-OCT-2019 11:19 AM | ENTRY OF APPEARANCE | PRICE, JOSEPH G | | 03-OCT-2019 11:21 AM |
| **Documents:** | 🔗 Click link(s) to preview/purchase the documents<br>Antosh, Paul Entry of Appearance Case ID 190800135.pdf | | **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF JOSEPH G PRICE FILED. (FILED ON BEHALF OF PAUL ANTOSH) | | | |
| | | | | |
| 07-OCT-2019 09:14 AM | SHERIFF'S SERVICE | SCHWARTZ, JOSHUA B | | 07-OCT-2019 09:42 AM |
| **Documents:** | 🔗 Click link(s) to preview/purchase the documents<br>Affidavit of Sheriff Service - Antosh.pdf | | **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | DEPUTIZED SERVICE OF PLAINTIFF'S COMPLAINT UPON PAUL ANTOSH BY SHERIFF OF LACKAWANNA COUNTY ON 09/30/2019. (FILED ON BEHALF OF S. D.) | | | |
| | | | | |
| 07-OCT-2019 04:14 PM | LISTED FOR CASE MGMT CONF | | | 07-OCT-2019 04:14 PM |
| **Docket Entry:** | *none.* | | | |
| | | | | |

| 08-OCT-2019 05:04 PM | ENTRY OF APPEARANCE | RICHARDS, JOSHUA W | | 09-OCT-2019 08:48 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents BSA-SD - Entry of Appearance (Joshua Richards).pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF JOSHUA W RICHARDS FILED. (FILED ON BEHALF OF PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA AND BOY SCOUTS OF AMERICA) | | | |

| 08-OCT-2019 05:11 PM | ENTRY OF APPEARANCE | SMITH, MATTHEW J | | 09-OCT-2019 08:48 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents BSA-SD - Entry of Appearance (Matthew Smith).pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF MATTHEW J SMITH FILED. (FILED ON BEHALF OF PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA AND BOY SCOUTS OF AMERICA) | | | |

| 08-OCT-2019 05:14 PM | ENTRY OF APPEARANCE | ODEA JR, JOSEPH F | | 09-OCT-2019 08:50 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents BSA-SD - Entry of Appearance (Joseph Odea).pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF JOSEPH F ODEA JR FILED. (FILED ON BEHALF OF PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA AND BOY SCOUTS OF AMERICA) | | | |

| 08-OCT-2019 05:18 PM | ANSWER TO COMPLAINT FILED | ODEA JR, JOSEPH F | | 09-OCT-2019 09:00 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents BSA-SD - BSA Answer, New Matter and CC.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ANSWER WITH NEW MATTER AND CROSSCLAIM TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF BOY SCOUTS OF AMERICA) | | | |

| 08-OCT-2019 05:23 PM | ANSWER TO COMPLAINT FILED | ODEA JR, JOSEPH F | | 09-OCT-2019 09:00 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents BSA-SD - Penn Mountains Council Answer, New Matter and CC.pdf | | Click HERE to purchase all documents related to this one docket entry | |

| | | | | |
|---|---|---|---|---|
| **Docket Entry:** | ANSWER WITH NEW MATTER AND CROSSCLAIM TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA) | | | |
| | | | | |
| 09-OCT-2019 12:30 AM | NOTICE GIVEN | | | 09-OCT-2019 12:30 AM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 11-OCT-2019 12:30 AM | NOTICE GIVEN | | | 11-OCT-2019 12:30 AM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 28-OCT-2019 12:25 PM | REPLY TO NEW MATTER | SCHWARTZ, JOSHUA B | | 28-OCT-2019 12:25 PM |
| **Documents:** | Click link(s) to preview/purchase the documents<br>Reply to NM - Penn Mountains Council.pdf | Click HERE to purchase all documents related to this one docket entry | | |
| **Docket Entry:** | REPLY TO NEW MATTER OF PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA FILED. (FILED ON BEHALF OF S D) | | | |
| | | | | |
| 28-OCT-2019 12:28 PM | REPLY TO NEW MATTER | SCHWARTZ, JOSHUA B | | 28-OCT-2019 12:28 PM |
| **Documents:** | Click link(s) to preview/purchase the documents<br>Reply to NM - BSA.pdf | Click HERE to purchase all documents related to this one docket entry | | |
| **Docket Entry:** | REPLY TO NEW MATTER OF BOY SCOUTS OF AMERICA FILED. (FILED ON BEHALF OF S D) | | | |
| | | | | |
| 07-NOV-2019 10:03 AM | ENTRY OF APPEARANCE-CO COUNSEL | CORBETT, TIMOTHY | | 07-NOV-2019 10:06 AM |
| **Documents:** | Click link(s) to preview/purchase the documents<br>Antosh, Paul Entry of Appearance Case ID 190800135 - Tim Corbett (11.07.2019).pdf | Click HERE to purchase all documents related to this one docket entry | | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF TIMOTHY CORBETT AS CO-COUNSEL FILED. (FILED ON BEHALF OF PAUL ANTOSH) | | | |
| | | | | |

| 08-NOV-2019 07:58 AM | ANSWER TO COMPLAINT FILED | PRICE, JOSEPH G | | 08-NOV-2019 09:58 AM |
|---|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Antosh Paul Answer to Plaintiff S.D. Complaint and New Matter.pdf | | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | ANSWER WITH NEW MATTER TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF PAUL ANTOSH) | | | |
| | | | | |
| 08-NOV-2019 10:51 AM | REPLY TO CROSSCLAIM | PRICE, JOSEPH G | | 08-NOV-2019 11:46 AM |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Antosh Paul Reply to Boys Scouts of America Cross-Claim.pdf<br>Antosh Paul Reply to Penn Mountain Council Cross-Claim.pdf | | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | REPLY TO CROSSCLAIM OF PENN MOUNTAINS COUNCIL BOY SCOUTS OF AMERICA AND BOY SCOUTS OF AMERICA FILED. (FILED ON BEHALF OF PAUL ANTOSH) | | | |
| | | | | |
| 09-NOV-2019 12:30 AM | NOTICE GIVEN | | | 09-NOV-2019 12:30 AM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 14-NOV-2019 02:59 PM | CASE MGMT CONFERENCE COMPLETED | SULLIVAN, JOAN | | 14-NOV-2019 02:59 PM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 14-NOV-2019 02:59 PM | CASE MANAGEMENT ORDER ISSUED | | | 14-NOV-2019 02:59 PM |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>CMOIS_28.pdf | | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | CASE MANAGEMENT ORDER STANDARD TRACK - AND NOW, 14-NOV-2019, it is Ordered that: 1. The case management and time standards adopted for standard track cases shall be applicable to this case and are hereby incorporated into this Order. 2. All discovery on the above matter shall be completed not later than 02-NOV-2020. 3. Plaintiff shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial to all other parties not later | | | |

than 02-NOV-2020. 4. Defendant and any additional defendants shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial not later than 07-DEC-2020. 5. All pre-trial motions shall be filed not later than 07-DEC-2020. 6. A settlement conference may be scheduled at any time after 07-DEC-2020. Prior to the settlement conference all counsel shall serve all opposing counsel and file a settlement memorandum containing the following: (a) A concise summary of the nature of the case if plaintiff or of the defense if defendant or additional defendant;(b) A statement by the plaintiff or all damages accumulated, including an itemization of injuries and all special damages claimed by categories and amount; (c) Defendant shall identify all applicable insurance carriers, together with applicable limits of liability. 7. A pre-trial conference will be scheduled any time after 02-FEB-2021. Fifteen days prior to pre-trial conference, all counsel shall serve all opposing counsel and file a pre-trial memorandum containing the following: (a) A concise summary of the nature of the case if plaintiff or the defense if defendant or additional defendant; (b) A list of all witnesses who may be called to testify at trial by name and address. Counsel should expect witnesses not listed to be precluded from testifying at trial; (c) A list of all exhibits the party intends to offer into evidence. All exhibits shall be pre-numbered and shall be exchanged among counsel prior to the conference. Counsel should expect any exhibit not listed to be precluded at trial; (d) Plaintiff shall list an itemization of injuries or damages sustained together with all special damages claimed by category and amount. This list shall include as appropriate, computations of all past lost earnings and future lost earning capacity or medical expenses together with any other unliquidated damages claimed; and (e) Defendant shall state its position regarding damages and shall identify all applicable insurance carriers, together with applicable limits of liability; (f) Each counsel shall provide an estimate of the anticipated length of trial. 8. It is expected that the case will be ready for trial 01-MAR-2021, and counsel should anticipate trial to begin expeditiously thereafter. 9. All counsel are under a continuing obligation and are hereby ordered to serve a copy of this order upon all unrepresented parties and upon all counsel entering an appearance subsequent to the entry of this order. ...BY THE COURT: ARNOLD NEW, J.

| 14-NOV-2019 02:59 PM | LISTED FOR SETTLEMENT CONF | | | 14-NOV-2019 02:59 PM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 14-NOV-2019 02:59 PM | LISTED FOR PRE-TRIAL CONF | | | 14-NOV-2019 02:59 PM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 14-NOV-2019 02:59 PM | LISTED FOR TRIAL | | | 14-NOV-2019 02:59 PM |
|---|---|---|---|---|

| Docket Entry: | *none.* | | | |
| --- | --- | --- | --- | --- |
| | | | | |
| 14-NOV-2019 02:59 PM | NOTICE GIVEN UNDER RULE 236 | | | 15-NOV-2019 11:53 AM |
| **Docket Entry:** | NOTICE GIVEN ON 15-NOV-2019 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 14-NOV-2019. | | | |
| | | | | |
| 27-NOV-2019 09:26 AM | REPLY TO NEW MATTER | SCHWARTZ, JOSHUA B | | 27-NOV-2019 10:34 AM |
| **Documents:** | Click link(s) to preview/purchase the documents Reply to NM of Paul Antosh.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | REPLY TO NEW MATTER OF PAUL ANTOSH FILED. (FILED ON BEHALF OF S D) | | | |

▶ Case Description   ▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

Search Home

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**AUGUST 2019**

E-Filing Number: 1908008495

**000135**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| S. D. | BOY SCOUTS OF AMERICA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| NOT GIVEN WILKES-BARRE PA 18704 | 1325 WEST WALNUT HILL LANE SUITE 406 IRVING TX 75038 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | KINGSTON CORNERS BUILDING KINGSTON PA 18704 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PAUL ANTOSH |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 6 CRESCENT DRIVE WILKES-BARRE PA 18705 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 3 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions | | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less [X] More than $50,000.00 | [ ] Arbitration [X] Jury [ ] Non-Jury [ ] Other: | [ ] Mass Tort [ ] Savings Action [ ] Petition | [ ] Commerce [ ] Minor Court Appeal [ ] Statutory Appeals | [ ] Settlement [ ] Minors [ ] W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 20 - PERSONAL INJURY - OTHER |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| FILED PRO PROTHY AUG 05 2019 A. SILIGRINI | YES       NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: S. D.

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| STEWART J. EISENBERG | EISENBERG ROTHWEILER WINKLER EISENBERG & JECK PC 1634 SPRUCE ST PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215) 546-6636 | (215) 546-0118 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 32151 | marykate@erlegal.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| STEWART EISENBERG | Monday, August 05, 2019, 03:40 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**
By:   Stewart J. Eisenberg, Esquire
        Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL


Filed and Attested by the
Office of Judicial Records

| S.D. | : | COURT OF COMMON PLEAS |
|---|---|---|
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America | : | NO. |
| 1325 West Walnut Hill Lane | : | |
| Suite 406 | : | MAJOR JURY TRIAL |
| Irving, TX 75038 | : | |
| | : | |
| and | : | |
| | : | |
| Penn Mountains Council, Boy Scouts of | : | |
| America | : | |
| Kingston Corners Building | : | |
| Kingston, Pennsylvania | : | |
| | : | |
| and | : | |
| | : | |
| Paul Antosh | : | |
| 6 Crescent Drive | : | |
| Wilkes-Barre, Pennsylvania 18705, | : | |
| | : | |
| Defendants. | : | |

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte |

(20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Philadelphia Bar Association
Lawyer Referral
And Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

(20) días de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pude decider a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar done se puede conseguir asistencia legal.

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

2

Case ID: 190800135

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:    Stewart J. Eisenberg, Esquire
       Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | TERM, 2019 |
| | : | |
| v. | : | |
| | : | NO. |
| Boys Scouts of America | : | |
| 1325 West Walnut Hill Lane | : | MAJOR JURY TRIAL |
| Suite 406 | : | |
| Irving, TX 75038 | : | |
| | : | |
| and | : | |
| | : | |
| Penn Mountains Council, Boy Scouts of | : | |
| America | : | |
| Kingston Corners Building | : | |
| Kingston, Pennsylvania | : | |
| | : | |
| and | : | |
| | : | |
| Paul Antosh | : | |
| 6 Crescent Drive | : | |
| Wilkes-Barre, Pennsylvania 18705, | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

AND NOW COMES the Plaintiff, S.D., by and through his legal counsel, Stewart J. Eisenberg, Esquire and Joshua B. Schwartz, Esquire of the law firm of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., and avers the following:

## I.   INTRODUCTION:

1.     This Complaint is based on the childhood sexual abuse of Plaintiff, S.D. ("S.D." or "Plaintiff") caused by the negligent, willful, wanton, reckless and tortious acts and omissions of Defendant, Boy Scouts of America, Penn Mountains Council, Boy Scouts of America and Paul Antosh, formerly an Assistant Scoutmaster.

2.     The Boy Scouts of America (hereinafter sometimes referred to as "BSA") is the largest youth organization in the United States with approximately five million members.  BSA was chartered in 1910 by an Act of Congress.  An estimated 20% of American boys have had contact with scouting, either as members or by attending scout functions.

3.     Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction.  Millions of parents and scouts have placed their trust in the BSA.

4.     Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days.  Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters.

## II.   PARTIES:

5.    S.D., is an adult citizen and resident of the Commonwealth of Pennsylvania and currently resides in Luzerne County, Pennsylvania.

6.    At all times relevant hereto, S.D. was a young boy living with his parents in Luzerne County, Pennsylvania and was enrolled in the BSA scouting programs.

7.    At all times relevant hereto, Defendant, Boy Scouts of America, was and is a congressionally chartered corporation with a principal place of business at 1325 West Walnut Hill Lane, Suite 406, Irving, Texas.  BSA is authorized to do business and is doing business in the Commonwealth of Pennsylvania and in the City and County of Philadelphia, through various local and regional boy scout organizations and councils.

8.    Defendant, Boy Scouts of America, operates, promotes, oversees, guides, sets standards and establishes policies, protocols and procedures for youth organizations nationally through various local, state and regional organizations including those of Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

9.    Defendant, Boy Scouts of America, develops programs, sets and maintains quality standards in training, leadership selection, uniforms, registration records, literature development, advanced requirements for youth organizations nationally through various local, state and regional organizations, including those of Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

10.    Defendant, Boy Scouts of America grants charters to local councils and organizations to operate and conduct boy scout activities within their geographic areas, including Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

11.    At all times relevant hereto, Defendant, Penn Mountains Council, Boy Scouts of America (hereinafter sometimes referred to as "Penn Mountains Council") was and is a

Pennsylvania non-profit corporation with a business address of Kingston Corners Building, Kingston, Pennsylvania and was and is authorized to do business in the Commonwealth of Pennsylvania and the City and County of Luzerne, Pennsylvania.

12.     Penn Mountains Council, like all BSA councils in the United States was at all relevant times an agent of the Boy Scouts of America.

13.     Penn Mountains Council, like all chartered BSA councils, is and was controlled and directed by the BSA to such a degree, that it is the alter ego of the Boy Scouts of America.

14.     Penn Mountains Council's separate corporate status should be disregarded and its assets treated as the property of the parent corporation, Boy Scouts of America.

15.     For example, and for illustrative purposes only, Penn Mountains Council may only hire individuals from a list of approved candidates provided by the Boy Scouts of America; Penn Mountains Council's existence as a scouting organization is wholly dependent on BSA. Its charter can be revoked by BSA at any time with or without cause; Penn Mountains Council is co-jointly insured with the BSA on its CGL policies which premiums are paid by BSA.

16.     On information and belief, Penn Mountains Council holds legal title to real estate and personal property for and on behalf of the BSA.  Plaintiff asks the court to impose a constructive trust on Penn Mountains Council's assets to prevent unjust enrichment to BSA which has disguised its beneficial ownership of assets held in the name of Penn Mountains Council.

17.     Upon information and belief, Penn Mountains Council was and is a chartered organization of the Boy Scouts of America.

Case ID: 190800135

18.     Penn Mountains Council, as a chartered organization of the Boy Scouts of America, administers the programs, guidelines and policies of the Defendant, Boy Scouts of America in and around Luzerne County, Pennsylvania region.

19.     The Boy Scouts of America and the Penn Mountains Council Defendants will be referred to hereinafter collectively as "Boy Scout Defendants".

20.     At all times relevant hereto, the Boy Scout Defendants acted by and through their duly authorized agents, representatives, volunteers, servants and/or employees.

21.     At all times relevant hereto, the Boy Scout Defendants operated various programs for young boys, including S.D. and authorized, approved, ratified and selected adults to serve as Scoutmasters and Assistant Scoutmasters.

22.     The Boy Scout Defendants, acting by and through their duly authorized agents, operated and/or controlled a boy scout troop in Luzerne County, Pennsylvania, known as Troop 100.

23.     At all times relevant hereto, then minor S.D. was a member of Boy Scout Troop 100 of the Penn Mountains Council.

24.     At all times relevant hereto, Defendant, Paul Antosh ("Defendant Antosh"), was an Assistant Scoutmaster for Troop 100 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including S.D., in morality, patriotism and various life skills who resides at 6 Crescent Drive, Wilkes Barre, Pennsylvania 18705.

25.     At all times relevant hereto, Defendant Antosh served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy

Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

III.   **FACTS:**

26.   At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, Defendant Antosh sought and gained the then minor S.D.'s trust, friendship, admiration and obedience. As a result, S.D. was conditioned to comply with Defendant Antosh's direction and to look to him as an authority figure.

27.   At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that the BSA was a moral and safe place for young boys, Defendant Antosh enticed, induced, directed, coerced and forced S.D. to engage in deviant sexual acts with him.

28.   At all times relevant hereto, Defendant Antosh utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor S.D. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor S.D. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

29.   A reasonable person would not have suspected or investigated the BSA or the Penn Mountains Council before having learned of the widespread pedophilia allegations leveled against the Boy Scouts of America through a television outreach effort in or about May of 2019.

30.   This television outreach effort and subsequent discussions with legal counsel gave S.D. a reason to investigate, for the first time, that the conspiracy and fraud committed by the Boy Scout Defendants set forth herein was the cause of S.D.'s harm.

31. Before seeing the television outreach efforts and speaking with legal counsel, S.D. did not realize that the Boy Scout Defendants had known about their widespread pedophilia epidemic and did not know of their efforts to conceal it.

32. In or around May, 2019, legal counsel advised S.D. that over 350 survivors of Boy Scout childhood sexual abuse had retained their law firm to investigate cases against the Boy Scouts of America.

33. Upon learning of the Boy Scout Defendants pedophilia epidemic and the Boy Scout Defendants' efforts to cover-up this epidemic, S.D. became aware for the first time that he may be able to bring a law suit against the Boy Scout Defendants pursuant to the allegations set forth herein.

34. Despite the Boy Scouts of America being forced to publicly disclose their hereinafter referenced Ineligible Volunteer Files, it is apparent that the Boy Scout Defendants continue to hide the true nature of their cover-up and the extent of the pedophilia epidemic within their organizations because the vast majority of the new victims coming forward involve claims of abuse at the hands of pedophiles who are not yet identified by the Boy Scouts of America in their publicly released Ineligible Volunteer Files. Upon information and belief, there are over three-hundred and fifty persons who have been identified by S.D.'s counsel's clients that have not been included in BSA's Ineligible Volunteer Files.

35. Therefore, upon information and belief, the Boy Scout Defendants continue to perpetuate a continuing and serious conspiracy to conceal and cover-up many of the abusers in BSA scout troops throughout the United States and overseas

36. Moreover, no reasonable person could have suspected, much less investigated, that the Boy Scout Defendants were a cause of his harm until more public reports were made

known of the extent of the BSA defendants' widespread pedophilia problem within their ranks. As set forth herein, the Boy Scout defendants suppressed their conduct from public view within their secret archive as well as through a continued and systematic attempt to coverup the pedophilia problem from public view through the present date.

37.    Unlike Grand Jury reports that have been publicly disseminated in Pennsylvania concerning sexual abuse scandals within various Archdioceses across the state, no such Grand Jury, police force, district attorney's office or governmental agency has investigated the Boy Scout Defendants to date with regard to their child sexual abuse scandal and cover-up.

38.    In fact, none of the Commonwealth's prosecutors, investigators or child protection departments have discovered the Boy Scout Defendants' systematic conduct over the past century.  Thus, it would not be fair to conclude that SD's similar failure to discover the conduct was unreasonable, as a matter of law.

39.    BSA knew for decades that sexual predators of boys had infiltrated scouting. BSA knew or should have known the dangers that pedophiles presented to boy scouts and either knew or should have known the danger that Defendant Antosh presented to children, including S.D., but instead ignored that danger and permitted him and other pedophiles in scouting to prey upon young boys, including then minor S.D.

40.    Since approximately 1919, the BSA has maintained a group of files known as the red files, perversion files or ineligible volunteer files.

41.    BSA's own internal "ineligible volunteer files" collected and maintained in secrecy for 70 years, revealed that scouting is a "pedophile magnet", in that removed pedophiles were often able to reenter scouting at other locations.

42.    BSA's confidential records demonstrate both its awareness of scouting's attraction to pedophiles, and also the distinctive characteristics of scouting that render scouts particularly susceptible to pedophiles.

43.    BSA knew or should have known that scouting attracts pedophiles, in part, because (a) scouting provides the pedophile access to boys alone and away from their parents in secluded settings like camp outs and overnight hikes; (b) scouting provides opportunities for the pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him; (c) the pedophile scout leader can, depending on the pedophile's age preference, volunteer for and be sure to have access only to boys of a certain age; (d) BSA conditions boys to the concept of strict obedience to the scout leader in a bonding mechanism that pedophiles crave; (e) BSA promotes the idea of secret ceremonies, rituals and loyalty oaths, all of which facilitate the pedophiles efforts to keep his victims silent and compliant; (f) at the time of the abuse, BSA conducted no criminal or other background checks on these volunteers or even suggested such was advisable.

44.    BSA was aware that it had ejected thousands of pedophiles from its ranks of leadership in local scout troops and failed to inform the scouts and their parents of that fact.

45.    BSA knew or should have known that if they advised parents of this statistical phenomenon, parents might well remove their boys from scouting, thus depriving BSA of millions of dollars of income.

46.    BSA knew or should have known that its "ineligible volunteers" system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as intended, was flawed and, in many cases, ineffective. Despite that knowledge, BSA

did nothing to educate its scouts and their parents of the ineffectiveness or the enormity of the pedophile problem, or did it take action to correct its screening and/or educational system.

47.   Defendant Antosh was an Assistant Scoutmaster of the Boy Scout Troop 100 in Luzerne, Pennsylvania, and in his capacity, Defendant Antosh exercised a position of authority over S.D. with the knowledge and consent of the Boy Scout Defendants.

48.   The Penn Mountains Council, Boy Scout Troop 100, was controlled, supervised and sponsored by the BSA.

49.   Serving as a BSA Assistant Scoutmaster, Defendant Antosh actively groomed young boys under his charge for later sexual molestation, including the then minor S.D.  The Boy Scout Defendants knew or should have known that Defendant Antosh posed a sexual threat to young boys including S.D.

50.   Then minor S.D. had a confidential relationship with the Boy Scout Defendants, individually.  Due to his status as a minor, and his reliance upon the Boy Scout Defendants, in part because of a lack of a relationship with his own father, a confidential relationship existed between S.D. and the Boy Scout Defendants as they purported to act with S.D.'s interest in mind.

51.   S.D. looked to the Boy Scout Defendants and Defendant Antosh as a leader and someone who must be trusted and obeyed.

52.   The power differential between then minor S.D. and Assistant Scoutmaster Antosh made it difficult for S.D. to refuse the unwelcomed, sexual advances of Defendant Antosh and report such events to his parents or authorities.

53.   Minors, such as S.D., participating in the Boy Scout Defendants' programing, which included overnights away from their parents, were therefore dependent upon the BSA Defendants for protection and the BSA Defendants were responsible to provide it.

54.    This vulnerability required that the Boy Scout Defendants be vigilant and take all appropriate and proper precautions so that minors who are participating in their programing are doing so in an environment free from the threat of sexual abuse.

55.    A special relationship of trust and confidence existed between then minor S.D. and the Boy Scout Defendants.

56.    His active and regular participation in camping trips and other activities were provided through Boy Scout Defendants. S.D. was strongly encouraged by the Boy Scout Defendants to participate in these camping trips and activities. The Boy Scout Defendants knew or should have known of the specific danger that Defendant Antosh posed previous to the abuse of S.D. The Boy Scout Defendants taught S.D. to respect and trust his Assistant Scoutmaster and the Boy Scout Defendants, generally.

57.    S.D.'s parents trusted Defendant Antosh enough to allow him to take their minor child to overnight camping trips and individual day trips. On these scouting trips, S.D.'s parents entrusted Defendant Antosh and the Boy Scout Defendants to ensure S.D.'s safety and act as his caretaker.

58.    This special relationship between then minor S.D. and the Boy Scout Defendants imposed affirmative duties upon the Boy Scout Defendants to act in the best interest of then minor S.D.

59.    As set forth herein, the Boy Scout Defendants breached that duty to serve in the best interest of S.D. The Boy Scout Defendants failed to disclose their intentional act of fraud and conspiracy and that non-disclosure caused S.D., and would have caused any reasonable person in S.D.'s position, to relax his vigilance and to deviate from his right of inquiry into the torts as set forth herein.

60.    The Boy Scout Defendants were in a superior position to then minor S.D. in that he occupied an inferior position of weakness, inequality and without knowledge or information of the ongoing coverup that the Boy Scout Defendants were perpetuating.

61.    The Boy Scout Defendants taught S.D. to trust and obey his scoutmasters and assistant scoutmasters, including Defendant Antosh. The Boy Scout Defendants' words and actions led S.D. to believe that he was safe with scoutmasters and assistant scoutmasters in general, and with Defendant Antosh in particular.

62.    Furthermore, this trust of the Boy Scout Defendants also led minor S.D. to believe that the abuse that he sustained was an isolated incident when, in fact, he was the victim of a known and preventable hazard that the Boy Scout Defendants had created and allowed to continue. Their refusal to enlighten S.D. led S.D. to relax his vigilance and to inquire no further regarding their torts.

63.    Beginning when S.D. was about twelve or thirteen years old, sometime in approximately 1974 or 1975 and continuing until approximately 1979 or 1980, when S.D. was approximately seventeen years old, Defendant Antosh molested, sexually, physically, mentally, psychologically and emotionally abused then minor S.D. at various times and locations, including but not limited to Camp Acahela in Tobyhanna Township, Pennsylvania and Defendant Antosh's house in Plains Township, Pennsylvania.

64.    Upon information and belief, Defendant's sexual brutality of S.D. included hundreds of instances of fondling, hundreds of incidents of oral sexual assault and repeated attempts of anal penetration.

65.    Defendant Antosh plied then minor S.D. with drugs and alcohol and began his sexual molestation of then minor S.D. by fondling him.

66.     Defendant Antosh's abuse continued to escalate from fondling to performing hundreds of instances of oral sex upon then minor S.D.

67.     In addition to the above-described acts, Defendant Antosh repeatedly attempted to sodomize then minor S.D.

68.     Defendant Antosh's above-described acts constitute conduct in violation of the Pennsylvania Criminal Code.

69.     Plaintiff suffered profound physical, emotional and psychological harm as a result of Defendant Antosh's sexual molestation including, but not limited to sleeplessness, nightmares, anger, depression, anxiety, loss of well-being, and/or self-destructive and abusive behavior in his adult life.

70.     Defendant Antosh destroyed S.D.'s ability to have a normal and happy life.

71.     Without the active participation of the Boy Scout Defendants, Defendant Antosh could not have committed his crimes and inflicted profound psychological injuries against S.D.

72.     Upon information and belief, the Boy Scout Defendants authorized Defendant Antosh to serve as a BSA Assistant Scoutmaster and Defendant Antosh served as such for years prior to his sexual molestation of S.D.

73.     The Boy Scout Defendants thus knew or had reason to know, or were otherwise on notice, of the unlawful sexual conduct of Defendant Antosh and failed to take reasonable steps, and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by him.

74.     The Boy Scout Defendants failed to prevent or avoid Defendant Antosh's placement in a function or environment to prevent one on one contact with adolescent and pre-adolescent boys as an inherent part of that function or environment.

75. Upon information and belief, by the time that Defendant Antosh began his predacious sexual conduct upon S.D., the Boy Scout Defendants knew or should have known of Defendant Antosh's propensity for such conduct, yet they did not provide to young boys or their families, including S.D. and his parents, any warning of Defendant Antosh's appetite for such harmful, illegal and immoral conduct.

76. Upon information and belief, at all times relevant hereto, the Boy Scout Defendants knew or should have known of the sexual predacious acts of Defendant Antosh upon S.D. Despite this knowledge, the Boy Scout Defendants asserted no supervisory control over and took no disciplinary action against Defendant Antosh in order to prevent him from committing further harmful, illegal and immoral acts upon S.D.

77. Upon information and belief, directly contrary to their obligation to watch over and protect young boys and members of their scouting programs, including S.D., the Boy Scout Defendants, as well as Defendant Antosh entered upon, adopted and/or followed a course of conduct, concealed from young boys and their families, and civil and criminal authorities, the harmful, illegal and immoral acts Defendant Antosh committed upon S.D.

78. Upon information and belief, the course of action entered upon, adopted and/or allowed by the Boy Scout Defendants and Defendant Antosh was part of and consistent with their pattern of concealing the harmful, illegal and immoral acts of other pedophilic Scoutmasters and Assistant Scoutmasters. This pattern included, but was not limited to, concealing and/or destroying evidence of the misconduct of pedophilic Scoutmasters and Assistant Scoutmasters.

79. The Boy Scout Defendants deliberately withheld information from scouts and their parents, including S.D. and his parents. The withheld information included: the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA were

aware; and the methods pedophiles had been using to gain access to scouts, groom them for abuse and keep them silent. The Boy Scout Defendants timely communication of this information would have enabled parents and scouts, including S.D. to protect himself and children involved in scouting from sexual abuse by pedophiles in scouting.

80.     Then minor S.D. did not know nor did he have any reason to know that the Boy Scout Defendants deliberately concealed Defendant Antosh's proclivity for and history of committing sexual abuse, thereby placing him at risk of sexual abuse.

81.     Upon information and belief, the conspiracy among the Boy Scout Defendants and Defendant Antosh to avoid civil and criminal liability for the harmful, illegal and immoral acts of their Scoutmasters/Assistant Scoutmasters, including Defendant Antosh existed before S.D.'s sexual assault at the hands of Defendant Antosh.

82.     Had the Boy Scout Defendants notified or advised S.D., or his parents, or civil authorities, or otherwise been candid with the scouting public regarding the pervasiveness of sexual abuse of boys by an alarmingly large percentage of BSA's adult scout leaders, S.D. would have either (1) not have joined the BSA; or, (2) not been allowed to join the BSA by his parents.

83.     Had the Boy Scout Defendants informed S.D. of the nature and frequency of the risks of abuse by adult scout leaders, S.D. would have taken steps to protect himself from the grooming and sexual abuse to which his adult Assistant Scoutmaster subjected him.

84.     As a direct and proximate result of the negligence, breaches of duty, misconduct, conspiracy, fraud and resulting molestation and sexual assault of S.D. as described herein, S.D. suffered profound physical injury, severe emotional distress, severe depression, anxiety, embarrassment, pain and suffering, humiliation, loss of vocation and loss of earnings, loss of faith and an inability to live a normal life.

## COUNT I – FRAUDULENT CONCEALMENT AND ESTOPPEL
## PLAINTIFF VS. ALL DEFENDANTS

85.    Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth at length herein.

86.    Congress founded BSA in the United States in 1910.

87.    Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction.

88.    Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

89.    Simultaneously, BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years.

90.    BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

91.    BSA fraudulently concealed the said information from S.D. and his parents. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders. BSA made said misrepresentations to S.D. and his parents.

92.    BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

93.    The IV Files revealed that BSA, far from being safe and wholesome, has long acted and been a sanctuary for pedophiles.

94.    The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem).

95.    BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

96.    The overwhelming evidence of the I.V. files at present shows that for a century BSA has known of BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

97.    By 1935, BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

98.    In the 1970s, BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, BSA's secret cache of files on pedophiles exceeded 20,000.

99.    Over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. files.

100.   BSA executives kept no retention logs showing which or how many of the files BSA destroyed. BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

101.   Approximately 6,000 files survived BSA's file-purge and are in BSA's possession. Approximately 1900 of those files are now in the public domain.

102.   The files demonstrate that BSA opened a new I.V. file on a pedophile every other day for fifty years.

103.   The I.V. files demonstrate that BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles, including:

a.   Scouting provides a pedophile access to boys alone and away from their parents in secluded settings like campouts and overnight hikes;

b.   Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

c.   A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

d.   BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

e.   BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

f.   BSA conducted no criminal or other background checks on its volunteers;

g.   BSA did not prohibit adults from sleeping in tents with boys overnight;

h.   BSA did not prohibit adult leaders from spending time alone with individual scouts;

i.   BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

j.   For decades, BSA re-admitted pedophiles it had previously removed for child abuse after a period of BSA "probation," thereby exposing more unsuspecting children to sexual abuse;

k.   BSA had a practice of not reporting scout abuse incidents to law enforcement;

l.   BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

m.   BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

n.   BSA refused to produce its I.V. files to its review board and scout- safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

o.   BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

p.   BSA refused to utilize widely-accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

q.   BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

r.   BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

104.   Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

105.   Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

106. BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

107. BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

108. BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult scout leaders. BSA made repeated false counterfactual claims that the number of pedophiles in scouting was comparatively small, that scouts were reasonably safe from sexual abuse by adult scout leaders, and that BSA is not a magnet for pedophiles, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity of those claims.

109. S.D. and his parents trusted BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

110. BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including S.D. and his parents. It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's timely communication of this information would have enabled scouts, including S.D., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a

congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

111.   BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

112.   Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C. § 30905).  BSA has realized income from these federally-protected assets by marketing them to parents and their children, including S.D.

113.   BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

114.   In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events.

115.   BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

116.    BSA receives many federal subsidies, including (1) free access to national forest lands (16 USC § 539f); (2) free use of Defense Department equipment and facilities for BSA Jamborees (10 U.S.C. § 2554); (3) free ground and air transportation, communications, emergency, and technical services from the National Guard (32 U.S.C. § 508); (4) free use of meeting facilities, transportation, and support services at United States military bases worldwide (10 U.S.C. § 2606); (5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. § 40731); and (6) sale of military surplus (10 U.S.C. §7682) and Department of Agriculture grants (7 U.S.C. § 7630).

117.    Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

    (a)    Failure to report incidents of abuse to law enforcement or child protection agencies;

    (b)    Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

    (c)    Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

118.    Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

119.    The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing S.D.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of S.D.

120.   Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.

121.   As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the profound injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT II
### (Civil Conspiracy)
### (Plaintiff v. All Defendants)

122.   Plaintiff incorporates all preceding paragraphs of this complaint as if fully set forth herein.

123.   The Boy Scout Defendants, by and through their agents and representatives, conspired to cover up incidents of sexual abuse of minors by Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, and to prevent disclosure, prosecution and civil litigation including, but not limited to:

   (a)   Failure to report incidents of childhood sexual abuse to law enforcement or child protection agencies;

   (b)   Denial of abuse BSA had substantiated; aiding criminal child molesters in evading detection, arrest, and prosecution;

   (c)   Allowing pedophiles to cross state and international borders for purposes of gaining access to uninformed parents' children, whom they could sexually abuse; and,

   (d)   Failure to warn; and failure to seek out and redress the injuries its adult Scoutmasters and Assistant Scoutmasters had caused.

124.   Based on these actions, the Boy Scout Defendants, by and through their agents and representatives, conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that Defendant Antosh posed to unsuspecting children, including S.D.

125.   The Boy Scout Defendants placed their own interests ahead of the protection of children, including S.D.

126.   The Boy Scout Defendants conspiratorial conduct in concealing the dangers of sexual abuse of Assistant Scoutmasters, including Defendant Antosh, constitutes outrageous or egregious wrongdoing in willful disregard for S.D.'s rights.

127.   As a direct and proximate result of the conspiratorial conduct of the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

128.   The Boy Scout Defendants' conspiracy was ongoing and continues to this date.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT III
### (Willful Misconduct, Wanton Misconduct and Reckless Misconduct)
### (Plaintiff v. All Defendants)

129.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

130.   The conduct described above shows that the Boy Scout Defendants engaged in willful, wanton, and/or reckless misconduct that reflects its conscious disregard of children's health and safety, including S.D. and/or the Boy Scout Defendants' intent to harm.

131.   At the very least, the Boy Scout Defendants were recklessly indifferent to injury that would likely result from its acts or omissions.  Defendants knew that pedophiles were infiltrating scouting at an alarming rate, and it knew that children would suffer severe damage and harm from being sexually abused as a result of this infiltration.

132.   S.D. was a victim of the Boy Scout Defendants' reckless indifference and/or their willful and wanton misconduct.

133.   As a direct and proximate result of the willful, wanton and/or reckless misconduct of the Boy Scout and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT IV
#### (Intentional Infliction of Emotional Distress)
#### (Plaintiff v. All Defendants)

134.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

135.   Defendant Antosh repeatedly, persistently, and unlawfully sexually abused Plaintiff while he was a minor.

136.   The sexual abuse of then minor S.D. by Defendant Antosh was unlawful.

137.   Defendant Antosh engaged in a pattern of intentional and outrageous activity with the plaintiff that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

138.    At all times relevant hereto, Defendant Antosh knew or should have known that his conduct would cause S.D. to experience, among other things, severe emotional distress and mental trauma.

139.    The Boy Scout Defendants also knew or should have known that Defendant Antosh was a dangerous child molester and sexual predator.

140.    The Boy Scout Defendants knew or should have known of Defendant Antosh' sexual misconduct and knew or should have known that Defendant Antosh' conduct would cause S.D. to experience severe emotional distress and mental anguish, and would make him vulnerable and susceptible to suicide.

141.    The Boy Scout Defendants further knew or should have known that it was substantially certain that the pedophiles, such as Defendant Antosh, would continue to sexually abuse children, including the abuse they inflicted upon Plaintiff, if Defendants failed to warn parents or failed to report the pedophiles to civil authorities and that such abuse would cause severe and emotional distress to S.D.

142.    The Boy Scout Defendants' conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community which resulted in severe physical and emotional distress to S.D.

143.    The Boy Scout Defendants' conduct was a result of a willful, reckless, and outrageous indifference to highly unreasonable risk of harm and a conscious indifference to S.D.'s health, safety, and welfare.

144.    As a direct and proximate result of the intentional conduct of the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT V
### (Negligent Infliction of Emotional Distress)
### (Plaintiff v. All Defendants)

145.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

146.    As a direct and proximate result of the negligence of the Boy Scout Defendants and Defendant Antosh, S.D. sustained severe emotional distress which ultimately resulted in an inability to lead a healthy and normal life and which resulted in physical manifestations of his emotional harm.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VI
### (Assault and Battery)
### (Plaintiff v. Defendant Antosh)

147.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

148.   Each time that Defendant Antosh committed an act of sexual abuse on S.D. as described herein, he did so without consent and committed an unlawful touching of the person of then minor Plaintiff S.D.

149.   As a direct and proximate result of Defendant Antosh's unlawful touching of then minor S.D.'s person without consent, S.D. sustained the damages set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VII
### (Negligence)
### (Plaintiff v. All Defendants)

150.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

151.   At all times relevant hereto, Defendant Antosh was under the direction, supervision and control of the Boy Scout Defendants.

152.   The Boy Scout Defendants selected, accepted, ratified, approved and authorized Defendant Antosh to serve and act as an Assistant Scoutmaster for the benefit of members of Troop 100.

153.   Based upon BSA's knowledge or previous incidents involving pedophiles and its knowledge and information regarding pedophiles within its organization, BSA could reasonably foresee future incidents involving pedophile Scoutmasters, Assistant Scoutmasters, volunteers, employees, agents and/or apparent agents, representatives, including Defendant Antosh.

154.   The Boy Scout Defendants owed a duty to S.D. to prevent child molesters from serving and acting as Assistant Scoutmasters with easy access to children.

155.   The Boy Scout Defendants were negligent in screening, training, hiring, supervising and retaining Defendant Antosh as an Assistant Scoutmaster when Defendants knew or should have known that Defendant Antosh posed a threat of sexual abuse to children, including, but not limited to, the following:

(a)   Failing adequately to investigate the previous activities of Defendant Antosh;

(b)   Failing adequately to investigate the background, character and fitness of Defendant Antosh to serve as an Assistant Scoutmaster;

(c)   Failing adequately to investigate and/or inquire into Defendant Antosh' criminal background or history;

(d)   Failing adequately to investigate any Defendant Antosh' prior relationships with minor children;

(e)   Failing adequately to subject Defendant Antosh to appropriate psychological and mental testing in order to uncover his pedophilic and/or homosexual tendencies and proclivities;

(f)   Failing adequately to have in place and/or force systems, policies, and/or procedures to monitor and supervise Scoutmasters and Assistant Scoutmasters who work closely with or come into contact with minor children;

(g)   Allowing Antosh to routinely conduct BSA meetings at his home with no other adults present;

(h)   Allowing Antosh to travel with children with no other adults present;

(i)   Ignoring warning signs that Antosh was using his BSA position to spend hours alone with individual scouts (including Plaintiff) for the purpose of sexually abusing them;

(j)   Failing adequately to discover, investigate, or question the fact that Antosh was utilizing scout meetings to engage in improper "grooming" behaviors to sexually desensitize scouts, including S.D.;

(k)   Failing adequately to take prompt action to remove Antosh as an Assistant Scoutmaster and Youth Leader after complaints and/or suspicions of sexual molestation;

(l)   Failing adequately to take action to investigate all adults involved in scouting after notice that other BSA Scoutmasters, Assistant Scoutmasters and Youth Leaders were sexually abusing scouts;

(m)   Failing adequately to adopt or enforce a two-adult rule;

(n)   Failing adequately to conduct criminal background or other background checks on new or existing Scoutmasters/Assistant Scoutmasters, or more carefully screening Scoutmasters/Assistant Scoutmasters who did not have and/or never had sons in Scouting;

(o)   Failing adequately timely to adopt policies and procedures to protect children;

(p)   Failing adequately to advise parents of statistical data available to BSA from the Ineligible Volunteer Files;

(q)   Failing adequately to advise parents that the I.V. file system of ejection of volunteers as the primary method of protecting Scouts from pedophiles was ineffective;

(r)   Failing adequately to maintain, review and update the Ineligible Volunteer Files;

(s)   Failing adequately to warn parents of information regarding adult Scoutmasters/Assistant Scoutmasters and their propensity to engage in inappropriate behavior with scouts;

(t)   Failing adequately to communicate information regarding Scoutmasters/Assistant Scoutmasters, employees, volunteers, and/or agents to their operative branches and councils, throughout the United States; and,

(u)   Failing adequately to require local councils to submit names of leaders, volunteers and employees for cross checking with the Ineligible Volunteer Files.

156.   During all relevant times hereto, Defendant Antosh was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that Defendant Antosh had a propensity to commit and engage in sexual misconduct.

157.   The Boy Scout Defendants were negligent by failing adequately to supervise the conduct and the activities of Defendant Antosh.

158.   If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of Defendant Antosh, they would have known or should have known of the misconduct of Defendant Antosh, so as to prevent the sexual abuse and infliction of emotional distress on S.D.

159.   Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of Defendant Antosh, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on S.D.

160.   Upon information and belief, the Boy Scout Defendants knew or should have known of Defendant Antosh' propensities to have inappropriate conduct, emotional, sexual, and otherwise, with minor children, but failed to take any disciplinary or remedial action to prevent Defendant Antosh from having contact with minor children, which failure directly resulted in the sexual abuse of S.D.

161.   Upon information and belief, the Boy Scout Defendants knew or should have known that Defendant Antosh had committed acts of sexual deviance and impropriety upon minor children, but failed to take any remedial or disciplinary measures against Defendant Antosh, which failure directly resulted in the sexual abuse of S.D.

162. ·  Upon information and belief, the Boy Scout Defendants failed to discipline Defendant Antosh for the harmful, illegal, and immoral acts he committed on S.D. and failed to report said acts to the appropriate civil and criminal authorities.

163.   The conduct of the Boy Scout Defendants was outrageous, shocking and committed with utter disregard for the welfare of S.D.

164.    As a direct and proximate result of the negligence of the Boy Scout and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VIII
### (Statutory Violation; Negligence Per Se)
### (Plaintiff v. All Defendants)

165.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

166.    At all times relevant hereto, the Boy Scout Defendants, by and through their agents, volunteers, and/or employees, in the course of their practice and profession, regularly came into contact with children, such as Plaintiff.

167.    The Boy Scout Defendants, as well as Defendant Antosh, were at all times relevant hereto legally obligated under the "Child Protective Services Law" to report suspected child abuse to the Department of Public Welfare or county child protective service agencies. See 11 P.S. § 2201, et seq. (repealed); 23 Pa. C.S. § 6301, et seq.

168.    Defendant Antosh' sexual assault and exploitation of the then minor S.D. violated Pennsylvania's Child Protective Services Law.

169.    Upon information and belief, Defendant Antosh's sexual assault and exploitation of Plaintiff, and violation of Pennsylvania's Child Protective Services Law, was done with the knowledge and/or acquiescence of the Boy Scout Defendants.

170.    Upon information and belief, the Boy Scout Defendants did not report to civil or criminal authorities various allegations of sexual abuse of children by Defendant Antosh.

171.    As a direct and proximate result of the failure of the Boy Scout Defendants and Defendant Antosh to report to civil or criminal authorities allegations of sexual abuse of minor children by Defendant Antosh, then minor S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT IX
### (Breach of Fiduciary Duty)
### (Plaintiff v. All Defendants)

172.    S.D. incorporates by reference all of the allegations set forth above as if fully stated herein.

173.    As a result of the affiliation S.D. had with the Boy Scout Defendants, a special fiduciary relationship, of human and spiritual trust, concomitant in loco parentis duties, existed between the Plaintiff and the Boy Scout Defendants.

174.    The Boy Scout Defendants were entrusted with the well-being, care, and safety of the then minor S.D. as a result of his status of a boy scout member.

175.    Under this fiduciary relationship, the Boy Scout Defendants assumed a duty to act in the best interests of S.D., to provide a safe haven, and to ensure the S.D.'s physical and emotional care and safety.

176.    The Boy Scout Defendants placed S.D. in the care of Defendant Antosh for the purposes of, inter alia, providing S.D. with education, instruction, training, spiritual guidance,

and counseling. As such, there existed a fiduciary relationship of trust, confidence, and reliance between the Boy Scout Defendants and S.D.

177. Plaintiff had a right to rely and did rely upon the representations of the Boy Scout Defendants that the Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, were individuals in good standing and that the Boy Scout Defendants would not tolerate criminal misconduct by its Scoutmasters and Assistant Scoutmasters toward children.

178. As asserted herein, Defendant Antosh sexually assaulted and molested S.D.

179. Upon information and belief, the Boy Scout Defendants and Defendant Antosh breached their fiduciary duty through their inaction, manipulation, intimidation, evasion, intended deception, concealment, undue influence, duress, or otherwise as more fully described and set forth herein, resulting in injuries to S.D.

180. As a direct result of the breach of fiduciary duty of the Boy Scout Defendants and Defendant Antosh, S.D. suffered injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT X
### (Respondeat Superior)
### (Plaintiff v. Boy Scout Defendants)

181. Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

182. The Boy Scout Defendants are liable for the sexual abuse of the then minor S.D. under the doctrine of respondeat superior.

183.    At all times relevant hereto, Defendant Antosh held official positions and/or was performing official duties for the Boy Scout Defendants, and he was acting as an agent of the Boy Scout Defendants.

184.    Defendant Antosh was at all times under the dominion, authority, and control of the Boy Scout Defendants, and was acting within the scope of his agency and/or employment, when he performed the egregious and despicable acts of sexual depravity upon S.D.

185.    The Boy Scout Defendants are vicariously liable as a principal for all torts committed by their agents and/or employees.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

Respectfully Submitted,

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:    *Stewart Eisenberg*

**Date: August 5, 2019**

Stewart Eisenberg, Esquire
Joshua B. Schwartz, Esquire
Attorneys for Plaintiff



Filed and Attested by the
Office of Judicial Records
05 AUG 05:60 pm

## VERIFICATION

The undersigned, having read the attached pleading, verifies that the within pleading is based on information furnished to counsel which information has been gathered by counsel in the course of the within lawsuit.

The language of the pleading is that of counsel and not of signer. Signer verifies that he has read the within pleading and that the factual averments are true and correct to the best of signer's knowledge, information and belief. To the extent that the contents of the pleading are that of counsel and/or legal terminology, verifier has relied upon counsel in taking this verification.

It is understood that the statements therein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Date:  8-5-19

S▮▮▮▮ D▮▮▮▮▮



Filed and Attested by the
Office of Judicial Records
05 AUG 2019 06:30 pm

# Exhibit "A"

Case ID: 190800135

1972

 **BOY SCOUTS OF AMERICA**
*North Brunswick · New Jersey 08902 · 201 249-6000*

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:  Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
     Management Staff
Attachment

BSA 02205

Case ID: 190800135

## MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of leadership in the areas of age, citizenship, sex, education, morals and emotional stability. This position is set forth in the Bylaws:

> Article II, Section 2, Clause 3 "No person shall be approved as a leader unless, in the judgment of Boy Scouts of America, he possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualifications as it may from time to time require."

> Other supporting Articles are listed in Appendix A.

The local council and the National Council must approve all applications (Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and their enforcement in no way infringes on the rights of any individuals, nor is refusal of registration to be construed as persecution or defamation of character. All leaders register for a limited term (usually one year) and reregistration at the end of that period is also subject to approval (Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that would seem to cause him to be unfit as a leader or an associate of boys, the Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by principals, police reports, court records, newspaper clippings, etc.).

3) Submit evidence and the confidential record sheet to Registration and Subscription.

4) Upon notification from Registration, write a letter to the individual (Appendix B) and <u>hand deliver</u> it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons for refusal to register. Make <u>no</u> accusations -- say we have evidence to convince us that your --(financial affairs)  (moral life) (lack of leadership ability) do not meet the standards for leadership in the BSA. Indicate that the BSA is not sharing this information with anyone and only wish him to stop all Scouting activity.

   After this visit, write down the main parts of the conversation, who was present and the date, and mail this to Registration and Subscription.

BSA 02206

-2-

6) If the individual persists, the following review steps are to be taken as required:

A) Initial Step -- The president of the local council will appoint three volunteers to act as a committee to review the case.

B) (If Step A does not resolve matter) -- The Regional President will appoint a review committee if the person is not satisfied with the council's decision.

C) (If Step B does not resolve matter) -- The President of the BSA will appoint a review committee if the individual is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and Subscription about a person attempting to register, he should take the following steps:

1) Secure as rapidly as possible the necessary answers on the questionnaire and return to Registration and Subscription.

2) If it is not the same person, the registration certificate will be sent to the council.

3) If it is the same person, Registration and Subscription will write to the Scout Executive, indicating that the BSA is unwilling to register that person because information we have indicates that he fails to meet our standards of leadership. If the individual questions the statement the Scout Executive may ask him if he has ever been in Scouting in the past and been refused membership.

If the answer is yes, the Scout Executive may say the reasons remain the same.

If the answer is no, and the individual insists there has been a mistake, the Scout Executive should instruct him to send a complete statement covering his adult years, including address and dates lived there, occupations and dates, and names of spouse and children to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership in the past wishes to register and the circumstances are changed sufficiently that the BSA is willing to accept the registration on a trial basis. The Scout Executive will be notified in this situation, and requested to keep a close watch on the individual for one year and then give a brief report to Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the offense and the passage of time, and when the standards of leadership seem to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

-3-

Many times an individual comes to a council seeking registration with the BSA and something unusual causes concern that further checking should be done before registration is completed.

When you find yourself in this situation, we ask that you write or phone directly to Registration and Subscription, asking that we check for any information that might be on file concerning the individual in question. This will immediately help you in your relationships with the individual and give you information as to whether registration should be completed before you do a lot of unnecessary work and make any commitments which could prove embarrassing.

dw-11/15/72

BSA 02208

Case ID: 190800135

-4-

Appendix A

Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12

dw-11/27/72

BSA 02209

Case ID: 190800135

-5-

Appendix - 8

Dear

After a review of your past history with the Boy Scouts, it has been decided not to accept your registration. Registration with the Boy Scouts of America is not automatically granted to everyone. It is a privilege and we reserve the right to refuse registration whenever there is any reason for concern related to the person's association with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship with the Boy Scouts of America. We are making no accusations and will not release this information to anyone, so our action in no way will affect your standing in the community.

Very truly yours,

Scout Executive

dw

BSA 02210

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:    Stewart J. Eisenberg, Esquire
       Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

*Filed and Attested by the Office of Judicial Records*
*06 AUG 2019 08:36 am*
*G. IMPERATO*

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | |
| | : | AUGUST TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America, et al. | : | NO. 0135 |
| | : | |
| | : | |
| Defendants. | : | |

## ENTRY OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly enter my appearance as co-counsel for Plaintiff in the above-captioned matter.

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:    *Joshua B. Schwartz*
       **JOSHUA B. SCHWARTZ**
       **Attorneys for Plaintiff**

Date: August 5, 2019

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:   Stewart J. Eisenberg, Esquire
        Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

*Filed and Attested by the
Office of Judicial Records
12 AUG 2019 08:10 am
G. IMPERATO*

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | AUGUST TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America, et al. | : | NO. 0135 |
| | : | |
| | : | |
| Defendants. | : | |

## <u>AFFIDAVIT OF SERVICE</u>

**TO THE PROTHONOTARY:**

Kindly file this Affidavit of Service noting service of Plaintiff's Complaint on Defendant,

Boy Scouts of America on **August 10, 2019** via certified mail, receipt no. **7011 0470 0000 5377**

**9960.**

                        **EISENBERG, ROTHWEILER,
                        WINKLER, EISENBERG & JECK, P.C.**

                **BY:**   *Joshua B. Schwartz*
                        **JOSHUA B. SCHWARTZ**
                        **Attorneys for Plaintiff**

Date: August 12, 2019

# USPS Tracking®

FAQs ❯ (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package ➕

**Tracking Number:** 70110470000053779960

Remove ✕

Your item was picked up at a postal facility at 9:37 am on August 10, 2019 in IRVING, TX 75038.

## ✅ Delivered

August 10, 2019 at 9:37 am
Delivered, Individual Picked Up at Postal Facility
IRVING, TX 75038

Get Updates ∨

Feedback

| Text & Email Updates | ∨ |
| --- | --- |

| Tracking History | ∨ |
| --- | --- |

| Product Information | ∨ |
| --- | --- |

See Less ∧

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

Case ID: 190800135

# E·R EISENBERG ROTHWEILER
### WINKLER EISENBERG & JECK

**For life's toughest trials™**

info@erlegal.com
PA  P: 215 546 6636   F: 215 546 0118
NJ  P: 856 751 6652   F: 856 489 1975

JOSHUA B. SCHWARTZ
JOSH@ERLEGAL.COM
215-546-6636

August 7, 2019

_**Via Certified and First-Class Mail**_

Boy Scouts of America
1325 West Walnut Hill Lane
Suite 406
Irving, TX 75038

> **Re:  _S.D. v. Boy Scouts of America, et al._**
> **_CCP Phila. Co., August Term, 2019; No. 000135_**

Dear Sir or Madam:

Enclosed is a copy of a civil action complaint filed in the Court of Common Pleas, Philadelphia County, naming you as a defendant.  Please forward this complaint onto your legal representative so that it can be responded to in accordance with the guidelines of the Pennsylvania Rules of Civil Procedure.

Very truly yours,

_Joshua B. Schwartz_

Joshua B. Schwartz

JBS/ts
Enclosure

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
_(Domestic Mail Only; No Insurance Coverage Provided)_

For delivery information visit our website at www.usps.com℠

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: BSA
Street, Apt. No.: 1325 W. Walnut Hill Lane
or PO Box No.
City, State, ZIP+4: Irving, TX 75038

PS Form 3800, August 2006          See Reverse for Instructions

7011 0470 0000 5377 9960

**New Jersey**

1930 Route 70 East, Suite Q-42
Cherry Hill, NJ 08003

**Trial Lawyers**

erlegal.com
866 569 3400

Case ID: 190800135

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

1. Article Addressed to:

Boy Scouts of America
1325 West Walnut Hill Lane
Suite 406
Irving, TX 75038

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7011 0470 0000 5377 9960

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.uspa.com®

OFFICIAL USE

Postage    $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees    $

Postmark
Here

Sent To BSA
Street, Apt. No.;
or PO Box No. 1325 W. Walnut Hill Lane
City, State, ZIP+4 Irving, TX 75038

PS Form 3800, August 2006    See Reverse for Instructions

7011 0470 0000 5377 9960

CERTIFIED MAIL™

Case ID: 190800135

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:    Stewart J. Eisenberg, Esquire
         Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

*Filed and Attested by the
Office of Judicial Records
28 AUG 2019 11:39 am
A. STAMATO*

---

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | AUGUST TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America, et al. | : | NO. 0135 |
| | : | |
| | : | |
| Defendants. | : | |

---

### PRAECIPE TO FILE SHERIFF RETURN OF SERVICE

**TO THE PROTHONOTARY:**

Kindly file the attached Sheriff's Return of Service noting service of Plaintiff's

Complaint on Defendant, Penn Mountains Council, Boy Scouts of America on **August 15, 2019**

via **Sheriff of Lackawanna County.**

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:    *Joshua B. Schwartz*
         **JOSHUA B. SCHWARTZ**
         **Attorneys for Plaintiff**

Date: August 28, 2019

SHERIFF'S RETURN - REGULAR

CASE NO: 2019-00407 T

COMMONWEALTH OF PENNSYLVANIA:
COUNTY OF LACKAWANNA

SD _____

                    VS

BOY SCOUTS OF AMERICA _____

JOHN PADULA _____, Deputy Sheriff of Lackawanna County

County, Pennsylvania, who being duly sworn according to law,

says, the within COMPLAINT _____ was served upon

BOYSCOUTS OF AMERICA _____ the

DEFENDANT _____, at 0002:22 PM Hour, on the 15th day of August ____, 2019

at 72 MONTAGE MOUNTAIN RD _____ _____

MOOSIC, PA 18507 _____ by handing to

STEVEN LENCESKI, DISTRICT EXEC AT ABOVE ADDRESS _____

a true and attested copy of COMPLAINT _____ together with

_____

_____

and at the same time directing His attention to the contents thereof.

_____
_____
_____

Sheriff's Costs:                So Answers:
  Docketing          .00        Mark P. McAndrew, Sheriff_____
  Service            .00
  Affidavit          .00        _____
  Surcharge          .00                    Deputy Sheriff
          $50.60     .00
                     .00        00/00/0000


Sworn and Subscribed to before

me this _____ day of

_____ A.D.

_____
      Notary

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:     Stewart J. Eisenberg, Esquire
        Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

*Filed and Attested by the
Office of Judicial Records
29 AUG 2019 03:55 pm
M. RUSSO*

---

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | AUGUST TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America, et al. | : | NO. 0135 |
| | : | |
| | : | |
| Defendants. | : | |

---

## PRAECIPE TO REINSTATE COMPLAINT

**TO THE PROTHONOTARY:**

Please reinstate the Complaint in the above-captioned matter.

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY: *Joshua B. Schwartz*
    **JOSHUA B. SCHWARTZ**
    **Attorneys for Plaintiff**

Date: August 29, 2019

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**AUGUST 2019**

E-Filing Number: 1908008495

**000135**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| S. D. | BOY SCOUTS OF AMERICA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| NOT GIVEN<br>WILKES-BARRE PA 18704 | 1325 WEST WALNUT HILL LANE SUITE 406<br>IRVING TX 75038 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | KINGSTON CORNERS BUILDING<br>KINGSTON PA 18704 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PAUL ANTOSH |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 6 CRESCENT DRIVE<br>WILKES-BARRE PA 18705 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 3 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

CASE TYPE AND CODE

20 - PERSONAL INJURY - OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED<br>PRO PROTHY**<br>AUG 05 2019<br>A. SILIGRINI | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES      NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: S. D.

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| STEWART J. EISENBERG | EISENBERG ROTHWEILER WINKLER<br>EISENBERG & JECK PC<br>1634 SPRUCE ST<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)546-6636 | (215)546-0118 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 32151 | marykate@erlegal.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| STEWART EISENBERG | Monday, August 05, 2019, 03:40 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 190800135

*Filed and Attested by the*
*Office of Judicial Records*
*25 AUG 2019 03:56 pm*
*A. SILIGRINI*

**EISENBERG, ROTHWEILER, WINKLER,**
**EISENBERG & JECK, P.C.**
By:     Stewart J. Eisenberg, Esquire
         Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

---

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | |
| | : | TERM, 2019 |
| v. | : | |
| | : | NO. |
| Boys Scouts of America | : | |
| 1325 West Walnut Hill Lane | : | MAJOR JURY TRIAL |
| Suite 406 | : | |
| Irving, TX 75038 | : | |
| | : | |
| and | : | |
| | : | |
| Penn Mountains Council, Boy Scouts of | : | |
| America | : | |
| Kingston Corners Building | : | |
| Kingston, Pennsylvania | : | |
| | : | |
| and | : | |
| | : | |
| Paul Antosh | : | |
| 6 Crescent Drive | : | |
| Wilkes-Barre, Pennsylvania 18705, | : | |
| | : | |
| Defendants. | : | |

---

**NOTICE TO DEFEND**

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte |

Case ID: 190800135

Case ID: 190800135

(20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Philadelphia Bar Association
Lawyer Referral
And Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

(20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pude decidar a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

Case ID: 190800135

Case ID: 190800135

**EISENBERG, ROTHWEILER, WINKLER,**
**EISENBERG & JECK, P.C.**
By:     Stewart J. Eisenberg, Esquire
        Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

---

|  |  |
|---|---|
| S.D. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | TERM, 2019 |
| v. | NO. |
| Boys Scouts of America 1325 West Walnut Hill Lane Suite 406 Irving, TX 75038 | MAJOR JURY TRIAL |
| and | |
| Penn Mountains Council, Boy Scouts of America Kingston Corners Building Kingston, Pennsylvania | |
| and | |
| Paul Antosh 6 Crescent Drive Wilkes-Barre, Pennsylvania 18705, | |
| Defendants. | |

---

### CIVIL ACTION COMPLAINT

Case ID: 190800135

Case ID: 190800135

AND NOW COMES the Plaintiff, S.D., by and through his legal counsel, Stewart J. Eisenberg, Esquire and Joshua B. Schwartz, Esquire of the law firm of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., and avers the following:

### I.    INTRODUCTION:

1.    This Complaint is based on the childhood sexual abuse of Plaintiff, S.D. ("S.D." or "Plaintiff") caused by the negligent, willful, wanton, reckless and tortious acts and omissions of Defendant, Boy Scouts of America, Penn Mountains Council, Boy Scouts of America and Paul Antosh, formerly an Assistant Scoutmaster.

2.    The Boy Scouts of America (hereinafter sometimes referred to as "BSA") is the largest youth organization in the United States with approximately five million members.  BSA was chartered in 1910 by an Act of Congress.  An estimated 20% of American boys have had contact with scouting, either as members or by attending scout functions.

3.    Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction.  Millions of parents and scouts have placed their trust in the BSA.

4.    Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days.  Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters.

### II.    PARTIES:

5.      S.D., is an adult citizen and resident of the Commonwealth of Pennsylvania and currently resides in Luzerne County, Pennsylvania.

6.      At all times relevant hereto, S.D. was a young boy living with his parents in Luzerne County, Pennsylvania and was enrolled in the BSA scouting programs.

7.      At all times relevant hereto, Defendant, Boy Scouts of America, was and is a congressionally chartered corporation with a principal place of business at 1325 West Walnut Hill Lane, Suite 406, Irving, Texas. BSA is authorized to do business and is doing business in the Commonwealth of Pennsylvania and in the City and County of Philadelphia, through various local and regional boy scout organizations and councils.

8.      Defendant, Boy Scouts of America, operates, promotes, oversees, guides, sets standards and establishes policies, protocols and procedures for youth organizations nationally through various local, state and regional organizations including those of Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

9.      Defendant, Boy Scouts of America, develops programs, sets and maintains quality standards in training, leadership selection, uniforms, registration records, literature development, advanced requirements for youth organizations nationally through various local, state and regional organizations, including those of Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

10.     Defendant, Boy Scouts of America grants charters to local councils and organizations to operate and conduct boy scout activities within their geographic areas, including Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

11.     At all times relevant hereto, Defendant, Penn Mountains Council, Boy Scouts of America (hereinafter sometimes referred to as "Penn Mountains Council") was and is a

Pennsylvania non-profit corporation with a business address of Kingston Corners Building, Kingston, Pennsylvania and was and is authorized to do business in the Commonwealth of Pennsylvania and the City and County of Luzerne, Pennsylvania.

12. Penn Mountains Council, like all BSA councils in the United States was at all relevant times an agent of the Boy Scouts of America.

13. Penn Mountains Council, like all chartered BSA councils, is and was controlled and directed by the BSA to such a degree, that it is the alter ego of the Boy Scouts of America.

14. Penn Mountains Council's separate corporate status should be disregarded and its assets treated as the property of the parent corporation, Boy Scouts of America.

15. For example, and for illustrative purposes only, Penn Mountains Council may only hire individuals from a list of approved candidates provided by the Boy Scouts of America; Penn Mountains Council's existence as a scouting organization is wholly dependent on BSA. Its charter can be revoked by BSA at any time with or without cause; Penn Mountains Council is co-jointly insured with the BSA on its CGL policies which premiums are paid by BSA.

16. On information and belief, Penn Mountains Council holds legal title to real estate and personal property for and on behalf of the BSA. Plaintiff asks the court to impose a constructive trust on Penn Mountains Council's assets to prevent unjust enrichment to BSA which has disguised its beneficial ownership of assets held in the name of Penn Mountains Council.

17. Upon information and belief, Penn Mountains Council was and is a chartered organization of the Boy Scouts of America.

18.     Penn Mountains Council, as a chartered organization of the Boy Scouts of America, administers the programs, guidelines and policies of the Defendant, Boy Scouts of America in and around Luzerne County, Pennsylvania region.

19.     The Boy Scouts of America and the Penn Mountains Council Defendants will be referred to hereinafter collectively as "Boy Scout Defendants".

20.     At all times relevant hereto, the Boy Scout Defendants acted by and through their duly authorized agents, representatives, volunteers, servants and/or employees.

21.     At all times relevant hereto, the Boy Scout Defendants operated various programs for young boys, including S.D. and authorized, approved, ratified and selected adults to serve as Scoutmasters and Assistant Scoutmasters.

22.     The Boy Scout Defendants, acting by and through their duly authorized agents, operated and/or controlled a boy scout troop in Luzerne County, Pennsylvania, known as Troop 100.

23.     At all times relevant hereto, then minor S.D. was a member of Boy Scout Troop 100 of the Penn Mountains Council.

24.     At all times relevant hereto, Defendant, Paul Antosh ("Defendant Antosh"), was an Assistant Scoutmaster for Troop 100 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including S.D., in morality, patriotism and various life skills who resides at 6 Crescent Drive, Wilkes Barre, Pennsylvania 18705.

25.     At all times relevant hereto, Defendant Antosh served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy

Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

### III.   FACTS:

26.   At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, Defendant Antosh sought and gained the then minor S.D.'s trust, friendship, admiration and obedience.  As a result, S.D. was conditioned to comply with Defendant Antosh's direction and to look to him as an authority figure.

27.   At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that the BSA was a moral and safe place for young boys, Defendant Antosh enticed, induced, directed, coerced and forced S.D. to engage in deviant sexual acts with him.

28.   At all times relevant hereto, Defendant Antosh utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor S.D. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor S.D. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

29.   A reasonable person would not have suspected or investigated the BSA or the Penn Mountains Council before having learned of the widespread pedophilia allegations leveled against the Boy Scouts of America through a television outreach effort in or about May of 2019.

30.   This television outreach effort and subsequent discussions with legal counsel gave S.D. a reason to investigate, for the first time, that the conspiracy and fraud committed by the Boy Scout Defendants set forth herein was the cause of S.D.'s harm.

31.     Before seeing the television outreach efforts and speaking with legal counsel, S.D. did not realize that the Boy Scout Defendants had known about their widespread pedophilia epidemic and did not know of their efforts to conceal it.

32.     In or around May, 2019, legal counsel advised S.D. that over 350 survivors of Boy Scout childhood sexual abuse had retained their law firm to investigate cases against the Boy Scouts of America.

33.     Upon learning of the Boy Scout Defendants pedophilia epidemic and the Boy Scout Defendants' efforts to cover-up this epidemic, S.D. became aware for the first time that he may be able to bring a law suit against the Boy Scout Defendants pursuant to the allegations set forth herein.

34.     Despite the Boy Scouts of America being forced to publicly disclose their hereinafter referenced Ineligible Volunteer Files, it is apparent that the Boy Scout Defendants continue to hide the true nature of their cover-up and the extent of the pedophilia epidemic within their organizations because the vast majority of the new victims coming forward involve claims of abuse at the hands of pedophiles who are not yet identified by the Boy Scouts of America in their publicly released Ineligible Volunteer Files.  Upon information and belief, there are over three-hundred and fifty persons who have been identified by S.D.'s counsel's clients that have not been included in BSA's Ineligible Volunteer Files.

35.     Therefore, upon information and belief, the Boy Scout Defendants continue to perpetuate a continuing and serious conspiracy to conceal and cover-up many of the abusers in BSA scout troops throughout the United States and overseas

36.     Moreover, no reasonable person could have suspected, much less investigated, that the Boy Scout Defendants were a cause of his harm until more public reports were made

known of the extent of the BSA defendants' widespread pedophilia problem within their ranks. As set forth herein, the Boy Scout defendants suppressed their conduct from public view within their secret archive as well as through a continued and systematic attempt to coverup the pedophilia problem from public view through the present date.

37.     Unlike Grand Jury reports that have been publicly disseminated in Pennsylvania concerning sexual abuse scandals within various Archdioceses across the state, no such Grand Jury, police force, district attorney's office or governmental agency has investigated the Boy Scout Defendants to date with regard to their child sexual abuse scandal and cover-up.

38.     In fact, none of the Commonwealth's prosecutors, investigators or child protection departments have discovered the Boy Scout Defendants' systematic conduct over the past century. Thus, it would not be fair to conclude that SD's similar failure to discover the conduct was unreasonable, as a matter of law.

39.     BSA knew for decades that sexual predators of boys had infiltrated scouting. BSA knew or should have known the dangers that pedophiles presented to boy scouts and either knew or should have known the danger that Defendant Antosh presented to children, including S.D., but instead ignored that danger and permitted him and other pedophiles in scouting to prey upon young boys, including then minor S.D.

40.     Since approximately 1919, the BSA has maintained a group of files known as the red files, perversion files or ineligible volunteer files.

41.     BSA's own internal "ineligible volunteer files" collected and maintained in secrecy for 70 years, revealed that scouting is a "pedophile magnet", in that removed pedophiles were often able to reenter scouting at other locations.

42.    BSA's confidential records demonstrate both its awareness of scouting's attraction to pedophiles, and also the distinctive characteristics of scouting that render scouts particularly susceptible to pedophiles.

43.    BSA knew or should have known that scouting attracts pedophiles, in part, because (a) scouting provides the pedophile access to boys alone and away from their parents in secluded settings like camp outs and overnight hikes; (b) scouting provides opportunities for the pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him; (c) the pedophile scout leader can, depending on the pedophile's age preference, volunteer for and be sure to have access only to boys of a certain age; (d) BSA conditions boys to the concept of strict obedience to the scout leader in a bonding mechanism that pedophiles crave; (e) BSA promotes the idea of secret ceremonies, rituals and loyalty oaths, all of which facilitate the pedophiles efforts to keep his victims silent and compliant; (f) at the time of the abuse, BSA conducted no criminal or other background checks on these volunteers or even suggested such was advisable.

44.    BSA was aware that it had ejected thousands of pedophiles from its ranks of leadership in local scout troops and failed to inform the scouts and their parents of that fact.

45.    BSA knew or should have known that if they advised parents of this statistical phenomenon, parents might well remove their boys from scouting, thus depriving BSA of millions of dollars of income.

46.    BSA knew or should have known that its "ineligible volunteers" system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as intended, was flawed and, in many cases, ineffective.  Despite that knowledge, BSA

did nothing to educate its scouts and their parents of the ineffectiveness or the enormity of the pedophile problem, or did it take action to correct its screening and/or educational system.

47.    Defendant Antosh was an Assistant Scoutmaster of the Boy Scout Troop 100 in Luzerne, Pennsylvania, and in his capacity, Defendant Antosh exercised a position of authority over S.D. with the knowledge and consent of the Boy Scout Defendants.

48.    The Penn Mountains Council, Boy Scout Troop 100, was controlled, supervised and sponsored by the BSA.

49.    Serving as a BSA Assistant Scoutmaster, Defendant Antosh actively groomed young boys under his charge for later sexual molestation, including the then minor S.D. The Boy Scout Defendants knew or should have known that Defendant Antosh posed a sexual threat to young boys including S.D.

50.    Then minor S.D. had a confidential relationship with the Boy Scout Defendants, individually. Due to his status as a minor, and his reliance upon the Boy Scout Defendants, in part because of a lack of a relationship with his own father, a confidential relationship existed between S.D. and the Boy Scout Defendants as they purported to act with S.D.'s interest in mind.

51.    S.D. looked to the Boy Scout Defendants and Defendant Antosh as a leader and someone who must be trusted and obeyed.

52.    The power differential between then minor S.D. and Assistant Scoutmaster Antosh made it difficult for S.D. to refuse the unwelcomed, sexual advances of Defendant Antosh and report such events to his parents or authorities.

53.    Minors, such as S.D., participating in the Boy Scout Defendants' programing, which included overnights away from their parents, were therefore dependent upon the BSA Defendants for protection and the BSA Defendants were responsible to provide it.

54.     This vulnerability required that the Boy Scout Defendants be vigilant and take all appropriate and proper precautions so that minors who are participating in their programing are doing so in an environment free from the threat of sexual abuse.

55.     A special relationship of trust and confidence existed between then minor S.D. and the Boy Scout Defendants.

56.     His active and regular participation in camping trips and other activities were provided through Boy Scout Defendants. S.D. was strongly encouraged by the Boy Scout Defendants to participate in these camping trips and activities. The Boy Scout Defendants knew or should have known of the specific danger that Defendant Antosh posed previous to the abuse of S.D. The Boy Scout Defendants taught S.D. to respect and trust his Assistant Scoutmaster and the Boy Scout Defendants, generally.

57.     S.D.'s parents trusted Defendant Antosh enough to allow him to take their minor child to overnight camping trips and individual day trips. On these scouting trips, S.D.'s parents entrusted Defendant Antosh and the Boy Scout Defendants to ensure S.D.'s safety and act as his caretaker.

58.     This special relationship between then minor S.D. and the Boy Scout Defendants imposed affirmative duties upon the Boy Scout Defendants to act in the best interest of then minor S.D.

59.     As set forth herein, the Boy Scout Defendants breached that duty to serve in the best interest of S.D. The Boy Scout Defendants failed to disclose their intentional act of fraud and conspiracy and that non-disclosure caused S.D., and would have caused any reasonable person in S.D.'s position, to relax his vigilance and to deviate from his right of inquiry into the torts as set forth herein.

60.    The Boy Scout Defendants were in a superior position to then minor S.D. in that he occupied an inferior position of weakness, inequality and without knowledge or information of the ongoing coverup that the Boy Scout Defendants were perpetuating.

61.    The Boy Scout Defendants taught S.D. to trust and obey his scoutmasters and assistant scoutmasters, including Defendant Antosh. The Boy Scout Defendants' words and actions led S.D. to believe that he was safe with scoutmasters and assistant scoutmasters in general, and with Defendant Antosh in particular.

62.    Furthermore, this trust of the Boy Scout Defendants also led minor S.D. to believe that the abuse that he sustained was an isolated incident when, in fact, he was the victim of a known and preventable hazard that the Boy Scout Defendants had created and allowed to continue. Their refusal to enlighten S.D. led S.D. to relax his vigilance and to inquire no further regarding their torts.

63.    Beginning when S.D. was about twelve or thirteen years old, sometime in approximately 1974 or 1975 and continuing until approximately 1979 or 1980, when S.D. was approximately seventeen years old, Defendant Antosh molested, sexually, physically, mentally, psychologically and emotionally abused then minor S.D. at various times and locations, including but not limited to Camp Acahela in Tobyhanna Township, Pennsylvania and Defendant Antosh's house in Plains Township, Pennsylvania.

64.    Upon information and belief, Defendant's sexual brutality of S.D. included hundreds of instances of fondling, hundreds of incidents of oral sexual assault and repeated attempts of anal penetration.

65.    Defendant Antosh plied then minor S.D. with drugs and alcohol and began his sexual molestation of then minor S.D. by fondling him.

66.     Defendant Antosh's abuse continued to escalate from fondling to performing hundreds of instances of oral sex upon then minor S.D.

67.     In addition to the above-described acts, Defendant Antosh repeatedly attempted to sodomize then minor S.D.

68.     Defendant Antosh's above-described acts constitute conduct in violation of the Pennsylvania Criminal Code.

69.     Plaintiff suffered profound physical, emotional and psychological harm as a result of Defendant Antosh's sexual molestation including, but not limited to sleeplessness, nightmares, anger, depression, anxiety, loss of well-being, and/or self-destructive and abusive behavior in his adult life.

70.     Defendant Antosh destroyed S.D.'s ability to have a normal and happy life.

71.     Without the active participation of the Boy Scout Defendants, Defendant Antosh could not have committed his crimes and inflicted profound psychological injuries against S.D.

72.     Upon information and belief, the Boy Scout Defendants authorized Defendant Antosh to serve as a BSA Assistant Scoutmaster and Defendant Antosh served as such for years prior to his sexual molestation of S.D.

73.     The Boy Scout Defendants thus knew or had reason to know, or were otherwise on notice, of the unlawful sexual conduct of Defendant Antosh and failed to take reasonable steps, and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by him.

74.     The Boy Scout Defendants failed to prevent or avoid Defendant Antosh's placement in a function or environment to prevent one on one contact with adolescent and pre-adolescent boys as an inherent part of that function or environment.

75.    Upon information and belief, by the time that Defendant Antosh began his predacious sexual conduct upon S.D., the Boy Scout Defendants knew or should have known of Defendant Antosh's propensity for such conduct, yet they did not provide to young boys or their families, including S.D. and his parents, any warning of Defendant Antosh's appetite for such harmful, illegal and immoral conduct.

76.    Upon information and belief, at all times relevant hereto, the Boy Scout Defendants knew or should have known of the sexual predacious acts of Defendant Antosh upon S.D. Despite this knowledge, the Boy Scout Defendants asserted no supervisory control over and took no disciplinary action against Defendant Antosh in order to prevent him from committing further harmful, illegal and immoral acts upon S.D.

77.    Upon information and belief, directly contrary to their obligation to watch over and protect young boys and members of their scouting programs, including S.D., the Boy Scout Defendants, as well as Defendant Antosh entered upon, adopted and/or followed a course of conduct, concealed from young boys and their families, and civil and criminal authorities, the harmful, illegal and immoral acts Defendant Antosh committed upon S.D.

78.    Upon information and belief, the course of action entered upon, adopted and/or allowed by the Boy Scout Defendants and Defendant Antosh was part of and consistent with their pattern of concealing the harmful, illegal and immoral acts of other pedophilic Scoutmasters and Assistant Scoutmasters. This pattern included, but was not limited to, concealing and/or destroying evidence of the misconduct of pedophilic Scoutmasters and Assistant Scoutmasters.

79.    The Boy Scout Defendants deliberately withheld information from scouts and their parents, including S.D. and his parents. The withheld information included: the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA were

Case ID: 190800135

Case ID: 190800135

aware; and the methods pedophiles had been using to gain access to scouts, groom them for abuse and keep them silent. The Boy Scout Defendants timely communication of this information would have enabled parents and scouts, including S.D. to protect himself and children involved in scouting from sexual abuse by pedophiles in scouting.

80.     Then minor S.D. did not know nor did he have any reason to know that the Boy Scout Defendants deliberately concealed Defendant Antosh's proclivity for and history of committing sexual abuse, thereby placing him at risk of sexual abuse.

81.     Upon information and belief, the conspiracy among the Boy Scout Defendants and Defendant Antosh to avoid civil and criminal liability for the harmful, illegal and immoral acts of their Scoutmasters/Assistant Scoutmasters, including Defendant Antosh existed before S.D.'s sexual assault at the hands of Defendant Antosh.

82.     Had the Boy Scout Defendants notified or advised S.D., or his parents, or civil authorities, or otherwise been candid with the scouting public regarding the pervasiveness of sexual abuse of boys by an alarmingly large percentage of BSA's adult scout leaders, S.D. would have either (1) not have joined the BSA; or, (2) not been allowed to join the BSA by his parents.

83.     Had the Boy Scout Defendants informed S.D. of the nature and frequency of the risks of abuse by adult scout leaders, S.D. would have taken steps to protect himself from the grooming and sexual abuse to which his adult Assistant Scoutmaster subjected him.

84.     As a direct and proximate result of the negligence, breaches of duty, misconduct, conspiracy, fraud and resulting molestation and sexual assault of S.D. as described herein, S.D. suffered profound physical injury, severe emotional distress, severe depression, anxiety, embarrassment, pain and suffering, humiliation, loss of vocation and loss of earnings, loss of faith and an inability to live a normal life.

## COUNT I – FRAUDULENT CONCEALMENT AND ESTOPPEL
## PLAINTIFF VS. ALL DEFENDANTS

85.   Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth at length herein.

86.   Congress founded BSA in the United States in 1910.

87.   Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction.

88.   Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

89.   Simultaneously, BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years.

90.   BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

91.   BSA fraudulently concealed the said information from S.D. and his parents. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders. BSA made said misrepresentations to S.D. and his parents.

92.   BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

93.   The IV Files revealed that BSA, far from being safe and wholesome, has long acted and been a sanctuary for pedophiles.

94.     The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem).

95.     BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

96.     The overwhelming evidence of the I.V. files at present shows that for a century BSA has known of BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

97.     By 1935, BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

98.     In the 1970s, BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, BSA's secret cache of files on pedophiles exceeded 20,000.

99.     Over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. files.

100.   BSA executives kept no retention logs showing which or how many of the files BSA destroyed. BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

101.   Approximately 6,000 files survived BSA's file-purge and are in BSA's possession. Approximately 1900 of those files are now in the public domain.

102.   The files demonstrate that BSA opened a new I.V. file on a pedophile every other day for fifty years.

103.   The I.V. files demonstrate that BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles, including:

    a.    Scouting provides a pedophile access to boys alone and away from their parents in secluded settings like campouts and overnight hikes;

    b.    Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

    c.    A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

    d.    BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

    e.    BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

    f.    BSA conducted no criminal or other background checks on its volunteers;

    g.    BSA did not prohibit adults from sleeping in tents with boys overnight;

    h.    BSA did not prohibit adult leaders from spending time alone with individual scouts;

    i.    BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

j.   For decades, BSA re-admitted pedophiles it had previously removed for child abuse after a period of BSA "probation," thereby exposing more unsuspecting children to sexual abuse;

k.   BSA had a practice of not reporting scout abuse incidents to law enforcement;

l.   BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

m.   BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

n.   BSA refused to produce its I.V. files to its review board and scout- safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

o.   BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

p.   BSA refused to utilize widely-accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

q.   BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

r.   BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

104.   Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

105.   Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

106.    BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

107.    BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

108.    BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult scout leaders. BSA made repeated false counterfactual claims that the number of pedophiles in scouting was comparatively small, that scouts were reasonably safe from sexual abuse by adult scout leaders, and that BSA is not a magnet for pedophiles, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity of those claims.

109.    S.D. and his parents trusted BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

110.    BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including S.D. and his parents.  It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's timely communication of this information would have enabled scouts, including S.D., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a

congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

111.    BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

112.    Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C. § 30905).  BSA has realized income from these federally-protected assets by marketing them to parents and their children, including S.D.

113.    BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

114.    In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events.

115.    BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

116.    BSA receives many federal subsidies, including (1) free access to national forest lands (16 USC § 539f); (2) free use of Defense Department equipment and facilities for BSA Jamborees (10 U.S.C. § 2554); (3) free ground and air transportation, communications, emergency, and technical services from the National Guard (32 U.S.C. § 508); (4) free use of meeting facilities, transportation, and support services at United States military bases worldwide (10 U.S.C. § 2606); (5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. § 40731); and (6) sale of military surplus (10 U.S.C. §7682) and Department of Agriculture grants (7 U.S.C. § 7630).

117.    Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

     (a)    Failure to report incidents of abuse to law enforcement or child protection agencies;

     (b)    Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

     (c)    Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

118.    Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

119.    The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing S.D.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of S.D.

120.   Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.

121.   As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the profound injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT II
### (Civil Conspiracy)
### (Plaintiff v. All Defendants)

122.   Plaintiff incorporates all preceding paragraphs of this complaint as if fully set forth herein.

123.   The Boy Scout Defendants, by and through their agents and representatives, conspired to cover up incidents of sexual abuse of minors by Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, and to prevent disclosure, prosecution and civil litigation including, but not limited to:

(a)   Failure to report incidents of childhood sexual abuse to law enforcement or child protection agencies;

(b)   Denial of abuse BSA had substantiated; aiding criminal child molesters in evading detection, arrest, and prosecution;

(c)   Allowing pedophiles to cross state and international borders for purposes of gaining access to uninformed parents' children, whom they could sexually abuse; and,

(d)   Failure to warn; and failure to seek out and redress the injuries its adult Scoutmasters and Assistant Scoutmasters had caused.

124.   Based on these actions, the Boy Scout Defendants, by and through their agents and representatives, conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that Defendant Antosh posed to unsuspecting children, including S.D.

125.   The Boy Scout Defendants placed their own interests ahead of the protection of children, including S.D.

126.   The Boy Scout Defendants conspiratorial conduct in concealing the dangers of sexual abuse of Assistant Scoutmasters, including Defendant Antosh, constitutes outrageous or egregious wrongdoing in willful disregard for S.D.'s rights.

127.   As a direct and proximate result of the conspiratorial conduct of the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

128.   The Boy Scout Defendants' conspiracy was ongoing and continues to this date.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT III
### (Willful Misconduct, Wanton Misconduct and Reckless Misconduct)
### (Plaintiff v. All Defendants)

129.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

130.   The conduct described above shows that the Boy Scout Defendants engaged in willful, wanton, and/or reckless misconduct that reflects its conscious disregard of children's health and safety, including S.D. and/or the Boy Scout Defendants' intent to harm.

Case ID: 190800135

Case ID: 190800135

131.   At the very least, the Boy Scout Defendants were recklessly indifferent to injury that would likely result from its acts or omissions.  Defendants knew that pedophiles were infiltrating scouting at an alarming rate, and it knew that children would suffer severe damage and harm from being sexually abused as a result of this infiltration.

132.   S.D. was a victim of the Boy Scout Defendants' reckless indifference and/or their willful and wanton misconduct.

133.   As a direct and proximate result of the willful, wanton and/or reckless misconduct of the Boy Scout and Defendant Antosh, S.D.  was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### (Plaintiff  v. All Defendants)

134.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

135.   Defendant Antosh repeatedly, persistently, and unlawfully sexually abused Plaintiff while he was a minor.

136.   The sexual abuse of then minor S.D. by Defendant Antosh was unlawful.

137.   Defendant Antosh engaged in a pattern of intentional and outrageous activity with the plaintiff that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

138.   At all times relevant hereto, Defendant Antosh knew or should have known that his conduct would cause S.D. to experience, among other things, severe emotional distress and mental trauma.

139.   The Boy Scout Defendants also knew or should have known that Defendant Antosh was a dangerous child molester and sexual predator.

140.   The Boy Scout Defendants knew or should have known of Defendant Antosh' sexual misconduct and knew or should have known that Defendant Antosh' conduct would cause S.D. to experience severe emotional distress and mental anguish, and would make him vulnerable and susceptible to suicide.

141.   The Boy Scout Defendants further knew or should have known that it was substantially certain that the pedophiles, such as Defendant Antosh, would continue to sexually abuse children, including the abuse they inflicted upon Plaintiff, if Defendants failed to warn parents or failed to report the pedophiles to civil authorities and that such abuse would cause severe and emotional distress to S.D.

142.   The Boy Scout Defendants' conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community which resulted in severe physical and emotional distress to S.D.

143.   The Boy Scout Defendants' conduct was a result of a willful, reckless, and outrageous indifference to highly unreasonable risk of harm and a conscious indifference to S.D.'s health, safety, and welfare.

144.   As a direct and proximate result of the intentional conduct of the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT V
### (Negligent Infliction of Emotional Distress)
### (Plaintiff v. All Defendants)

145.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

146.   As a direct and proximate result of the negligence of the Boy Scout Defendants and Defendant Antosh, S.D. sustained severe emotional distress which ultimately resulted in an inability to lead a healthy and normal life and which resulted in physical manifestations of his emotional harm.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VI
### (Assault and Battery)
### (Plaintiff v. Defendant Antosh)

147.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

148.   Each time that Defendant Antosh committed an act of sexual abuse on S.D. as described herein, he did so without consent and committed an unlawful touching of the person of then minor Plaintiff S.D.

149.   As a direct and proximate result of Defendant Antosh's unlawful touching of then minor S.D.'s person without consent, S.D. sustained the damages set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VII
### (Negligence)
### (Plaintiff v. All Defendants)

150.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

151.   At all times relevant hereto, Defendant Antosh was under the direction, supervision and control of the Boy Scout Defendants.

152.   The Boy Scout Defendants selected, accepted, ratified, approved and authorized Defendant Antosh to serve and act as an Assistant Scoutmaster for the benefit of members of Troop 100.

153.   Based upon BSA's knowledge or previous incidents involving pedophiles and its knowledge and information regarding pedophiles within its organization, BSA could reasonably foresee future incidents involving pedophile Scoutmasters, Assistant Scoutmasters, volunteers, employees, agents and/or apparent agents, representatives, including Defendant Antosh.

154.   The Boy Scout Defendants owed a duty to S.D. to prevent child molestors from serving and acting as Assistant Scoutmasters with easy access to children.

Case ID: 190800135

Case ID: 190800135

155.   The Boy Scout Defendants were negligent in screening, training, hiring, supervising and retaining Defendant Antosh as an Assistant Scoutmaster when Defendants knew or should have known that Defendant Antosh posed a threat of sexual abuse to children, including, but not limited to, the following:

(a)   Failing adequately to investigate the previous activities of Defendant Antosh;

(b)   Failing adequately to investigate the background, character and fitness of Defendant Antosh to serve as an Assistant Scoutmaster;

(c)   Failing adequately to investigate and/or inquire into Defendant Antosh' criminal background or history;

(d)   Failing adequately to investigate any Defendant Antosh' prior relationships with minor children;

(e)   Failing adequately to subject Defendant Antosh to appropriate psychological and mental testing in order to uncover his pedophilic and/or homosexual tendencies and proclivities;

(f)   Failing adequately to have in place and/or force systems, policies, and/or procedures to monitor and supervise Scoutmasters and Assistant Scoutmasters who work closely with or come into contact with minor children;

(g)   Allowing Antosh to routinely conduct BSA meetings at his home with no other adults present;

(h)   Allowing Antosh to travel with children with no other adults present;

(i)   Ignoring warning signs that Antosh was using his BSA position to spend hours alone with individual scouts (including Plaintiff) for the purpose of sexually abusing them;

(j)   Failing adequately to discover, investigate, or question the fact that Antosh was utilizing scout meetings to engage in improper "grooming" behaviors to sexually desensitize scouts, including S.D.;

(k)   Failing adequately to take prompt action to remove Antosh as an Assistant Scoutmaster and Youth Leader after complaints and/or suspicions of sexual molestation;

(l)    Failing adequately to take action to investigate all adults involved in scouting after notice that other BSA Scoutmasters, Assistant Scoutmasters and Youth Leaders were sexually abusing scouts;

(m)    Failing adequately to adopt or enforce a two-adult rule;

(n)    Failing adequately to conduct criminal background or other background checks on new or existing Scoutmasters/Assistant Scoutmasters, or more carefully screening Scoutmasters/Assistant Scoutmasters who did not have and/or never had sons in Scouting;

(o)    Failing adequately timely to adopt policies and procedures to protect children;

(p)    Failing adequately to advise parents of statistical data available to BSA from the Ineligible Volunteer Files;

(q)    Failing adequately to advise parents that the I.V. file system of ejection of volunteers as the primary method of protecting Scouts from pedophiles was ineffective;

(r)    Failing adequately to maintain, review and update the Ineligible Volunteer Files;

(s)    Failing adequately to warn parents of information regarding adult Scoutmasters/Assistant Scoutmasters and their propensity to engage in inappropriate behavior with scouts;

(t)    Failing adequately to communicate information regarding Scoutmasters/Assistant Scoutmasters, employees, volunteers, and/or agents to their operative branches and councils, throughout the United States; and,

(u)    Failing adequately to require local councils to submit names of leaders, volunteers and employees for cross checking with the Ineligible Volunteer Files.

156.    During all relevant times hereto, Defendant Antosh was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that Defendant Antosh had a propensity to commit and engage in sexual misconduct.

157.    The Boy Scout Defendants were negligent by failing adequately to supervise the conduct and the activities of Defendant Antosh.

158. If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of Defendant Antosh, they would have known or should have known of the misconduct of Defendant Antosh, so as to prevent the sexual abuse and infliction of emotional distress on S.D.

159. Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of Defendant Antosh, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on S.D.

160. Upon information and belief, the Boy Scout Defendants knew or should have known of Defendant Antosh' propensities to have inappropriate conduct, emotional, sexual, and otherwise, with minor children, but failed to take any disciplinary or remedial action to prevent Defendant Antosh from having contact with minor children, which failure directly resulted in the sexual abuse of S.D.

161. Upon information and belief, the Boy Scout Defendants knew or should have known that Defendant Antosh had committed acts of sexual deviance and impropriety upon minor children, but failed to take any remedial or disciplinary measures against Defendant Antosh, which failure directly resulted in the sexual abuse of S.D.

162. · Upon information and belief, the Boy Scout Defendants failed to discipline Defendant Antosh for the harmful, illegal, and immoral acts he committed on S.D. and failed to report said acts to the appropriate civil and criminal authorities.

163. The conduct of the Boy Scout Defendants was outrageous, shocking and committed with utter disregard for the welfare of S.D.

164.   As a direct and proximate result of the negligence of the Boy Scout and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VIII
### (Statutory Violation; Negligence Per Se)
### (Plaintiff v. All Defendants)

165.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

166.   At all times relevant hereto, the Boy Scout Defendants, by and through their agents, volunteers, and/or employees, in the course of their practice and profession, regularly came into contact with children, such as Plaintiff.

167.   The Boy Scout Defendants, as well as Defendant Antosh, were at all times relevant hereto legally obligated under the "Child Protective Services Law" to report suspected child abuse to the Department of Public Welfare or county child protective service agencies. See 11 P.S. § 2201, et seq. (repealed); 23 Pa. C.S. § 6301, et seq.

168.   Defendant Antosh' sexual assault and exploitation of the then minor S.D. violated Pennsylvania's Child Protective Services Law.

169.   Upon information and belief, Defendant Antosh's sexual assault and exploitation of Plaintiff, and violation of Pennsylvania's Child Protective Services Law, was done with the knowledge and/or acquiescence of the Boy Scout Defendants.

170.   Upon information and belief, the Boy Scout Defendants did not report to civil or criminal authorities various allegations of sexual abuse of children by Defendant Antosh.

171.   As a direct and proximate result of the failure of the Boy Scout Defendants and Defendant Antosh to report to civil or criminal authorities allegations of sexual abuse of minor children by Defendant Antosh, then minor S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT IX
### (Breach of Fiduciary Duty)
### (Plaintiff v. All Defendants)

172.   S.D. incorporates by reference all of the allegations set forth above as if fully stated herein.

173.   As a result of the affiliation S.D. had with the Boy Scout Defendants, a special fiduciary relationship, of human and spiritual trust, concomitant in loco parentis duties, existed between the Plaintiff and the Boy Scout Defendants.

174.   The Boy Scout Defendants were entrusted with the well-being, care, and safety of the then minor S.D. as a result of his status of a boy scout member.

175.   Under this fiduciary relationship, the Boy Scout Defendants assumed a duty to act in the best interests of S.D., to provide a safe haven, and to ensure the S.D.'s physical and emotional care and safety.

176.   The Boy Scout Defendants placed S.D. in the care of Defendant Antosh for the purposes of, inter alia, providing S.D. with education, instruction, training, spiritual guidance,

and counseling.  As such, there existed a fiduciary relationship of trust, confidence, and reliance between the Boy Scout Defendants and S.D.

177.   Plaintiff had a right to rely and did rely upon the representations of the Boy Scout Defendants that the Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, were individuals in good standing and that the Boy Scout Defendants would not tolerate criminal misconduct by its Scoutmasters and Assistant Scoutmasters toward children.

178.   As asserted herein, Defendant Antosh sexually assaulted and molested S.D.

179.   Upon information and belief, the Boy Scout Defendants and Defendant Antosh breached their fiduciary duty through their inaction, manipulation, intimidation, evasion, intended deception, concealment, undue influence, duress, or otherwise as more fully described and set forth herein, resulting in injuries to S.D.

180.   As a direct result of the breach of fiduciary duty of the Boy Scout Defendants and Defendant Antosh, S.D. suffered injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT X
### (Respondeat Superior)
### (Plaintiff v. Boy Scout Defendants)

181.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

182.   The Boy Scout Defendants are liable for the sexual abuse of the then minor S.D. under the doctrine of respondeat superior.

183.   At all times relevant hereto, Defendant Antosh held official positions and/or was performing official duties for the Boy Scout Defendants, and he was acting as an agent of the Boy Scout Defendants.

184.   Defendant Antosh was at all times under the dominion, authority, and control of the Boy Scout Defendants, and was acting within the scope of his agency and/or employment, when he performed the egregious and despicable acts of sexual depravity upon S.D.

185.   The Boy Scout Defendants are vicariously liable as a principal for all torts committed by their agents and/or employees.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

Respectfully Submitted,

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:   *Stewart Eisenberg*
Stewart Eisenberg, Esquire
Joshua B. Schwartz, Esquire
Attorneys for Plaintiff

Date: August 5, 2019



Filed and Attested by the
Office of Judicial Records
05 AUG 2019 03:50 pm
S. PELLEGRINI

## VERIFICATION

The undersigned, having read the attached pleading, verifies that the within pleading is based on information furnished to counsel which information has been gathered by counsel in the course of the within lawsuit.

The language of the pleading is that of counsel and not of signer. Signer verifies that he has read the within pleading and that the factual averments are true and correct to the best of signer's knowledge, information and belief. To the extent that the contents of the pleading are that of counsel and/or legal terminology, verifier has relied upon counsel in taking this verification.

It is understood that the statements therein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities,

Date: 8-5-19



# Exhibit "A"

Case ID: 190800135

Case ID: 190800135

1972



**BOY SCOUTS OF AMERICA**
North Brunswick · New Jersey 08902 · 201 249-6000

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:  Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul Ernst

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
     Management Staff
Attachment

BSA 02205

Case ID: 190800135

Case ID: 190800135

MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of leadership in the areas of age, citizenship, sex, education, morals and emotional stability. This position is set forth in the Bylaws:

> Article II, Section 2, Clause 3 "No person shall be approved as a leader unless, in the judgment of Boy Scouts of America, he possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualifications as it may from time to time require."

> Other supporting Articles are listed in Appendex A.

The local council and the National Council must approve all applications (Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and their enforcement in no way infringes on the rights of any individuals, nor is refusal of registration to be construed as persecution or defamation of character. All leaders register for a limited term (usually one year) and reregistration at the end of that period is also subject to approval (Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that would seem to cause him to be unfit as a leader or an associate of boys, the Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by principals, police reports, court records, newspaper clippings, etc.).

3) Submit evidence and the confidential record sheet to Registration and Subscription.

4) Upon notification from Registration, write a letter to the individual (Appendix B) and hand deliver it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons for refusal to register. Make no accusations -- say we have evidence to convince us that your --(financial affairs)  (moral life) (lack of leadership ability) do not meet the standards for leadership in the BSA. Indicate that the BSA is not sharing this information with anyone and only wish him to stop all Scouting activity.

   After this visit, write down the main parts of the conversation, who was present and the date, and mail this to Registration and Subscription.

BSA 02206

Case ID: 190800135

Case ID: 190800135

-2-

6) If the individual persists, the following review steps are to be taken as required:

   A) Initial Step -- The president of the local council will appoint three volunteers to act as a committee to review the case.

   B) (If Step A does not resolve matter) -- The Regional President will appoint a review committee if the person is not satisfied with the council's decision.

   C) (If Step B does not resolve matter) -- The President of the BSA will appoint a review committee if the individual is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and Subscription about a person attempting to register, he should take the following steps:

   1) Secure as rapidly as possible the necessary answers on the questionnaire and return to Registration and Subscription.

   2) If it is not the same person, the registration certificate will be sent to the council.

   3) If it is the same person, Registration and Subscription will write to the Scout Executive, indicating that the BSA is unwilling to register that person because information we have indicates that he fails to meet our standards of leadership. If the individual questions the statement the Scout Executive may ask him if he has ever been in Scouting in the past and been refused membership.

   If the answer is yes, the Scout Executive may say the reasons remain the same.

   If the answer is no, and the individual insists there has been a mistake, the Scout Executive should instruct him to send a complete statement covering his adult years, including address and dates lived there, occupations and dates, and names of spouse and children to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership in the past wishes to register and the circumstances are changed sufficiently that the BSA is willing to accept the registration on a trial basis. The Scout Executive will be notified in this situation, and requested to keep a close watch on the individual for one year and then give a brief report to Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the offense and the passage of time, and when the standards of leadership seem to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

Case ID: 190800135

-3-

Many times an individual comes to a council seeking registration with the BSA and something unusual causes concern that further checking should be done before registration is completed.

When you find yourself in this situation, we ask that you write or phone directly to Registration and Subscription, asking that we check for any information that might be on file concerning the individual in question. This will immediately help you in your relationships with the individual and give you information as to whether registration should be completed before you do a lot of unnecessary work and make any commitments which could prove embarrassing.

dw~11/15/72

BSA 02208

Case ID: 190800135

Case ID: 190800135

-4-

Appendix A


Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12

dw-11/27/72

BSA 02209

Case ID: 190800135

Case ID: 190800135

-5-

Appendix - B

Dear

After a review of your past history with the Boy Scouts, it has been decided not to accept your registration.  Registration with the Boy Scouts of America is not automatically granted to everyone.  It is a privilege and we reserve the right to refuse registration whenever there is any reason for concern related to the person's association with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship with the Boy Scouts of America.  We are making no accusations and will not release this information to anyone, so our action in no way will affect your standing in the community.

Very truly yours,

Scout Executive

dw

BSA 02210

Case ID: 190800135

Case ID: 190800135

EISENBERG, ROTHWEILER, WINKLER,   ATTORNEYS FOR PLAINTIFF
EISENBERG & JECK, P.C.                        MAJOR JURY TRIAL
By:    Stewart J. Eisenberg, Esquire
         Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

*Filed and Attested by the
Office of Judicial Records
13 SEP 2019 02:46 pm
M. RUSSO*

---

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | AUGUST TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America, et al. | : | NO. 0135 |
| | : | |
| | : | |
| Defendants. | : | |

---

## PRAECIPE TO REINSTATE COMPLAINT

**TO THE PROTHONOTARY:**

Please reinstate the Complaint in the above-captioned matter.

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:   *Joshua B. Schwartz*
        **JOSHUA B. SCHWARTZ**
        **Attorneys for Plaintiff**

Date: September 13, 2019

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**AUGUST 2019**

E-Filing Number: 1908008495

**000135**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| S, D. | BOY SCOUTS OF AMERICA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| NOT GIVEN WILKES-BARRE PA 18704 | 1325 WEST WALNUT HILL LANE SUITE 406 IRVING TX 75038 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PENN MOUNTAINS COUNCIL, BOY SCOUTS OF AMERICA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | KINGSTON CORNERS BUILDING KINGSTON PA 18704 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | PAUL ANTOSH |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 6 CRESCENT DRIVE WILKES-BARRE PA 18705 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 3 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

**AMOUNT IN CONTROVERSY**

[ ] $50,000.00 or less
[X] More than $50,000.00

**COURT PROGRAMS**

[ ] Arbitration
[X] Jury
[ ] Non-Jury
[ ] Other:

[ ] Mass Tort
[ ] Savings Action
[ ] Petition

[ ] Commerce
[ ] Minor Court Appeal
[ ] Statutory Appeals

[ ] Settlement
[ ] Minors
[ ] W/D/Survival

**CASE TYPE AND CODE**

2O - PERSONAL INJURY - OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| **FILED PRO PROTHY** AUG 05 2019 A. SILIGRINI | YES        NO |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: S. D.

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| STEWART J. EISENBERG | EISENBERG ROTHWEILER WINKLER EISENBERG & JECK PC 1634 SPRUCE ST PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215) 546-6636 | (215) 546-0118 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 32151 | marykate@erlegal.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| STEWART EISENBERG | Monday, August 05, 2019, 03:40 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 190800135
Case ID: 190800135



ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:    Stewart J. Eisenberg, Esquire
       Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | TERM, 2019 |
| | : | |
| v. | : | |
| | : | NO. |
| Boys Scouts of America | : | |
| 1325 West Walnut Hill Lane | : | MAJOR JURY TRIAL |
| Suite 406 | : | |
| Irving, TX 75038 | : | |
| | : | |
| and | : | |
| | : | |
| Penn Mountains Council, Boy Scouts of | : | |
| America | : | |
| Kingston Corners Building | : | |
| Kingston, Pennsylvania | : | |
| | : | |
| and | : | |
| | : | |
| Paul Antosh | : | |
| 6 Crescent Drive | : | |
| Wilkes-Barre, Pennsylvania 18705, | : | |
| | : | |
| Defendants. | : | |

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte |

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

(20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Philadelphia Bar Association
Lawyer Referral
And Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

(20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta ascentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Ademas, la corte pude decidar a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

2

Case ID: 190800135

Case ID: 190800135
Case ID: 190800135

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:    Stewart J. Eisenberg, Esquire
       Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| Plaintiff, | : | |
| | : | TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America | : | NO. |
| 1325 West Walnut Hill Lane | : | |
| Suite 406 | : | MAJOR JURY TRIAL |
| Irving, TX 75038 | : | |
| | : | |
| and | : | |
| | : | |
| Penn Mountains Council, Boy Scouts of | : | |
| America | : | |
| Kingston Corners Building | : | |
| Kingston, Pennsylvania | : | |
| | : | |
| and | : | |
| | : | |
| Paul Antosh | : | |
| 6 Crescent Drive | : | |
| Wilkes-Barre, Pennsylvania 18705, | : | |
| | : | |
| Defendants. | : | |

### CIVIL ACTION COMPLAINT

AND NOW COMES the Plaintiff, S.D., by and through his legal counsel, Stewart J. Eisenberg, Esquire and Joshua B. Schwartz, Esquire of the law firm of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., and avers the following:

### I.    INTRODUCTION:

1.    This Complaint is based on the childhood sexual abuse of Plaintiff, S.D. ("S.D." or "Plaintiff") caused by the negligent, willful, wanton, reckless and tortious acts and omissions of Defendant, Boy Scouts of America, Penn Mountains Council, Boy Scouts of America and Paul Antosh, formerly an Assistant Scoutmaster.

2.    The Boy Scouts of America (hereinafter sometimes referred to as "BSA") is the largest youth organization in the United States with approximately five million members. BSA was chartered in 1910 by an Act of Congress. An estimated 20% of American boys have had contact with scouting, either as members or by attending scout functions.

3.    Throughout its history, the BSA has consistently held itself out to the public as a "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction. Millions of parents and scouts have placed their trust in the BSA.

4.    Paradoxically, the BSA promotes the wholesomeness of its program while knowing that since the 1940s, it has been secretly removing Scoutmasters for child sexual abuse at an alarming rate, which in the 1970s reached an average of one every three days. Its own records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts, far from being safe, are at the heightened risk of sexual abuse by child molesters.

### II.    PARTIES:

5.      S.D., is an adult citizen and resident of the Commonwealth of Pennsylvania and currently resides in Luzerne County, Pennsylvania.

6.      At all times relevant hereto, S.D. was a young boy living with his parents in Luzerne County, Pennsylvania and was enrolled in the BSA scouting programs.

7.      At all times relevant hereto, Defendant, Boy Scouts of America, was and is a congressionally chartered corporation with a principal place of business at 1325 West Walnut Hill Lane, Suite 406, Irving, Texas. BSA is authorized to do business and is doing business in the Commonwealth of Pennsylvania and in the City and County of Philadelphia, through various local and regional boy scout organizations and councils.

8.      Defendant, Boy Scouts of America, operates, promotes, oversees, guides, sets standards and establishes policies, protocols and procedures for youth organizations nationally through various local, state and regional organizations including those of Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

9.      Defendant, Boy Scouts of America, develops programs, sets and maintains quality standards in training, leadership selection, uniforms, registration records, literature development, advanced requirements for youth organizations nationally through various local, state and regional organizations, including those of Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

10.     Defendant, Boy Scouts of America grants charters to local councils and organizations to operate and conduct boy scout activities within their geographic areas, including Boy Scout Troop 100 of the Penn Mountains Council, Boy Scouts of America.

11.     At all times relevant hereto, Defendant, Penn Mountains Council, Boy Scouts of America (hereinafter sometimes referred to as "Penn Mountains Council") was and is a

Pennsylvania non-profit corporation with a business address of Kingston Corners Building, Kingston, Pennsylvania and was and is authorized to do business in the Commonwealth of Pennsylvania and the City and County of Luzerne, Pennsylvania.

12.     Penn Mountains Council, like all BSA councils in the United States was at all relevant times an agent of the Boy Scouts of America.

13.     Penn Mountains Council, like all chartered BSA councils, is and was controlled and directed by the BSA to such a degree, that it is the alter ego of the Boy Scouts of America.

14.     Penn Mountains Council's separate corporate status should be disregarded and its assets treated as the property of the parent corporation, Boy Scouts of America.

15.     For example, and for illustrative purposes only, Penn Mountains Council may only hire individuals from a list of approved candidates provided by the Boy Scouts of America; Penn Mountains Council's existence as a scouting organization is wholly dependent on BSA. Its charter can be revoked by BSA at any time with or without cause; Penn Mountains Council is co-jointly insured with the BSA on its CGL policies which premiums are paid by BSA.

16.     On information and belief, Penn Mountains Council holds legal title to real estate and personal property for and on behalf of the BSA.  Plaintiff asks the court to impose a constructive trust on Penn Mountains Council's assets to prevent unjust enrichment to BSA which has disguised its beneficial ownership of assets held in the name of Penn Mountains Council.

17.     Upon information and belief, Penn Mountains Council was and is a chartered organization of the Boy Scouts of America.

18.     Penn Mountains Council, as a chartered organization of the Boy Scouts of America, administers the programs, guidelines and policies of the Defendant, Boy Scouts of America in and around Luzerne County, Pennsylvania region.

19.     The Boy Scouts of America and the Penn Mountains Council Defendants will be referred to hereinafter collectively as "Boy Scout Defendants".

20.     At all times relevant hereto, the Boy Scout Defendants acted by and through their duly authorized agents, representatives, volunteers, servants and/or employees.

21.     At all times relevant hereto, the Boy Scout Defendants operated various programs for young boys, including S.D. and authorized, approved, ratified and selected adults to serve as Scoutmasters and Assistant Scoutmasters.

22.     The Boy Scout Defendants, acting by and through their duly authorized agents, operated and/or controlled a boy scout troop in Luzerne County, Pennsylvania, known as Troop 100.

23.     At all times relevant hereto, then minor S.D. was a member of Boy Scout Troop 100 of the Penn Mountains Council.

24.     At all times relevant hereto, Defendant, Paul Antosh ("Defendant Antosh"), was an Assistant Scoutmaster for Troop 100 and was selected, accepted, ratified, approved and authorized by the Boy Scout Defendants to serve in his capacity for the purpose of educating, instructing and training young boys, including S.D., in morality, patriotism and various life skills who resides at 6 Crescent Drive, Wilkes Barre, Pennsylvania 18705.

25.     At all times relevant hereto, Defendant Antosh served and acted as a duly authorized and ratified agent, employee, servant, representative and/or volunteer of the Boy

Scout Defendants, and was subject to the authority, dominion and control of the Boy Scout Defendants.

### III.   FACTS:

26.   At all times relevant hereto, for the purpose of furthering his duties as an Assistant Scoutmaster, Defendant Antosh sought and gained the then minor S.D.'s trust, friendship, admiration and obedience.  As a result, S.D. was conditioned to comply with Defendant Antosh's direction and to look to him as an authority figure.

27.   At all relevant times hereto, using the power, authority and trust of his position as an Assistant Scoutmaster, and availing himself of the Boy Scout Defendants' representations to parents and scouts that the BSA was a moral and safe place for young boys, Defendant Antosh enticed, induced, directed, coerced and forced S.D. to engage in deviant sexual acts with him.

28.   At all times relevant hereto, Defendant Antosh utilized physical, emotional and spiritual force and persuasion to impose his moral will upon the then minor S.D. in order to commit grievous, unspeakable acts of sexual abuse upon the person of then minor S.D. all of which acts constitute flagrant abuse of the symbolism, power and authority of his position as an Assistant Scoutmaster.

29.   A reasonable person would not have suspected or investigated the BSA or the Penn Mountains Council before having learned of the widespread pedophilia allegations leveled against the Boy Scouts of America through a television outreach effort in or about May of 2019.

30.   This television outreach effort and subsequent discussions with legal counsel gave S.D. a reason to investigate, for the first time, that the conspiracy and fraud committed by the Boy Scout Defendants set forth herein was the cause of S.D.'s harm.

Case ID: 190800135

Case ID: 190800135

31.     Before seeing the television outreach efforts and speaking with legal counsel, S.D. did not realize that the Boy Scout Defendants had known about their widespread pedophilia epidemic and did not know of their efforts to conceal it.

32.     In or around May, 2019, legal counsel advised S.D. that over 350 survivors of Boy Scout childhood sexual abuse had retained their law firm to investigate cases against the Boy Scouts of America.

33.     Upon learning of the Boy Scout Defendants pedophilia epidemic and the Boy Scout Defendants' efforts to cover-up this epidemic, S.D. became aware for the first time that he may be able to bring a law suit against the Boy Scout Defendants pursuant to the allegations set forth herein.

34.     Despite the Boy Scouts of America being forced to publicly disclose their hereinafter referenced Ineligible Volunteer Files, it is apparent that the Boy Scout Defendants continue to hide the true nature of their cover-up and the extent of the pedophilia epidemic within their organizations because the vast majority of the new victims coming forward involve claims of abuse at the hands of pedophiles who are not yet identified by the Boy Scouts of America in their publicly released Ineligible Volunteer Files.  Upon information and belief, there are over three-hundred and fifty persons who have been identified by S.D.'s counsel's clients that have not been included in BSA's Ineligible Volunteer Files.

35.     Therefore, upon information and belief, the Boy Scout Defendants continue to perpetuate a continuing and serious conspiracy to conceal and cover-up many of the abusers in BSA scout troops throughout the United States and overseas

36.     Moreover, no reasonable person could have suspected, much less investigated, that the Boy Scout Defendants were a cause of his harm until more public reports were made

Case ID: 190800135

known of the extent of the BSA defendants' widespread pedophilia problem within their ranks. As set forth herein, the Boy Scout defendants suppressed their conduct from public view within their secret archive as well as through a continued and systematic attempt to coverup the pedophilia problem from public view through the present date.

37.     Unlike Grand Jury reports that have been publicly disseminated in Pennsylvania concerning sexual abuse scandals within various Archdioceses across the state, no such Grand Jury, police force, district attorney's office or governmental agency has investigated the Boy Scout Defendants to date with regard to their child sexual abuse scandal and cover-up.

38.     In fact, none of the Commonwealth's prosecutors, investigators or child protection departments have discovered the Boy Scout Defendants' systematic conduct over the past century. Thus, it would not be fair to conclude that SD's similar failure to discover the conduct was unreasonable, as a matter of law.

39.     BSA knew for decades that sexual predators of boys had infiltrated scouting. BSA knew or should have known the dangers that pedophiles presented to boy scouts and either knew or should have known the danger that Defendant Antosh presented to children, including S.D., but instead ignored that danger and permitted him and other pedophiles in scouting to prey upon young boys, including then minor S.D.

40.     Since approximately 1919, the BSA has maintained a group of files known as the red files, perversion files or ineligible volunteer files.

41.     BSA's own internal "ineligible volunteer files" collected and maintained in secrecy for 70 years, revealed that scouting is a "pedophile magnet", in that removed pedophiles were often able to reenter scouting at other locations.

42.    BSA's confidential records demonstrate both its awareness of scouting's attraction to pedophiles, and also the distinctive characteristics of scouting that render scouts particularly susceptible to pedophiles.

43.    BSA knew or should have known that scouting attracts pedophiles, in part, because (a) scouting provides the pedophile access to boys alone and away from their parents in secluded settings like camp outs and overnight hikes; (b) scouting provides opportunities for the pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him; (c) the pedophile scout leader can, depending on the pedophile's age preference, volunteer for and be sure to have access only to boys of a certain age; (d) BSA conditions boys to the concept of strict obedience to the scout leader in a bonding mechanism that pedophiles crave; (e) BSA promotes the idea of secret ceremonies, rituals and loyalty oaths, all of which facilitate the pedophiles efforts to keep his victims silent and compliant; (f) at the time of the abuse, BSA conducted no criminal or other background checks on these volunteers or even suggested such was advisable.

44.    BSA was aware that it had ejected thousands of pedophiles from its ranks of leadership in local scout troops and failed to inform the scouts and their parents of that fact.

45.    BSA knew or should have known that if they advised parents of this statistical phenomenon, parents might well remove their boys from scouting, thus depriving BSA of millions of dollars of income.

46.    BSA knew or should have known that its "ineligible volunteers" system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as intended, was flawed and, in many cases, ineffective.  Despite that knowledge, BSA

did nothing to educate its scouts and their parents of the ineffectiveness or the enormity of the pedophile problem, or did it take action to correct its screening and/or educational system.

47.    Defendant Antosh was an Assistant Scoutmaster of the Boy Scout Troop 100 in Luzerne, Pennsylvania, and in his capacity, Defendant Antosh exercised a position of authority over S.D. with the knowledge and consent of the Boy Scout Defendants.

48.    The Penn Mountains Council, Boy Scout Troop 100, was controlled, supervised and sponsored by the BSA.

49.    Serving as a BSA Assistant Scoutmaster, Defendant Antosh actively groomed young boys under his charge for later sexual molestation, including the then minor S.D. The Boy Scout Defendants knew or should have known that Defendant Antosh posed a sexual threat to young boys including S.D.

50.    Then minor S.D. had a confidential relationship with the Boy Scout Defendants, individually. Due to his status as a minor, and his reliance upon the Boy Scout Defendants, in part because of a lack of a relationship with his own father, a confidential relationship existed between S.D. and the Boy Scout Defendants as they purported to act with S.D.'s interest in mind.

51.    S.D. looked to the Boy Scout Defendants and Defendant Antosh as a leader and someone who must be trusted and obeyed.

52.    The power differential between then minor S.D. and Assistant Scoutmaster Antosh made it difficult for S.D. to refuse the unwelcomed, sexual advances of Defendant Antosh and report such events to his parents or authorities.

53.    Minors, such as S.D., participating in the Boy Scout Defendants' programing, which included overnights away from their parents, were therefore dependent upon the BSA Defendants for protection and the BSA Defendants were responsible to provide it.

54.     This vulnerability required that the Boy Scout Defendants be vigilant and take all appropriate and proper precautions so that minors who are participating in their programing are doing so in an environment free from the threat of sexual abuse.

55.     A special relationship of trust and confidence existed between then minor S.D. and the Boy Scout Defendants.

56.     His active and regular participation in camping trips and other activities were provided through Boy Scout Defendants. S.D. was strongly encouraged by the Boy Scout Defendants to participate in these camping trips and activities. The Boy Scout Defendants knew or should have known of the specific danger that Defendant Antosh posed previous to the abuse of S.D. The Boy Scout Defendants taught S.D. to respect and trust his Assistant Scoutmaster and the Boy Scout Defendants, generally.

57.     S.D.'s parents trusted Defendant Antosh enough to allow him to take their minor child to overnight camping trips and individual day trips. On these scouting trips, S.D.'s parents entrusted Defendant Antosh and the Boy Scout Defendants to ensure S.D.'s safety and act as his caretaker.

58.     This special relationship between then minor S.D. and the Boy Scout Defendants imposed affirmative duties upon the Boy Scout Defendants to act in the best interest of then minor S.D.

59.     As set forth herein, the Boy Scout Defendants breached that duty to serve in the best interest of S.D. The Boy Scout Defendants failed to disclose their intentional act of fraud and conspiracy and that non-disclosure caused S.D., and would have caused any reasonable person in S.D.'s position, to relax his vigilance and to deviate from his right of inquiry into the torts as set forth herein.

60. The Boy Scout Defendants were in a superior position to then minor S.D. in that he occupied an inferior position of weakness, inequality and without knowledge or information of the ongoing coverup that the Boy Scout Defendants were perpetuating.

61. The Boy Scout Defendants taught S.D. to trust and obey his scoutmasters and assistant scoutmasters, including Defendant Antosh. The Boy Scout Defendants' words and actions led S.D. to believe that he was safe with scoutmasters and assistant scoutmasters in general, and with Defendant Antosh in particular.

62. Furthermore, this trust of the Boy Scout Defendants also led minor S.D. to believe that the abuse that he sustained was an isolated incident when, in fact, he was the victim of a known and preventable hazard that the Boy Scout Defendants had created and allowed to continue. Their refusal to enlighten S.D. led S.D. to relax his vigilance and to inquire no further regarding their torts.

63. Beginning when S.D. was about twelve or thirteen years old, sometime in approximately 1974 or 1975 and continuing until approximately 1979 or 1980, when S.D. was approximately seventeen years old, Defendant Antosh molested, sexually, physically, mentally, psychologically and emotionally abused then minor S.D. at various times and locations, including but not limited to Camp Acahela in Tobyhanna Township, Pennsylvania and Defendant Antosh's house in Plains Township, Pennsylvania.

64. Upon information and belief, Defendant's sexual brutality of S.D. included hundreds of instances of fondling, hundreds of incidents of oral sexual assault and repeated attempts of anal penetration.

65. Defendant Antosh plied then minor S.D. with drugs and alcohol and began his sexual molestation of then minor S.D. by fondling him.

66. Defendant Antosh's abuse continued to escalate from fondling to performing hundreds of instances of oral sex upon then minor S.D.

67. In addition to the above-described acts, Defendant Antosh repeatedly attempted to sodomize then minor S.D.

68. Defendant Antosh's above-described acts constitute conduct in violation of the Pennsylvania Criminal Code.

69. Plaintiff suffered profound physical, emotional and psychological harm as a result of Defendant Antosh's sexual molestation including, but not limited to sleeplessness, nightmares, anger, depression, anxiety, loss of well-being, and/or self-destructive and abusive behavior in his adult life.

70. Defendant Antosh destroyed S.D.'s ability to have a normal and happy life.

71. Without the active participation of the Boy Scout Defendants, Defendant Antosh could not have committed his crimes and inflicted profound psychological injuries against S.D.

72. Upon information and belief, the Boy Scout Defendants authorized Defendant Antosh to serve as a BSA Assistant Scoutmaster and Defendant Antosh served as such for years prior to his sexual molestation of S.D.

73. The Boy Scout Defendants thus knew or had reason to know, or were otherwise on notice, of the unlawful sexual conduct of Defendant Antosh and failed to take reasonable steps, and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by him.

74. The Boy Scout Defendants failed to prevent or avoid Defendant Antosh's placement in a function or environment to prevent one on one contact with adolescent and pre-adolescent boys as an inherent part of that function or environment.

75.     Upon Information and belief, by the time that Defendant Antosh began his predacious sexual conduct upon S.D., the Boy Scout Defendants knew or should have known of Defendant Antosh's propensity for such conduct, yet they did not provide to young boys or their families, including S.D. and his parents, any warning of Defendant Antosh's appetite for such harmful, illegal and immoral conduct.

76.     Upon Information and belief, at all times relevant hereto, the Boy Scout Defendants knew or should have known of the sexual predacious acts of Defendant Antosh upon S.D.  Despite this knowledge, the Boy Scout Defendants asserted no supervisory control over and took no disciplinary action against Defendant Antosh in order to prevent him from committing further harmful, illegal and immoral acts upon S.D.

77.     Upon information and belief, directly contrary to their obligation to watch over and protect young boys and members of their scouting programs, including S.D., the Boy Scout Defendants, as well as Defendant Antosh entered upon, adopted and/or followed a course of conduct, concealed from young boys and their families, and civil and criminal authorities, the harmful, illegal and immoral acts Defendant Antosh committed upon S.D.

78.     Upon information and belief, the course of action entered upon, adopted and/or allowed by the Boy Scout Defendants and Defendant Antosh was part of and consistent with their pattern of concealing the harmful, illegal and immoral acts of other pedophilic Scoutmasters and Assistant Scoutmasters.  This pattern included, but was not limited to, concealing and/or destroying evidence of the misconduct of pedophilic Scoutmasters and Assistant Scoutmasters.

79.     The Boy Scout Defendants deliberately withheld information from scouts and their parents, including S.D. and his parents.  The withheld information included: the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA were

aware; and the methods pedophiles had been using to gain access to scouts, groom them for abuse and keep them silent. The Boy Scout Defendants timely communication of this information would have enabled parents and scouts, including S.D. to protect himself and children involved in scouting from sexual abuse by pedophiles in scouting.

80.    Then minor S.D. did not know nor did he have any reason to know that the Boy Scout Defendants deliberately concealed Defendant Antosh's proclivity for and history of committing sexual abuse, thereby placing him at risk of sexual abuse.

81.    Upon information and belief, the conspiracy among the Boy Scout Defendants and Defendant Antosh to avoid civil and criminal liability for the harmful, illegal and immoral acts of their Scoutmasters/Assistant Scoutmasters, including Defendant Antosh existed before S.D.'s sexual assault at the hands of Defendant Antosh.

82.    Had the Boy Scout Defendants notified or advised S.D., or his parents, or civil authorities, or otherwise been candid with the scouting public regarding the pervasiveness of sexual abuse of boys by an alarmingly large percentage of BSA's adult scout leaders, S.D. would have either (1) not have joined the BSA; or, (2) not been allowed to join the BSA by his parents.

83.    Had the Boy Scout Defendants informed S.D. of the nature and frequency of the risks of abuse by adult scout leaders, S.D. would have taken steps to protect himself from the grooming and sexual abuse to which his adult Assistant Scoutmaster subjected him.

84.    As a direct and proximate result of the negligence, breaches of duty, misconduct, conspiracy, fraud and resulting molestation and sexual assault of S.D. as described herein, S.D. suffered profound physical injury, severe emotional distress, severe depression, anxiety, embarrassment, pain and suffering, humiliation, loss of vocation and loss of earnings, loss of faith and an inability to live a normal life.

## COUNT I – FRAUDULENT CONCEALMENT AND ESTOPPEL
## PLAINTIFF VS. ALL DEFENDANTS

85.  Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth at length herein.

86.  Congress founded BSA in the United States in 1910.

87.  Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance and instruction.

88.  Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American Public.

89.  Simultaneously, BSA fraudulently concealed from Congress, scouts, their parents and the American taxpayer BSA's certain knowledge that pedophiles had been infiltrating BSA in large numbers for many years.

90.  BSA, pursuant to its Congressional Charter in 1916, later codified by 36 U.S.C. Chapter 309 is required to file an annual report to Congress.

91.  BSA fraudulently concealed the said information from S.D. and his parents. BSA also misrepresented to scouts, their parents and the American taxpayer that the scouts were safe in scouting programs when, in fact, scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders. BSA made said misrepresentations to S.D. and his parents.

92.  BSA's internal records known as the "Ineligible Volunteer" files (hereinafter referred to as "The IV Files") are a unique repository of documents BSA secretly began amassing shortly after its founding in 1910.

93.  The IV Files revealed that BSA, far from being safe and wholesome, has long acted and been a sanctuary for pedophiles.

94.     The IV Files contain internal memoranda demonstrating BSA's awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community. See Exhibit "A" (The Ernst Memorandum evidencing the BSA and the local council's ongoing conspiracy to suppress from the public its certain knowledge of its pedophile infiltration problem).

95.     BSA's I.V. files are a hidden repository of informative data containing the identities of pedophiles that have successfully infiltrated scouting. The I.V. files highlight BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles' patterns for grooming victims, and widely-found biographical and behavioral characteristics shared by pedophiles that had entered or were attempting to enter scouting.

96.     The overwhelming evidence of the I.V. files at present shows that for a century BSA has known of BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

97.     By 1935, BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

98.     In the 1970s, BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files. By 2005, BSA's secret cache of files on pedophiles exceeded 20,000.

99.     Over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. files.

100.   BSA executives kept no retention logs showing which or how many of the files BSA destroyed. BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

101.   Approximately 6,000 files survived BSA's file-purge and are in BSA's possession. Approximately 1900 of those files are now in the public domain.

102.   The files demonstrate that BSA opened a new I.V. file on a pedophile every other day for fifty years.

103.   The I.V. files demonstrate that BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles, including:

   a.   Scouting provides a pedophile access to boys alone and away from their parents in secluded settings like campouts and overnight hikes;

   b.   Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

   c.   A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

   d.   BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

   e.   BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

   f.   BSA conducted no criminal or other background checks on its volunteers;

   g.   BSA did not prohibit adults from sleeping in tents with boys overnight;

   h.   BSA did not prohibit adult leaders from spending time alone with individual scouts;

   i.   BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

j.    For decades, BSA re-admitted pedophiles it had previously removed for child abuse after a period of BSA "probation," thereby exposing more unsuspecting children to sexual abuse;

k.    BSA had a practice of not reporting scout abuse incidents to law enforcement;

l.    BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

m.    BSA refused requests to share its list of known abusers with other youth organizations, knowing that pedophiles it had ejected often joined other youth-serving organizations;

n.    BSA refused to produce its I.V. files to its review board and scout- safety consultants, who were endeavoring to develop and implement meaningful safeguards and barriers to pedophile infiltration;

o.    BSA refused to fingerprint, photograph or perform background checks on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to scouting through another troop;

p.    BSA refused to utilize widely-accepted organizational best practices that would establish reasonable barriers to intrusion by pedophiles;

q.    BSA refused to educate local councils, staff, and troop leaders regarding the true risks posed by pedophiles to scouts; and

r.    BSA refused to effectively monitor local councils and troops to ensure that appropriate safeguards were being used in the selection and retention of adult scout leaders.

104.   Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout leaders.

105.   Since 1987, BSA has paid millions of dollars in settlements and verdicts arising from sexual abuse of scouts by scout leaders. Upon information and belief, many of these settlements included confidentiality agreements required by BSA to prevent the facts and circumstances of the abuse from becoming public.

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

106. BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

107. BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

108. BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult scout leaders. BSA made repeated false counterfactual claims that the number of pedophiles in scouting was comparatively small, that scouts were reasonably safe from sexual abuse by adult scout leaders, and that BSA is not a magnet for pedophiles, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity of those claims.

109. S.D. and his parents trusted BSA and reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

110. BSA deliberately withheld information from Congress in its annual report from scouts and their parents, including S.D. and his parents. It withheld information about the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent. BSA's timely communication of this information would have enabled scouts, including S.D., to protect himself from sexual abuse by pedophiles in scouting. It would have enabled Congress to perform its constitutional oversight function over a

congressionally-chartered, tax-payer funded and tax-exempt youth organization which brings unscreened, unvetted adults into contact with tens of millions of children annually.

111. BSA had a financial incentive to withhold facts and information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmasters.

112. Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (See 36 U.S.C. § 30905). BSA has realized income from these federally-protected assets by marketing them to parents and their children, including S.D.

113. BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA. This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others. This system includes overnight outings, camping events, and trips away from parents. The system is reward based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally charted organization.

114. In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events.

115. BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

116. BSA receives many federal subsidies, including (1) free access to national forest lands (16 USC § 539f); (2) free use of Defense Department equipment and facilities for BSA Jamborees (10 U.S.C. § 2554); (3) free ground and air transportation, communications, emergency, and technical services from the National Guard (32 U.S.C. § 508); (4) free use of meeting facilities, transportation, and support services at United States military bases worldwide (10 U.S.C. § 2606); (5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. § 40731); and (6) sale of military surplus (10 U.S.C. §7682) and Department of Agriculture grants (7 U.S.C. § 7630).

117. Upon information and belief, the Boy Scout Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by Scoutmasters and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including, but not limited to:

(a) Failure to report incidents of abuse to law enforcement or child protection agencies;

(b) Concealment of abuse they had substantiated and failure to seek out and redress the injuries its Scoutmasters and leaders had caused; and

(c) Failure to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that BSA's system of "Ineligible Volunteer Files" was ineffective at curbing the problem.

118. Based on these actions, the Boy Scout Defendants engaged in fraudulent concealment and are estopped from asserting the defense of statute of limitations and/or laches.

119. The above described conduct of the Boy Scout Defendants was willful and outrageous, was committed in reckless disregard of the probability of causing S.D.'s severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of S.D.

120.   Additionally, in doing the acts as described herein, the Boy Scout Defendants were guilty of fraud, oppression, or malice.

121.   As a direct and proximate result of the practice of deceit, deception, concealment and fraud by the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the profound injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT II
### (Civil Conspiracy)
### (Plaintiff v. All Defendants)

122.   Plaintiff incorporates all preceding paragraphs of this complaint as if fully set forth herein.

123.   The Boy Scout Defendants, by and through their agents and representatives, conspired to cover up incidents of sexual abuse of minors by Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, and to prevent disclosure, prosecution and civil litigation including, but not limited to:

(a)   Failure to report incidents of childhood sexual abuse to law enforcement or child protection agencies;

(b)   Denial of abuse BSA had substantiated; aiding criminal child molesters in evading detection, arrest, and prosecution;

(c)   Allowing pedophiles to cross state and international borders for purposes of gaining access to uninformed parents' children, whom they could sexually abuse; and,

(d)   Failure to warn; and failure to seek out and redress the injuries its adult Scoutmasters and Assistant Scoutmasters had caused.

124.   Based on these actions, the Boy Scout Defendants, by and through their agents and representatives, conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that Defendant Antosh posed to unsuspecting children, including S.D.

125.   The Boy Scout Defendants placed their own interests ahead of the protection of children, including S.D.

126.   The Boy Scout Defendants conspiratorial conduct in concealing the dangers of sexual abuse of Assistant Scoutmasters, including Defendant Antosh, constitutes outrageous or egregious wrongdoing in willful disregard for S.D.'s rights.

127.   As a direct and proximate result of the conspiratorial conduct of the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

128.   The Boy Scout Defendants' conspiracy was ongoing and continues to this date.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT III
### (Willful Misconduct, Wanton Misconduct and Reckless Misconduct)
### (Plaintiff v. All Defendants)

129.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

130.   The conduct described above shows that the Boy Scout Defendants engaged in willful, wanton, and/or reckless misconduct that reflects its conscious disregard of children's health and safety, including S.D. and/or the Boy Scout Defendants' intent to harm.

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

131.   At the very least, the Boy Scout Defendants were recklessly indifferent to injury that would likely result from its acts or omissions. Defendants knew that pedophiles were infiltrating scouting at an alarming rate, and it knew that children would suffer severe damage and harm from being sexually abused as a result of this infiltration.

132.   S.D. was a victim of the Boy Scout Defendants' reckless indifference and/or their willful and wanton misconduct.

133.   As a direct and proximate result of the willful, wanton and/or reckless misconduct of the Boy Scout and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT IV
### (Intentional Infliction of Emotional Distress)
### (Plaintiff v. All Defendants)

134.   Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

135.   Defendant Antosh repeatedly, persistently, and unlawfully sexually abused Plaintiff while he was a minor.

136.   The sexual abuse of then minor S.D. by Defendant Antosh was unlawful.

137.   Defendant Antosh engaged in a pattern of intentional and outrageous activity with the plaintiff that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

Case ID: 190800135

Case ID: 190800135

138.    At all times relevant hereto, Defendant Antosh knew or should have known that his conduct would cause S.D. to experience, among other things, severe emotional distress and mental trauma.

139.    The Boy Scout Defendants also knew or should have known that Defendant Antosh was a dangerous child molester and sexual predator.

140.    The Boy Scout Defendants knew or should have known of Defendant Antosh' sexual misconduct and knew or should have known that Defendant Antosh' conduct would cause S.D. to experience severe emotional distress and mental anguish, and would make him vulnerable and susceptible to suicide.

141.    The Boy Scout Defendants further knew or should have known that it was substantially certain that the pedophiles, such as Defendant Antosh, would continue to sexually abuse children, including the abuse they inflicted upon Plaintiff, if Defendants failed to warn parents or failed to report the pedophiles to civil authorities and that such abuse would cause severe and emotional distress to S.D.

142.    The Boy Scout Defendants' conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community which resulted in severe physical and emotional distress to S.D.

143.    The Boy Scout Defendants' conduct was a result of a willful, reckless, and outrageous indifference to highly unreasonable risk of harm and a conscious indifference to S.D.'s health, safety, and welfare.

144.  As a direct and proximate result of the intentional conduct of the Boy Scout Defendants and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT V
### (Negligent Infliction of Emotional Distress)
### (Plaintiff v. All Defendants)

145.  Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

146.  As a direct and proximate result of the negligence of the Boy Scout Defendants and Defendant Antosh, S.D. sustained severe emotional distress which ultimately resulted in an inability to lead a healthy and normal life and which resulted in physical manifestations of his emotional harm.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT VI
### (Assault and Battery)
### (Plaintiff v. Defendant Antosh)

147.  Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

148.  Each time that Defendant Antosh committed an act of sexual abuse on S.D. as described herein, he did so without consent and committed an unlawful touching of the person of then minor Plaintiff S.D.

149.  As a direct and proximate result of Defendant Antosh's unlawful touching of then minor S.D.'s person without consent, S.D. sustained the damages set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VII
### (Negligence)
### (Plaintiff v. All Defendants)

150.  Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

151.  At all times relevant hereto, Defendant Antosh was under the direction, supervision and control of the Boy Scout Defendants.

152.  The Boy Scout Defendants selected, accepted, ratified, approved and authorized Defendant Antosh to serve and act as an Assistant Scoutmaster for the benefit of members of Troop 100.

153.  Based upon BSA's knowledge or previous incidents involving pedophiles and its knowledge and information regarding pedophiles within its organization, BSA could reasonably foresee future incidents involving pedophile Scoutmasters, Assistant Scoutmasters, volunteers, employees, agents and/or apparent agents, representatives, including Defendant Antosh.

154.  The Boy Scout Defendants owed a duty to S.D. to prevent child molestors from serving and acting as Assistant Scoutmasters with easy access to children.

Case ID: 190800135

Case ID: 190800135

155.    The Boy Scout Defendants were negligent in screening, training, hiring, supervising and retaining Defendant Antosh as an Assistant Scoutmaster when Defendants knew or should have known that Defendant Antosh posed a threat of sexual abuse to children, including, but not limited to, the following:

(a)    Failing adequately to investigate the previous activities of Defendant Antosh;

(b)    Failing adequately to investigate the background, character and fitness of Defendant Antosh to serve as an Assistant Scoutmaster;

(c)    Failing adequately to investigate and/or inquire into Defendant Antosh' criminal background or history;

(d)    Failing adequately to investigate any Defendant Antosh' prior relationships with minor children;

(e)    Failing adequately to subject Defendant Antosh to appropriate psychological and mental testing in order to uncover his pedophilic and/or homosexual tendencies and proclivities;

(f)    Failing adequately to have in place and/or force systems, policies, and/or procedures to monitor and supervise Scoutmasters and Assistant Scoutmasters who work closely with or come into contact with minor children;

(g)    Allowing Antosh to routinely conduct BSA meetings at his home with no other adults present;

(h)    Allowing Antosh to travel with children with no other adults present;

(i)    Ignoring warning signs that Antosh was using his BSA position to spend hours alone with individual scouts (including Plaintiff) for the purpose of sexually abusing them;

(j)    Failing adequately to discover, investigate, or question the fact that Antosh was utilizing scout meetings to engage in improper "grooming" behaviors to sexually desensitize scouts, including S.D.;

(k)    Failing adequately to take prompt action to remove Antosh as an Assistant Scoutmaster and Youth Leader after complaints and/or suspicions of sexual molestation;

(l)   Failing adequately to take action to investigate all adults involved in scouting after notice that other BSA Scoutmasters, Assistant Scoutmasters and Youth Leaders were sexually abusing scouts;

(m)   Failing adequately to adopt or enforce a two-adult rule;

(n)   Failing adequately to conduct criminal background or other background checks on new or existing Scoutmasters/Assistant Scoutmasters, or more carefully screening Scoutmasters/Assistant Scoutmasters who did not have and/or never had sons in Scouting;

(o)   Failing adequately timely to adopt policies and procedures to protect children;

(p)   Failing adequately to advise parents of statistical data available to BSA from the Ineligible Volunteer Files;

(q)   Failing adequately to advise parents that the I.V. file system of ejection of volunteers as the primary method of protecting Scouts from pedophiles was ineffective;

(r)   Failing adequately to maintain, review and update the Ineligible Volunteer Files;

(s)   Failing adequately to warn parents of information regarding adult Scoutmasters/Assistant Scoutmasters and their propensity to engage in inappropriate behavior with scouts;

(t)   Failing adequately to communicate information regarding Scoutmasters/Assistant Scoutmasters, employees, volunteers, and/or agents to their operative branches and councils, throughout the United States; and,

(u)   Failing adequately to require local councils to submit names of leaders, volunteers and employees for cross checking with the Ineligible Volunteer Files.

156.   During all relevant times hereto, Defendant Antosh was conducting himself in such a manner and fashion that the Boy Scout Defendants knew or should have known that Defendant Antosh had a propensity to commit and engage in sexual misconduct.

157.   The Boy Scout Defendants were negligent by failing adequately to supervise the conduct and the activities of Defendant Antosh.

158.   If the Boy Scout Defendants had properly and adequately supervised the conduct and the activities of Defendant Antosh, they would have known or should have known of the misconduct of Defendant Antosh, so as to prevent the sexual abuse and infliction of emotional distress on S.D.

159.   Had the Boy Scout Defendants not acted in such a careless, negligent, and/or reckless manner, they would have known and/or should have known of the conduct of Defendant Antosh, as described herein, and of his propensity to engage in such activities, such that the Boy Scout Defendants could and/or should have prevented the sexual abuse and the infliction of physical and emotional distress on S.D.

160.   Upon information and belief, the Boy Scout Defendants knew or should have known of Defendant Antosh' propensities to have inappropriate conduct, emotional, sexual, and otherwise, with minor children, but failed to take any disciplinary or remedial action to prevent Defendant Antosh from having contact with minor children, which failure directly resulted in the sexual abuse of S.D.

161.   Upon information and belief, the Boy Scout Defendants knew or should have known that Defendant Antosh had committed acts of sexual deviance and impropriety upon minor children, but failed to take any remedial or disciplinary measures against Defendant Antosh, which failure directly resulted in the sexual abuse of S.D.

162. ·  Upon information and belief, the Boy Scout Defendants failed to discipline Defendant Antosh for the harmful, illegal, and immoral acts he committed on S.D. and failed to report said acts to the appropriate civil and criminal authorities.

163.   The conduct of the Boy Scout Defendants was outrageous, shocking and committed with utter disregard for the welfare of S.D.

164.    As a direct and proximate result of the negligence of the Boy Scout and Defendant Antosh, S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT VIII
### (Statutory Violation; Negligence Per Se)
### (Plaintiff v. All Defendants)

165.    Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

166.    At all times relevant hereto, the Boy Scout Defendants, by and through their agents, volunteers, and/or employees, in the course of their practice and profession, regularly came into contact with children, such as Plaintiff.

167.    The Boy Scout Defendants, as well as Defendant Antosh, were at all times relevant hereto legally obligated under the "Child Protective Services Law" to report suspected child abuse to the Department of Public Welfare or county child protective service agencies. See 11 P.S. § 2201, et seq. (repealed); 23 Pa. C.S. § 6301, et seq.

168.    Defendant Antosh' sexual assault and exploitation of the then minor S.D. violated Pennsylvania's Child Protective Services Law.

169.    Upon information and belief, Defendant Antosh's sexual assault and exploitation of Plaintiff, and violation of Pennsylvania's Child Protective Services Law, was done with the knowledge and/or acquiescence of the Boy Scout Defendants.

170.   Upon information and belief, the Boy Scout Defendants did not report to civil or criminal authorities various allegations of sexual abuse of children by Defendant Antosh.

171.   As a direct and proximate result of the failure of the Boy Scout Defendants and Defendant Antosh to report to civil or criminal authorities allegations of sexual abuse of minor children by Defendant Antosh, then minor S.D. was victimized by Defendant Antosh and sustained the injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

### COUNT IX
### (Breach of Fiduciary Duty)
### (Plaintiff v. All Defendants)

172.   S.D. incorporates by reference all of the allegations set forth above as if fully stated herein.

173.   As a result of the affiliation S.D. had with the Boy Scout Defendants, a special fiduciary relationship, of human and spiritual trust, concomitant in loco parentis duties, existed between the Plaintiff and the Boy Scout Defendants.

174.   The Boy Scout Defendants were entrusted with the well-being, care, and safety of the then minor S.D. as a result of his status of a boy scout member.

175.   Under this fiduciary relationship, the Boy Scout Defendants assumed a duty to act in the best interests of S.D., to provide a safe haven, and to ensure the S.D.'s physical and emotional care and safety.

176.   The Boy Scout Defendants placed S.D. in the care of Defendant Antosh for the purposes of, inter alia, providing S.D. with education, instruction, training, spiritual guidance,

Case ID: 190800135

Case ID: 190800135

and counseling. As such, there existed a fiduciary relationship of trust, confidence, and reliance between the Boy Scout Defendants and S.D.

177. Plaintiff had a right to rely and did rely upon the representations of the Boy Scout Defendants that the Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, were individuals in good standing and that the Boy Scout Defendants would not tolerate criminal misconduct by its Scoutmasters and Assistant Scoutmasters toward children.

178. As asserted herein, Defendant Antosh sexually assaulted and molested S.D.

179. Upon information and belief, the Boy Scout Defendants and Defendant Antosh breached their fiduciary duty through their inaction, manipulation, intimidation, evasion, intended deception, concealment, undue influence, duress, or otherwise as more fully described and set forth herein, resulting in injuries to S.D.

180. As a direct result of the breach of fiduciary duty of the Boy Scout Defendants and Defendant Antosh, S.D. suffered injuries, losses and damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

## COUNT X
### (Respondeat Superior)
### (Plaintiff v. Boy Scout Defendants)

181. Plaintiff incorporates by reference all of the allegations set forth above as if fully stated herein.

182. The Boy Scout Defendants are liable for the sexual abuse of the then minor S.D. under the doctrine of respondeat superior.

Case ID: 190800135

Case ID: 190800135
Case ID: 190800135

183.   At all times relevant hereto, Defendant Antosh held official positions and/or was performing official duties for the Boy Scout Defendants, and he was acting as an agent of the Boy Scout Defendants.

184.   Defendant Antosh was at all times under the dominion, authority, and control of the Boy Scout Defendants, and was acting within the scope of his agency and/or employment, when he performed the egregious and despicable acts of sexual depravity upon S.D.

185.   The Boy Scout Defendants are vicariously liable as a principal for all torts committed by their agents and/or employees.

WHEREFORE, Plaintiff demands judgment against the Boy Scout Defendants and Defendant Antosh, jointly and severally, in a sum in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, punitive damages, costs, and attorneys fees.

Respectfully Submitted,

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:   *Stewart Eisenberg*
      Stewart Eisenberg, Esquire
      Joshua B. Schwartz, Esquire
      Attorneys for Plaintiff

Date: August 5, 2019

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135



## VERIFICATION

The undersigned, having read the attached pleading, verifies that the within pleading is based on information furnished to counsel which information has been gathered by counsel in the course of the within lawsuit.

The language of the pleading is that of counsel and not of signer. Signer verifies that he has read the within pleading and that the factual averments are true and correct to the best of signer's knowledge, information and belief. To the extent that the contents of the pleading are that of counsel and/or legal terminology, verifier has relied upon counsel in taking this verification.

It is understood that the statements therein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Date: 8-5-19



Case ID: 190800135

Case ID: 190800135



# Exhibit "A"

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

1972



**BOY SCOUTS OF AMERICA**

*North Brunswick • New Jersey 08902 • 201 249-6000*

INTRAORGANIZATION COMMUNICATION

December 4, 1972

PERSONAL AND CONFIDENTIAL

TO ALL SCOUT EXECUTIVES:

SUBJECT:  Maintaining Standards of Leadership

The attached information on Maintaining the Standards of Leadership of the
Boy Scouts of America has been carefully developed as a guideline for
Scout Executives.

This is the first time such information has been printed, and because of
the misunderstandings which could develop if it were widely distributed,
we suggest that after you have read it, you file it with other policy
statements without making photocopies or sharing it beyond the top
management of your council.

If you have any questions, please do not hesitate to write or call us.

Sincerely,

Paul I. Ernst, Executive
Registration and Subscription

cm
cc:  Regional Directors
      Management Staff
Attachment

BSA 02206

Case ID: 190800135

Case ID: 190800135

MAINTAINING STANDARDS OF LEADERSHIP

Since its inception, the BSA has maintained its right to set standards of leadership in the areas of age, citizenship, sex, education, morals and emotional stability. This position is set forth in the Bylaws:

Article II, Section 2, Clause 3 "No person shall be approved as a leader unless, in the judgment of Boy Scouts of America, he possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualifications as it may from time to time require."

Other supporting Articles are listed in Appendix A.

The local council and the National Council must approve all applications (Bylaws Article XVIII, Section I, Clause 3).

These standards were developed solely to protect the youth of America and their enforcement in no way infringes on the rights of any individuals, nor is refusal of registration to be construed as persecution or defamation of character. All leaders register for a limited term (usually one year) and reregistration at the end of that period is also subject to approval (Bylaws, Article XV, Section 4).

When a registered leader commits an act or conducts himself in a manner that would seem to cause him to be unfit as a leader or an associate of boys, the Scout Executive should take the following steps:

1) Inform the Registration and Subscription Executive at the National Office of the general nature of the allegations.

2) Secure hard evidence about the situation (signed statements by principals, police reports, court records, newspaper clippings, etc.).

3) Submit evidence and the confidential record sheet to Registration and Subscription.

4) Upon notification from Registration, write a letter to the individual (Appendix B) and hand deliver it along with a volunteer.

5) After the letter has been read, verbally tell the person the reasons for refusal to register. Make no accusations -- say we have evidence to convince us that your --(financial affairs) (moral life) (lack of leadership ability) do not meet the standards for leadership in the BSA. Indicate that the BSA is not sharing this information with anyone and only wish him to stop all Scouting activity.

After this visit, write down the main parts of the conversation, who was present and the date, and mail this to Registration and Subscription.

BSA 02206

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

-2-

6) If the individual persists, the following review steps are to be taken as required:

A) Initial Step -- The president of the local council will appoint three volunteers to act as a committee to review the case.

B) (If Step A does not resolve matter) -- The Regional President will appoint a review committee if the person is not satisfied with the council's decision.

C) (If Step B does not resolve matter) -- The President of the BSA will appoint a review committee if the individual is not satisfied with the Region's decision.

When a Scout Executive receives a confidential inquiry from Registration and Subscription about a person attempting to register, he should take the following steps:

1) Secure as rapidly as possible the necessary answers on the questionnaire and return to Registration and Subscription.

2) If it is not the same person, the registration certificate will be sent to the council.

3) If it is the same person, Registration and Subscription will write to the Scout Executive, indicating that the BSA is unwilling to register that person because information we have indicates that he fails to meet our standards of leadership. If the individual questions the statement the Scout Executive may ask him if he has ever been in Scouting in the past and been refused membership.

If the answer is yes, the Scout Executive may say the reasons remain the same.

If the answer is no, and the individual insists there has been a mistake, the Scout Executive should instruct him to send a complete statement covering his adult years, including address and dates lived there, occupations and dates, and names of spouse and children to the Registration and Subscription Executive.

In certain cases, an individual who failed to meet the standards of leadership in the past wishes to register and the circumstances are changed sufficiently that the BSA is willing to accept the registration on a trial basis. The Scout Executive will be notified in this situation, and requested to keep a close watch on the individual for one year and then give a brief report to Registration and Subscription.

All cases are reviewed periodically in reference to the seriousness of the offense and the passage of time, and when the standards of leadership seem to be satisfactorily met, cases are cancelled.

BSA 02207

Case ID: 190800135

Case ID: 190800135

-3-

Many times an individual comes to a council seeking registration with the BSA and something unusual causes concern that further checking should be done before registration is completed.

When you find yourself in this situation, we ask that you write or phone directly to Registration and Subscription, asking that we check for any information that might be on file concerning the individual in question. This will immediately help you in your relationships with the individual and give you information as to whether registration should be completed before you do a lot of unnecessary work and make any commitments which could prove embarrassing.

dw-11/15/72

BSA 02208

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

-4-

Appendix A

Article III, Section 2, Clause 1
Article X, Section 5, Clause 1
Article XII, Section 2
Article XII, Section 3
Article XII, Section 4
Article XV, Section 2, Clause 2, 3, 4, 6, 7
Article XVI, Section 6, Clause 4
Article XVIII, Section 2, Clause 1
Article XVIII, Section 3, Clause 2
Article XVIII, Section 4, Clause 1 - 7
Article XVIII, Section 5, Clause 1 - 2
Article XVIII, Section 7, Clause 1 - 2
Article XVIII, Section 9, 10, 11, 12

dw-11/27/72

BSA 02209

Case ID: 190800135

Case ID: 190800135

Case ID: 190800135

-5-

Appendix - B

Dear

After a review of your past history with the Boy Scouts, it has been decided not to accept your registration. Registration with the Boy Scouts of America is not automatically granted to everyone. It is a privilege and we reserve the right to refuse registration whenever there is any reason for concern related to the person's association with members or leaders of the Boy Scouts of America.

We, therefore, at this time desire to have you sever your relationship with the Boy Scouts of America. We are making no accusations and will not release this information to anyone, so our action in no way will affect your standing in the community.

Very truly yours,

Scout Executive

dw

BSA 02210

Case ID: 190800135

Case ID: 190800135

**CORBETT PRICE L.L.C.**
**Joseph G. Price, Esq.**
**612 Spruce St.**
**Scranton, PA 1803**
**570.880.0612**
**Fax: 570.221.6023**
**PA Attorney ID: 317300**
joeprice@corbettpricelaw.com



*Filed and Attested by the Office of Judicial Records 03 OCT 2019 11:19 am G. IMPERATO*

## IN THE COURT OF COMMON PLEAS
## OF PHILADELPHIA COUNTY

| | |
|---|---|
| **S.D.** | |
| **Plaintiff** | **TERM, 2019** |
| **vs.** | |
| | **CASE ID: 190800135** |
| **BOYS SCOUTS OF AMERICA;** | |
| **PENN MOUNTAINS COUNCIL, BOYS** | **MAJOR JURY TRIAL** |
| **SCOUTS OF AMERICA; PAUL ANTOSH** | |
| **Defendants** | |

**Entry of Appearance**

TO THE CLERK OF COURTS OF PHILADELPHIA COUNTY:

Kindly enter the appearance of the undersigned on behalf of the Defendant, PAUL ANTOSH, relative to the above-captioned case.

**RESPECTFULLY SUBMITTED** this 3rd day of October 2019

s/ Joe Price
Joseph G. Price, Esq.
Attorney for Paul Anstosh

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
By:     Stewart J. Eisenberg, Esquire
          Joshua B. Schwartz, Esquire
ID Nos. 32151 / 210208
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

ATTORNEYS FOR PLAINTIFF
MAJOR JURY TRIAL

Filed and Attested by the
Office of Judicial Records
07 OCT 2019 09:14 am
A. STAMATO

| | | |
|---|---|---|
| S.D. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | AUGUST TERM, 2019 |
| v. | : | |
| | : | |
| Boys Scouts of America, et al. | : | NO. 0135 |
| | : | |
| | : | |
| Defendants. | : | |

## PRAECIPE TO FILE SHERIFF RETURN OF SERVICE

**TO THE PROTHONOTARY:**

Kindly file the attached Sheriff's Return of Service noting service of Plaintiff's

Complaint on Defendant, Paul Antosh on **September 30, 2019** via **Sheriff of Lackawanna**

**County.**

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**


BY:   *Joshua B. Schwartz*
          **JOSHUA B. SCHWARTZ**
          **Attorneys for Plaintiff**

Date: October 7, 2019

# Exhibit "1"

Case ID: 190800135

SHERIFF'S RETURN - REGULAR

CASE NO: 2019-00464 T

COMMONWEALTH OF PENNSYLVANIA:
COUNTY OF LACKAWANNA

S.D. _____

                    VS

BOY SCOUTS OF AMERICA ET AL _____

CPL KERRY MCHUGH _____, Deputy Sheriff of Lackawanna County

County, Pennsylvania, who being duly sworn according to law,

says, the within COMPLAINT _____ was served upon

ANTOSH PAUL _____ the

DEFENDANT _____, at 0001:30 PM Hour, on the 30th day of September, 2019

at 401 S. IRVING AVE. _____ _____

SCRANTON, PA _____ by handing to

HIM PERSONALLY AT 200 NORTH ___ WASHINGTON AVENUE SCRANTON ____

a true and attested copy of COMPLAINT _____ together with

_____

_____

and at the same time directing His attention to the contents thereof.

_____
_____
_____

Sheriff's Costs:                So Answers:
  Docketing           .00       Mark P. McAndrew, Sheriff_____
  Service             .00
  Affidavit           .00       _____
  Surcharge           .00                   Deputy Sheriff
                      .00
                      .00       00/00/0000

Sworn and Subscribed to before

me this _____ day of

_____ A.D.

_____
        Notary

Case ID: 190800135

**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Matthew J. Smith (I.D. No. 314157)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com
Matthew.Smith@saul.com

*Attorneys for Defendants Boy Scouts of*
*America and Penn Mountains Council, Boy*
*Scouts of America*

*Filed and Attested by the*
*Office of Judicial Records*
*08 OCT 2019 05:04 pm*
*G. IMPERATO*

|  |  |  |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | Case No. 190800135 |
| v. | : | |
| | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ENTRY OF APPEARANCE

TO THE CLERK OF THE COURT:

Kindly enter my appearance on behalf of Defendants, Boy Scouts of America and Penn

Mountains Council, Boy Scouts of America, in the above-captioned matter.

Respectfully Submitted,

___/s/ Joshua W.B. Richards_____
**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. #48370)
Joshua W. B. Richards, Esquire (I.D. #204315)
Matthew J. Smith (I.D. #314157)
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
Tel: (215) 972-7777
*Attorneys for Boy Scouts of America and*
Date: October 8, 2019        *Penn Mountains Council, Boy Scouts of America*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date I did cause a true and correct copy of the foregoing *Entry of Appearance* to be served on counsel of record via the Court's electronic filing system.

*Joshua W. B. Richards*
_____
Joshua W. B. Richards

Dated: October 8, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Matthew J. Smith (I.D. No. 314157)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com
Matthew.Smith@saul.com

*Attorneys for Defendants Boy Scouts of America and Penn Mountains Council, Boy Scouts of America*

Filed and Attested by the
Office of Judicial Records
08 OCT 2019 05:11 pm
G. IMPERATO

| | | |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | Case No. 190800135 |
| v. | : | |
| | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **ENTRY OF APPEARANCE**

TO THE CLERK OF THE COURT:

Kindly enter my appearance on behalf of Defendants, Boy Scouts of America and Penn

Mountains Council, Boy Scouts of America, in the above-captioned matter.

Respectfully Submitted,

___*/s/ Matthew J. Smith*_____
**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. #48370)
Joshua W. B. Richards, Esquire (I.D. #204315)
Matthew J. Smith (I.D. #314157)
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
Tel:  (215) 972-7777
*Attorneys for Boy Scouts of America and*
Date:  October 8, 2019                    *Penn Mountains Council, Boy Scouts of America*

36001219.1

Case ID: 190800135

## CERTIFICATE OF SERVICE

I hereby certify that on this date I did cause a true and correct copy of the foregoing *Entry of Appearance* to be served on counsel of record via the Court's electronic filing system.


_____*Matthew J. Smith*_____
Matthew J. Smith


Dated: October 8, 2019

36001219.1

**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Matthew J. Smith (I.D. No. 314157)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com
Matthew.Smith@saul.com

*Attorneys for Defendants Boy Scouts of America and Penn Mountains Council, Boy Scouts of America*

Filed and Attested by the
Office of Judicial Records
08 OCT 2019 05:14 pm
G. IMPERATO

| | | |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | Case No. 190800135 |
| v. | : | |
| | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ENTRY OF APPEARANCE

TO THE CLERK OF THE COURT:

   Kindly enter my appearance on behalf of Defendants, Boy Scouts of America and Penn

Mountains Council, Boy Scouts of America, in the above-captioned matter.

   Respectfully Submitted,

   ___*/s/ Joseph F. O'Dea*_____
   **SAUL EWING ARNSTEIN & LEHR LLP**
   Joseph F. O'Dea, Jr. (I.D. #48370)
   Joshua W. B. Richards, Esquire (I.D. #204315)
   Matthew J. Smith (I.D. #314157)
   1500 Market Street
   Centre Square West, 38th Floor
   Philadelphia, PA 19102
   Tel:  (215) 972-7777
   *Attorneys for Boy Scouts of America and*
Date:  October 8, 2019    *Penn Mountains Council, Boy Scouts of America*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date I did cause a true and correct copy of the foregoing *Entry of Appearance* to be served on counsel of record via the Court's electronic filing system.

_____*Joseph F. O'Dea*_____
Joseph F. O'Dea

Dated: October 8, 2019

36000723.1 10/08/2019

**SAUL EWING ARNSTEIN & LEHR LLP**

Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com

*Attorneys for Defendant Boy Scouts of America*

Filed and Attested by the
Office of Judicial Records
08 OCT 2019 05:18 pm
M. RUSSO

---

|   |   |   |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS |
|  | : | PHILADELPHIA COUNTY |
| Plaintiff, | : |  |
|  | : | Case No. 190800135 |
| v. | : |  |
|  | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## NOTICE TO PLEAD

TO:    Plaintiff, S.D., c/o Stewart J. Eisenberg, Esquire / Dino Privitera, Esquire
         Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.
         1634 Spruce Street
         Philadelphia, PA  19103

        You are hereby notified to file a written response to the enclosed New Matter within twenty (20) days from service hereof or a judgment may be entered against you.

                                            **SAUL EWING ARNSTEIN & LEHR LLP**

                            By:      __/s/ Joseph F. O'Dea_____
                                     Joseph F. O'Dea, Jr. (I.D. No. 48370)
                                     Joshua W. B. Richards (I.D. No. 204315)
                                     Centre Square West
                                     1500 Market St., 38th Floor
                                     Philadelphia, PA  19102
                                     215-972-7777
                                     *Attorneys for Boy Scouts of America*

Date:  October 8, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com

*Attorneys for Defendants Boy Scouts of America*

|  |  |  |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | Case No. 190800135 |
| v. | : | |
| | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## NOTICE TO PLEAD

TO:  Defendant Paul Antosh
c/o Joseph Price, Esq.
612 Spruce Street
Scranton, PA 18503

You are hereby notified to file a written response to the enclosed New Matter/Cross-Claim within twenty (20) days from service hereof or a judgment may be entered against you.

**SAUL EWING ARNSTEIN & LEHR LLP**

By:      */s/ Joseph F. O'Dea*
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
*Attorneys for Boy Scouts of America*

Date:  October 8, 2019

Case ID: 190800135

**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com

*Attorneys for Defendants Boy Scouts of America*

| | | |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | Case No. 190800135 |
| v. | : | |
| | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ANSWER WITH NEW MATTER AND CROSS-CLAIM OF DEFENDANT BOY SCOUTS OF AMERICA TO PLAINTIFF'S COMPLAINT

Defendant Boy Scouts of America (hereinafter "BSA"), by and through its counsel, Saul Ewing Arnstein & Lehr LLP, files the following Answer with New Matter and Cross-Claim in response to Plaintiff's Complaint:

**I.      INTRODUCTION:**

1.      Denied as stated.  It is specifically denied that the BSA performed or was responsible for any negligent, willful, wanton, reckless, and/or tortious acts or omissions, and strict proof thereof is demanded.  After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 1 of Plaintiff's Complaint and the same are therefore denied and strict proof thereof is demanded.

1

Case ID: 190800135

2.      Denied as stated.  On the contrary, it is averred that the BSA was incorporated in 1910 and in 1916 was granted a federal charter by Act of Congress.  By way of further response, it is further averred that the BSA is one of the nation's largest and most prominent values-based youth development organizations providing a program for young people that builds character, trains them in the responsibilities of participating citizenship, and develops personal fitness. By way of further response, although no time period is alleged in paragraph 2 of Plaintiff's Complaint, as of the date of its last publicly-filed records, the BSA has approximately 2,283,000 youth members.  After reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the allegations regarding the percentage of American boys who have had contact with Scouting, and such allegations are accordingly denied.

3.      Denied as stated.  BSA is one of the nation's largest and most prominent values-based youth development organizations providing a program for young people that builds character, trains them in the responsibilities of participating citizenship, and develops personal fitness.  After reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3 of Plaintiff's Complaint, and such allegations are accordingly denied.

4.      Denied as stated.  By way of further response, it is specifically denied that the BSA has been secretly removing Scoutmasters for child sexual abuse for any period of time and it is specifically denied that the BSA's records demonstrate a long known knowledge on its part that Scouting attracts pedophiles in large numbers.  It is also specifically denied that Scouts are at a heightened risk of sexual abuse by criminals who would molest children.  On the contrary, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that

2

Case ID: 190800135

at all times relevant to the facts which are the subject of Plaintiff's Complaint, the BSA took the necessary and reasonable steps to protect Scouts from sexual abuse. By way of further response, the BSA expressly states that, although irrelevant to the claims asserted by this Plaintiff, the BSA denies that the incidence of abuse among its youth participants is, or has ever been, greater than what is experienced with other youth-serving organizations or in society generally, and is on the whole, exceedingly rare. By way of further response, considering that more than 110,000,000 children who have participated in Scouting historically, the incidence of sexual abuse is exceedingly low. After reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4 of Plaintiff's Complaint, and such allegations are accordingly denied.

## II.   **PARTIES**:

5.     Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of Plaintiff's Complaint and the same are denied.

6.     Denied.   The allegations of paragraph 6 of Plaintiff's Complaint are denied insofar as the phrase "at all times relevant hereto" is vague and undefined. By way of further response, after reasonable investigation and because of the passage of time, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6 of Plaintiff's Complaint, and such allegations are accordingly denied.

7.     Admitted in part; denied in part. It is admitted only that BSA is a congressionally chartered corporation with a current principal place of business at 1325 W. Walnut Hill Lane, Irving, Texas, 75015. It is further admitted only that BSA is authorized to do business in the Commonwealth of Pennsylvania. It is denied that BSA is authorized to do business and conducts

business in the Commonwealth of Pennsylvania and in the City and County of Philadelphia "through various local and regional boy scout organizations and councils."  On the contrary, it is averred that local community leaders incorporate councils that then support independent community organizations that sponsor, operate, and run Scouting units in the community.  The BSA has issued charters to over 200 local non-profit organizations known as "Local Councils." The Penn Mountains Council was one such Local Council.  Pursuant to such charters, the BSA makes its Scouting program materials available to the Local Councils for their support of and distribution to community sponsors—including churches and educational and civic organizations—of local packs, troops, crews, and posts (collectively, "units"). These civic, faith-based, and educational organizations that actually operate and deliver the Scouting programs to their youth members are called "Chartered Organizations."  Under the provisions of charters issued to Chartered Organizations, the local unit sponsor has the responsibility of establishing a unit committee of adults (usually parents) to select its adult volunteers and manage to its units. BSA does not select or supervise, or have authority to select or supervise, the persons chosen by the locally Chartered Organizations as their volunteer Scout leaders.  Except as so admitted, denied.

8.      Denied as stated.  On the contrary, it is averred that BSA charters locally incorporated councils to support independent community organizations that sponsor, operate, and run Scouting units.  The BSA expressly denies that it, at any time relevant, operated, promoted, or oversaw any Scouting unit, including "Boy Scout Troop 100."  It is further averred that BSA does not control nor have the right to control the means and manner of staffing, operation, and oversight of such troop.  By way of further response, it is averred that pursuant to its congressionally issued charter, BSA offers its Scouting program throughout the United States by

4

Case ID: 190800135

making it available to independent Chartered Organizations to help those organizations accomplish their goals for their youths.  The BSA has issued charters to over 200 local non-profit organizations known as "Local Councils."  The Penn Mountains Council was one such Local Council.  Pursuant to such charters, the BSA makes its Scouting program materials available to the Local Councils for their support of and distribution to community sponsors—including churches and educational and civic organizations—of local packs, troops, crews, and posts (collectively, "units"). These civic, faith-based, and educational organizations that actually operate and deliver the Scouting programs to their youth members are called "Chartered Organizations."  Under the provisions of charters issued to Chartered Organizations, the local unit sponsor has the responsibility of establishing a unit committee of adults (usually parents) to select its adult volunteers and manage to its units.  BSA does not select or supervise, or have authority to select or supervise, the persons chosen by the locally Chartered Organizations as their volunteer Scout leaders.

9.      Denied as stated.  On the contrary, it is averred that BSA charters independent community organizations to sponsor, operate, and run Scouting units.  BSA expressly denies that it, at any time relevant, operated, promoted, or oversaw any Scouting unit, including "Boy Scout Troop 100 of the Penn Mountains Council."

10.      Denied as stated.  On the contrary, it is averred that BSA charters separately incorporated councils to support independent community organizations located within the communities served by the council and that the independent community organizations sponsor, operate, and run Scouting units.   Specifically, it is averred an independent community organization owned, sponsored, operated, and ran the local Scouting unit identified as "Boy Scout Troop 100."  The BSA has issued charters to over 200 local non-profit organizations

Case ID: 190800135

known as "Local Councils."   The Penn Mountains Council was one such Local Council. Pursuant to such charters, the BSA makes its Scouting program materials available to the Local Councils for their support of and distribution to community sponsors—including churches and educational and civic organizations—of local packs, troops, crews, and posts (collectively, "units").  These civic, faith-based, and educational organizations that actually operate and deliver the Scouting programs to their youth members are called "Chartered Organizations."  Under the provisions of charters issued to Chartered Organizations, the local unit sponsor has the responsibility of establishing a unit committee of adults (usually parents) to select its adult volunteers and manage its units.  BSA does not select or supervise, or have authority to select or supervise, the persons chosen by the locally Chartered Organizations as their volunteer Scout leaders.  By way of further response, it is averred that under its federal charter, BSA offers its Scouting program throughout the United States by making it available to independent Chartered Organizations to help those organizations accomplish their goals for their youth.

11.     The allegations set forth in paragraph 11 of Plaintiff's Complaint pertain to a defendant other than the Answering BSA Defendant, and no response is required on behalf of the Answering BSA Defendant except to admit that, upon information and belief, Penn Mountains Council, Boy Scouts of America, was a Pennsylvania non-profit corporation with a business address of Kingston Corners Building, Kingston, Pennsylvania.

12.     Denied.   The allegations of paragraph 12 of Plaintiff's Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that "Penn Mountains Council, like all BSA councils in the United States was at all relevant times an agent of the Boy Scouts of America."

6

Case ID: 190800135

13.     Denied.   The allegations of paragraph 13 of Plaintiff's Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that "Penn Mountains Council, like all chartered BSA councils, is and was controlled and directed by the BSA to such a degree, that it is the alter ago of the Boy Scouts of America."

14.     Denied.  The allegations of paragraph 14 of Plaintiff's Complaint do not contain any factual allegations but instead include only arguments and conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that "Penn Mountains Council's separate corporate status should be disregarded and its assets treated as the property of the parent corporation, Boy Scouts of America."

15.     Admitted in part; denied in part.  It is specifically denied that "Penn Mountains Council may only hire individuals from a list of approved candidates provided by the Boy Scouts of America," with the exception of Scout executives.  It is further expressly denied that BSA selects, screens, trains, hires, supervises, or retains leaders of Scouting units and it is denied that BSA controlled or had the right to control the means and manner of staffing, operation, and oversight of Scouting units, including, but not limited to, the leaders of such Scouting units selected by the independent community organizations.  It is further denied that "Penn Mountains Council's existence as a scouting organization is wholly dependent on BSA."  By way of further answer, the allegations of paragraph 15 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  It is admitted only that BSA retained the right to revoke Penn Mountains Council's charter with or without cause.  It is further admitted that Penn

7

Case ID: 190800135

Mountains Council is a named insured on a CGL policy for insurance and that BSA pays the premium for said policy.  Except as so admitted, denied.

16.     Denied.  It is specifically denied that Penn Mountains Council "holds legal title to real estate and personal property for and on behalf of the BSA."  The remaining allegations of paragraph 16 of Plaintiff's Complaint do not contain any factual allegations but instead include only arguments and conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  It is further specifically denied that BSA "has disguised its beneficial ownership of assets held in the name of Penn Mountains Council."

17.     Denied as stated.  By way of further answer, the allegations of paragraph 17 of Plaintiff's Complaint are denied insofar as the phrase "chartered organization" is vague and undefined.  On the contrary, it is averred that Penn Mountains Council was formed by local community leaders, incorporated in the Commonwealth of Pennsylvania, and granted a charter by BSA.  By way of further response, Penn Mountains Council is no longer in operation.

18.     Denied as stated.  On the contrary, it is averred that Penn Mountains Council was a locally-created corporation which was then chartered by the BSA.  During the time period it was in operation, the Council supported local community organizations that use Scouting programs.  By way of further response, Penn Mountains Council is no longer in operation.

19.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's vague and ambiguous collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.

35940673.6 10/08/2019

Case ID: 190800135

20.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 20 of Plaintiff's Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.

21.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that BSA operated various programs for young boys, including the then minor-Plaintiff S.D., and it is specifically denied that the BSA authorized, approved, ratified and selected adult leaders to serve as Scoutmasters. On the contrary, it is averred that adult leaders of the Scout unit identified as Troop 100 were selected by the local community organization and/or by its Troop committee and not the BSA.

22.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA, acting by and through any duly authorized agents, operated and/or controlled a Boy Scout Troop in Luzerne County, Pennsylvania known as Troop 100.

35940673.6 10/08/2019

Case ID: 190800135

23.     Denied.   The allegations of paragraph 23 of Plaintiff's Complaint are denied insofar as the phrase "at all times relevant hereto" is vague and undefined.  By way of further response, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the allegations of paragraph 23 of Plaintiff's Complaint, and such allegations are accordingly denied.

24.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 24 of Plaintiff's Complaint are denied insofar as the phrase "at all times relevant hereto" is vague and undefined. It is specifically denied that Defendant Antosh was selected, accepted, ratified, approved and authorized by the BSA to serve as an Assistant Scoutmaster and strict proof thereof is hereby demanded.  After reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 24 of Plaintiff's Complaint, and such allegations are accordingly denied.

25.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 25 of Plaintiff's Complaint are denied insofar as the phrase "at all times relevant hereto" is vague and undefined. By way of further response, the allegations of paragraph 25 of Plaintiff's Complaint contain

10

Case ID: 190800135

conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that "Defendant Antosh served and acted as a duly authorized and ratified agent, employee, servant, representative, and/or volunteer of" the BSA and it is denied that Defendant Antosh was subject to the authority, dominion and control of the BSA.

III.   **FACTS:**

26.     Denied as stated.  The allegations of paragraph 26 of Plaintiff's Complaint are denied insofar as the phrase "at all times relevant hereto" is vague and undefined.  By way of further response, the allegations with respect to Defendant Antosh's motives, purposes, or intent are unknown to the BSA and it is averred that the BSA did not select or control Scout leaders, had no control or right of control or legal responsibility for the acts or omissions of Defendant Antosh.  In further answer, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 26 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof is demanded.

27.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations set forth in paragraph 27 of Plaintiff's Complaint pertain to the alleged acts of Defendant Antosh and not the Answering BSA Defendant and no further response is required on behalf of the BSA.  To the extent a further response is deemed required, the BSA, at all times relevant, is and was without knowledge or

Case ID: 190800135

information sufficient to form a belief as to the truth of the allegations described in paragraph 27 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

28.     Denied.  The allegations set forth in paragraph 28 of Plaintiff's Complaint pertain to the alleged acts of Defendant Antosh and not the Answering BSA Defendant and no further response is required on behalf of the BSA.  To the extent a further response is deemed required, the BSA, at all times relevant, is and was without knowledge or information sufficient to form a belief as to the truth of the allegations described in paragraph 28 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

29.     Denied.  The allegations of paragraph 29 of Plaintiff's Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, the allegations of paragraph 29 of Plaintiff's Complaint are denied insofar as the phrases "suspected or investigated the BSA or the Penn Mountains" and "widespread pedophilia allegations leveled against the Boy Scouts of America through a television outreach effort in or about May of 2019" are vague and undefined.  In further answer, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the allegations of paragraph 29 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof thereof is demand.

30.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 30 of Plaintiff's

12

Case ID: 190800135

Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied and strict proof is demanded.  By way of further answer, it is specifically denied that the BSA committed any "conspiracy and fraud" as alleged in paragraph 30 of Plaintiff's Complaint and that any acts or omissions of the BSA were "the cause of S.D.'s harm."  In further answer, the allegations of paragraph 30 of Plaintiff's Complaint are denied insofar as the phrases "this television outreach effort" is vague and undefined.  In further answer, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 30 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof thereof is demand.  By way of further response, Plaintiff's alleged claims against the BSA are time-barred by the applicable statutes of limitations and laches, among other things.

31.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, BSA lacks information sufficient to form a belief as to what Plaintiff knew or did not know.  In further answer, it is specifically denied that a "widespread pedophilia epidemic" existed in the BSA or that BSA knew about any such alleged epidemic or made "efforts to conceal it."  By way of further answer, it is specifically denied that any acts or omissions of the BSA were the cause of S.D.'s alleged harm.  In further answer, the allegations of paragraph 31 of Plaintiff's Complaint are denied insofar as the phrase "the television outreach efforts" is vague and undefined.  In further answer, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the

13

Case ID: 190800135

remaining allegations of paragraph 31 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof thereof is demand. By way of further response, Plaintiff's alleged claims against the BSA are time-barred by the applicable statutes of limitations and laches, among other things.

32.     Denied as stated. After reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the allegations of paragraph 32 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof thereof is demand. By way of further answer, BSA lacks information sufficient to form a belief as to what Plaintiff's legal counsel discussed with him. By way of further response, Plaintiff's alleged claims against the BSA are time-barred by the applicable statutes of limitations and laches, among other things.

33.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, BSA lacks information sufficient to form a belief as to what Plaintiff knew or did not know. In further answer, it is specifically denied that a "pedophilia epidemic" existed in the BSA or that BSA knew about any such alleged epidemic or engaged in any "cover-up" of the same. By way of further answer, it is specifically denied that any acts or omissions of the BSA were the cause of S.D.'s alleged harm. In further answer, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 33 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof is demand. By way of further response, Plaintiff's alleged

14

Case ID: 190800135

claims against the BSA are time-barred by the applicable statutes of limitations and laches, among other things.

34.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, Plaintiff incorrectly assumes that BSA had knowledge of the acts of the alleged "three-hundred and fifty pedophiles," and strict proof of same is demanded.  By way of further answer, it is specifically denied that BSA "continue[s] to hide the true nature of their cover-up and the extent of the pedophilia epidemic within their organization." By way of further answer, the allegations of paragraph 34 of Plaintiff's Complaint purport to characterize certain "Ineligible Volunteer Files," which are written documents, the contents of which speak for themselves, and Plaintiff's characterization thereof is denied.  In further answer, after reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 34 of Plaintiff's Complaint, such allegations are accordingly denied, and strict proof is demand.

35.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 35 of Plaintiff's Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied and strict

15

Case ID: 190800135

proof is demanded.  By way of further answer, it is specifically denied that the BSA committed

or "continue[s] to perpetuate a continuing and serious conspiracy to conceal and cover-up"

alleged "abusers in BSA scout troops throughout the United States and overseas."

36.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's

collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

the Penn Mountains Council and does not authorize the Council to make representations on

behalf of BSA.  By way of further answer, the allegations of paragraph 36 of Plaintiff's

Complaint constitute conclusions of law to which no response is required, and the same are

therefore denied.  To the extent those allegations are deemed factual, they are denied and strict

proof is demanded.  By way of further answer, it is specifically denied that any acts or omissions

of the BSA were the cause of S.D.'s alleged harm.  It is further denied that a "widespread

pedophilia problem" exists within the BSA's "ranks."  It is also denied that the "conduct" alleged

in paragraph 36 of Plaintiff's Complaint occurred and denied that the BSA "suppressed" any

such alleged "conduct from public view within [a] secret archive."  Finally, it is further denied

that the BSA engaged in any "continued and systematic attempt to coverup [sic] [a] pedophilia

problem from public view through the present date."

37.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's

collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

the Penn Mountains Council and does not authorize the Council to make representations on

behalf of BSA.  By way of further answer, it is admitted only that BSA is not aware of a Grand

Jury report or other governmental investigation of the so-called "child sexual abuse scandal and

cover-up" alleged in paragraph 37 of Plaintiff's Complaint.  It is specifically denied that any

such "child sexual abuse scandal and cover-up" ever occurred.  "By way of further answer, after

reasonable investigation, the BSA lacks information sufficient to form a belief as to the truth of

the remaining allegations of paragraph 37 of Plaintiff's Complaint, such allegations are

accordingly denied, and strict proof is demand.  Except as so admitted, denied.

38.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's

collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

the Penn Mountains Council and does not authorize the Council to make representations on

behalf of BSA.  By way of further answer, it is admitted only, upon information and belief, that

no criminal allegations have been made by any Pennsylvania "prosecutors, investigators or child

protection department" regarding the fictitious "systematic conduct" alleged in paragraph 38 of

Plaintiff's Complaint.  It is specifically denied that any such "systematic conduct" by BSA

alleged in paragraph 38 of Plaintiff's Complaint ever occurred.  In further answer, to the extent

the allegations of paragraph 38 of Plaintiff's Complaint contain conclusions of law, no response

is required.  To the extent those allegations are deemed factual, they are denied.  Except as so

admitted, denied.

39.     Denied as stated.  It is denied that Defendant BSA "ignored" any alleged danger

and "permitted" Defendant Antosh and other pedophiles in Scouting to prey upon young boys,

including the then minor-Plaintiff.  On the contrary, it is averred that BSA has, historically and to

the present time, placed great importance on creating a secure environment for the youth

participants in Scouting programs, and it is further averred that at all times relevant to the facts

35940673.6 10/08/2019

Case ID: 190800135

which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

40.     Denied as stated. On the contrary, it is averred that, since approximately 1919, BSA has maintained files containing allegations against individuals for various reasons that would make them ineligible to volunteer in any Scouting program.  Over time, these files have been referred to by several names, including BSA's "Volunteer Screening Database" ("VSD"). Although the contents of the BSA Volunteer Screening Database ("VSD") are kept confidential, BSA denies that it has kept its VSD hidden or secret.

41.     Denied.  It is specifically denied that BSA maintained secret files.  It is further specifically denied that BSA's internal "ineligible volunteer files" reveal that Scouting is a "pedophile magnet," and that removed pedophiles often reenter Scouting in other locations.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.  By way of further answer, the allegations of paragraph 41 of Plaintiff's Complaint purport to characterize written documents, the contents of which speaks for themselves, and Plaintiff's characterization thereof is denied.

42.     Denied as stated.  It is specifically denied that records of the BSA demonstrate an awareness of "scouting's attraction to pedophiles."  It is also specifically denied that records of the BSA demonstrate that characteristics of Scouting render Scouts particularly susceptible to pedophiles.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting,

35940673.6 10/08/2019

Case ID: 190800135

and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further answer, the allegations of paragraph 42 of Plaintiff's Complaint purport to characterize written documents, the contents of which speaks for themselves, and Plaintiff's characterization thereof is denied.

43.     Denied as stated and pursuant to Pa.R.C.P. 1029(e). On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further answer, it is specifically denied that "BSA knew or should have known that scouting attracts pedophiles." In further answer, the remaining allegations of paragraph 43, and all of its subparts, are denied because after reasonable investigation, the Answering BSA Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations.

44.     Denied as stated and pursuant to Pa.R.C.P. 1029(e). The allegations of paragraph 44 of Plaintiff's Complaint are further denied as vague insofar as they lack any specificity as to time period. By way of further answer, it is averred that BSA is aware that via its ineligible volunteer files it has rejected or revoked membership of several of persons based on allegations of a wide variety of reasons. BSA further avers that the purpose of the ineligible volunteer files is to protect Scouts and those who report inappropriate behavior. It is further averred that ineligible volunteer files were generated based in many cases based on allegations alone, with no investigation by BSA. The remaining allegations of paragraph 44 of Plaintiff's Complaint are

19

Case ID: 190800135

denied because after reasonable investigation, the Answering BSA Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations.

45.     Denied as stated and pursuant to Pa.R.C.P. 1029(e).  The allegations of paragraph 45 of Plaintiff's Complaint are further denied as vague insofar as they lack any specificity as to time period.  By way of further answer, inasmuch as the allegations of paragraph 45 of Plaintiff's Complaint are purely and wildly speculative and hypothetical in nature, the BSA is not required to respond.  In further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

46.     Denied as stated and pursuant to Pa.R.C.P. 1029(e).  It is further specifically denied that BSA "tracked pedophiles."  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

47.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 47 of Plaintiff's Complaint are denied as vague insofar as they lack any specificity as to time period.  By way of

20

Case ID: 190800135

further response, it is averred that at certain times, Defendant Antosh was registered with Troop 100, including, on information and belief, as an Assistant Scoutmaster.  It is denied that any acts attributed or alleged to have been performed by Defendant Antosh with respect to Plaintiff were undertaken with the knowledge or consent of the BSA.  The remaining allegations of paragraph 47 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and the same are denied and strict proof thereof is hereby demanded.

48.     Denied.  By way of further answer, it is expressly denied that the BSA controlled, supervised or sponsored "Penn Mountains Council, Boy Scout Troop 100."

49.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA "knew or should have known that Defendant Antosh posed a sexual threat to young boys including S.D."  On the contrary, it is averred that the BSA did not know and had no reason to know of the existence of the alleged sexual threat to young boys by Defendant Antosh as Plaintiff's Complaint contends. By way of further answer, it is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  In further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 49 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

35940673.6 10/08/2019

Case ID: 190800135

50.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 50 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  The allegations of paragraph 50 of Plaintiff's Complaint are further denied insofar as the phrase "confidential relationship" is vague and undefined.  Notwithstanding the foregoing, it is specifically denied that the BSA had such relationship with Scouts and other boys, including then minor-Plaintiff, who participated in Scouting programs.  On the contrary, it is averred that the BSA owed no fiduciary duty to Plaintiff.  It is averred that the only role of the BSA pursuant to the congressional charter is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.  In further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 50 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

51.     Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

35940673.6 10/08/2019

Case ID: 190800135

52.     Denied.    After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

53.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 53 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied.   To the extent those allegations are deemed factual, they are denied.   By way of further answer, it is averred that BSA charters locally incorporated councils to support independent community organizations that sponsor, operate, and run Scouting units.   The BSA expressly denies that it, at any time relevant, operated, promoted, or oversaw any Scouting unit, including "Boy Scout Troop 100."   It is further averred that BSA does not control nor have the right to control the means and manner of staffing, operation, and oversight of such troop.   By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

54.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

35940673.6 10/08/2019

Case ID: 190800135

the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 54 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

55.      Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 55 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  The allegations of paragraph 55 of Plaintiff's Complaint are further denied insofar as the phrase "special relationship" is vague and undefined.  Notwithstanding the foregoing, it is specifically denied that the BSA had such a relationship with Scouts and other boys, including then minor-Plaintiff, who participated in Scouting programs.  On the contrary, it is averred that the BSA owed no fiduciary duty to Plaintiff.  On the contrary, it is averred that the only role of the BSA pursuant to the congressional charter is to offer its Scouting program throughout the United

Case ID: 190800135

States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.

56.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that Plaintiff's "active and regular participation in camping trips and other activities were provided through" BSA or that the BSA "strongly encouraged" Plaintiff to participate in camping trips and activities.  On the contrary, it is averred that BSA charters locally incorporated councils to support independent community organizations that sponsor, operate, and run Scouting units.  The BSA expressly denies that it, at any time relevant, operated, promoted, or oversaw any Scouting unit, including "Boy Scout Troop 100."  It is further averred that BSA does not control nor have the right to control the means and manner of staffing, operation, and oversight of such troop.

In further answer, it is specifically denied that the BSA "knew or should have known of the specific danger that Defendant Antosh posed previous to the abuse of S.D."  On the contrary, it is averred that the BSA did not know and had no reason to know of the existence of the alleged sexual threat to young boys by Defendant Antosh as Plaintiff's Complaint contends.  By way of further answer, it is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  In further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the

Case ID: 190800135

remaining allegations set forth in paragraph 56 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

57.      Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, BSA lacks information sufficient to form a belief as to Plaintiff's parent's knowledge or mindset.  On the contrary, it is averred that BSA charters locally incorporated councils to support independent community organizations that sponsor, operate, and run Scouting units.  The BSA expressly denies that it, at any time relevant, operated, promoted, or oversaw any Scouting unit, including "Boy Scout Troop 100."  It is further averred that BSA does not control nor have the right to control the means and manner of staffing, operation, and oversight of such troop.  It is averred that the BSA owed no fiduciary duty to Plaintiff.  It is also averred that neither Plaintiff nor his parents or guardians placed any special confidence in the BSA in connection with Plaintiff's participation in Scouting and it is averred that BSA did not undertake to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in local Scouting activities.  In further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 57 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

58.      Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

35940673.6 10/08/2019

Case ID: 190800135

the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 58 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied. To the extent those allegations are deemed factual, they are denied. The allegations of paragraph 58 of Plaintiff's Complaint are further denied insofar as the phrase "special relationship" is vague and undefined. Notwithstanding the foregoing, it is specifically denied that the BSA had such relationship with Scouts and other boys, including then minor-Plaintiff, who participated in Scouting programs. On the contrary, it is averred that the BSA owed no fiduciary duty or other "affirmative duties" to Plaintiff as alleged in Plaintiff's Complaint. It is averred that neither Plaintiff nor his parents or guardians placed any special confidence in the BSA in connection with Plaintiff's participation in Scouting and it is averred that BSA did not undertake to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in local Scouting activities. On the contrary, it is averred that the only role of the BSA pursuant to the congressional charter is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth. By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

59. Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 59 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied. To the extent those allegations are deemed factual, they are denied. It is specifically denied that the BSA breached any duty owed to Plaintiff and denied that the BSA committed any "intentional act(s) of fraud and conspiracy" as alleged in Plaintiff's Complaint or "failed to disclosed" the same. By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

60. Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 60 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are therefore denied. To the extent those allegations are deemed factual, they are denied. By way of further answer, it is specifically denied that the BSA perpetuated any purported "ongoing coverup" as alleged in paragraph 60 of Plaintiff's Complaint.

61. Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

28

Case ID: 190800135

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is expressly denied that the BSA "taught S.D. to trust and obey his scoutmasters and assistant scoutmasters, including Defendant Antosh."  On the contrary, it is averred that the only role of the BSA pursuant to the congressional charter is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.  By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

It is further denied that any acts or omissions by BSA were in any way a cause of Plaintiff's alleged harm.  By way of further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 61 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

62.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 62 of Plaintiff's Complaint contain conclusions of law to which no response is required, and the same are

Case ID: 190800135

therefore denied.  To the extent those allegations are deemed factual, they are denied and strict proof is demanded.  By way of further answer, it is averred that the only role of the BSA pursuant to the congressional charter is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.  By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

In further answer, it is specifically denied that Plaintiff "was the victim of a known and preventable hazard" that the BSA allegedly "had created and allowed to continue" and that the BSA "refus[ed] to enlighten S.D." relating to the same.  It is further denied that the BSA committed any "torts" as alleged in Plaintiff's Complaint.  On the contrary, it is averred that the BSA did not know and had no reason to know of the existence of the alleged sexual threat to young boys by Defendant Antosh as Plaintiff's Complaint contends.  By way of further answer, it is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  In further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 62 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

35940673.6 10/08/2019

Case ID: 190800135

63.     Denied.    After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

64.      Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

65.     Denied.    After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

66.     Denied.    After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

67.     Denied.    After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

68.     Denied as stated.   The allegations of paragraph 68 of Plaintiff's Complaint constitute conclusions of law to which no response is required, and the same are therefore denied.  To the extent those allegations are deemed factual, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

31

Case ID: 190800135

69.     Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

70.     Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70 of Plaintiff's Complaint and same are denied and strict proof thereof is demanded.

71.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA engaged in any active participation which in any way caused or contributed to Defendant Antosh committing the alleged crimes and injuries and damages as alleged against then minor-Plaintiff.  The remaining allegations of paragraph 71 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and same are denied and strict proof thereof is demanded.

72.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA authorized Defendant Antosh to serve as a BSA Assistant Scoutmaster.  It is further expressly denied that the BSA selected leaders of any Scouting units, including the Scouting unit to which minor-

32

Case ID: 190800135

Plaintiff alleges he belonged or that the BSA controlled or had the right to control the means and manner of staffing operation and oversight of such Scouting units. The remaining allegations of paragraph 72 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and same are denied and strict proof thereof is demanded.

73.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, it is specifically denied that the BSA knew or had any reason to know or were otherwise on notice of the alleged unlawful sexual conduct of Defendant Antosh. It is further denied that the BSA had knowledge or reason to know or was on notice of such alleged sexual conduct such that it could take reasonable steps to prevent such alleged unlawful sexual conduct by Antosh or such that it could have implemented reasonable safeguards to avoid or prevent such acts assuming the BSA had any such notice, which notice is specifically denied. The BSA expressly denies that it selected leaders of any Scouting units, including the troop to which minor-Plaintiff alleges he belonged or that the BSA controlled or had the right to control the means and manner of staffing operation and oversight of such troop.

74.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, it is specifically denied that the BSA failed to prevent

33

Case ID: 190800135

or avoid Antosh's placement in a function or environment to prevent one-on-one contact with adolescent and pre-adolescent boys as an inherent part of that function or environment.  By way of further answer, it is further denied that the BSA had knowledge or reason to know or was on notice of such alleged sexual conduct such that it could take reasonable steps to prevent such alleged unlawful sexual conduct by Antosh or such that it could have implemented reasonable safeguards to avoid or prevent such acts assuming the BSA had any such notice, which notice is specifically denied.  In further answer, the BSA expressly denies that they selected leaders of any Scouting units, including the troop to which minor-Plaintiff alleges he belonged or that the BSA controlled or had the right to control the means and manner of staffing operation and oversight of such troop.

76.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA had any actual or constructive notice of Defendant Antosh's alleged conduct or propensities such that the injuries complained of in Plaintiff's Complaint were foreseeable by the BSA.  By way of further answer, the remaining allegations of paragraph 75 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and same are denied and strict proof thereof is demanded.

76.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

34

Case ID: 190800135

the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 76 of Plaintiff's Complaint are denied insofar as the phrase "at all times relevant hereto" is vague and undefined. It is further denied that the BSA knew or should have known or were in any position to have known of the alleged sexually predacious acts of Defendant Antosh upon Plaintiff.   It is denied that the BSA had any actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were foreseeable by the BSA.   On the contrary, the BSA expressly denies that they selected leaders of any Scouting units, including the Scouting unit to which minor-Plaintiff alleges he belonged or that the BSA controlled or had the right to control the means and manner of staffing operation and oversight of such Scouting units.

77.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent that the allegations set forth in paragraph 77 of Plaintiff's Complaint constitute conclusions of law, no response is required, and the same are therefore denied and strict proof is demanded.  To the extent a response is deemed required, it is averred that at no time did the BSA act contrary to law or the BSA's stated mission.  It is further denied that the BSA entered upon, adopted, and/or followed a course of action at any time to conceal from young boys and their families and civil and criminal authorities, the alleged harmful, illegal, and immoral acts of Defendant Antosh allegedly committed upon Plaintiff and strict proof thereof is hereby demanded.  It is averred that the BSA had no actual or constructive

35

Case ID: 190800135

notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  It is further averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

78.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA engaged in and entered upon, adopted, and/or followed any course of action or conduct contrary to law.  It is further averred that the BSA never concealed nor engaged in a pattern of concealment with respect to alleged harmful, illegal, and immoral acts of alleged pedophilic Scoutmasters and Assistant  Scoutmasters and it is further specifically denied that the BSA concealed or destroyed evidence of misconduct of alleged pedophilic Scoutmasters and Assistant Scoutmasters, and strict proof thereof is hereby demanded.  On the contrary, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

79.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is expressly denied that the BSA "deliberately withheld information from scouts and their parents, including S.D. and his parents," including

36

Case ID: 190800135

the purported information alleged in paragraph 79 of Plaintiff's Complaint.  By way of further answer, all other allegations alleged are denied pursuant to Pa.R.C.P. 1029(e).  On the contrary, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

80.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is expressly denied that the BSA deliberately concealed any information from minor-Plaintiff or his parents or guardians and it is further denied that the BSA had any actual or constructive knowledge about or with respect to Defendant Antosh such that it could engage in deliberate concealment thereof.  To the extent a further response is required, the allegations are denied pursuant to Pa.R.C.P. 1029(e).  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law. By way of further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff knew or should have known.

81.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is expressly denied that any conspiracy existed

among the BSA and any other entity or individual to avoid civil and criminal liability for the alleged harmful, illegal, and immoral acts of Scoutmasters or Assistant Scoutmasters, including Defendant Antosh, before or after the alleged sexual assault of the then minor-Plaintiff as described in Plaintiff's Complaint.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

82.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, inasmuch as the allegations of paragraph 82 of Plaintiff's Complaint are speculative and hypothetical in nature, the BSA is not required to respond.  To the extent a further response is deemed required, the remaining allegations of paragraph 82 of Plaintiff's Complaint, and all of its subparts, are denied.  It is specifically denied that the BSA was the factual or legal cause of Plaintiff's alleged injuries.  It is further specifically denied that Scouts are at a heightened risk of sexual abuse by child molesters.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

83.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, inasmuch as the allegations of paragraph 83 of Plaintiff's Complaint are speculative and hypothetical in nature, the BSA is not required to respond.  To the extent a further response is deemed required, it is specifically denied that the BSA was the factual or legal cause of Plaintiff's alleged injuries.  It is further specifically denied that Scouts are at a heightened risk of sexual abuse by child molesters.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.  In further response, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what steps Plaintiff would or would not have taken under hypothetical circumstances.  To the extent a further response is deemed required the allegations are denied pursuant to Pa.R.C.P. 1029(e).

84.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, paragraph 84 of Plaintiff's Complaint sets forth conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further response, it is specifically denied that the BSA was negligent, breached any duty, or acted in any fashion which could be construed as misconduct, conspiracy or fraud, and it is denied that Plaintiff suffered the injuries alleged in Plaintiff's

39

Case ID: 190800135

Complaint as a result of any acts or omissions by the BSA. The remaining allegations of paragraph 84 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and same are denied and strict proof thereof is demanded.

**COUNT I - Fraudulent Concealment and Estoppel**
**(Plaintiff v. All Defendants)**

85.     The BSA Answering Defendant incorporates as if fully set forth at length its Answers to paragraphs 1-84 of Plaintiff's Complaint.

86.     Denied as stated. On the contrary, it is averred that the Boy Scouts of America was incorporated in 1910 and in 1916, the Boy Scouts of America was granted a federal charter by an Act of Congress.

87.     Denied as stated. On the contrary, it is averred that pursuant to its federal charter, BSA offers its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.

88.     Denied as stated. The allegations of Paragraph 88 are denied insofar as the word "aggressively" is vague and undefined. By way of further response, BSA admits that it has considered its programs to be safe, and avers that safety is a priority and that it has held Scouting programs out to the public as such.

89.     Denied. By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

40

Case ID: 190800135

90.     Denied.  The allegations of paragraph 90 of Plaintiff's Complaint constitute to conclusions of law to which no response is required.

91.     Denied.  It is specifically denied that the BSA fraudulently concealed any information from Plaintiff and his parents.  It is also specifically denied that the BSA misrepresented to Scouts, their parents, and the American taxpayer that Scouts "were safe in scouting programs when, in fact, scouts were [purportedly] at an unreasonably heightened risk of sexual abuse by adult scout leaders."  It is further denied that the BSA made misrepresentations to Plaintiff and his parents.  On the contrary, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, the BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

92.     Admitted in part and denied in part.  It is admitted only that BSA maintains internal records and it is admitted that some of those records are known as Ineligible Volunteer files.  BSA further avers that the purpose of the ineligible volunteer files is to protect Scouts and those who report inappropriate behavior.  Except as so admitted, denied.

93.     Denied.  The allegations of paragraph 93 of Plaintiff's Complaint purport to characterize written documents, the contents of which speaks for themselves, and Plaintiff's characterization thereof is denied.  By way of further response, the BSA avers that the ineligible volunteer files reveal that BSA membership of all persons who have an Ineligible Volunteer File because of being accused of inappropriate behavior have been revoked from further participation in Scouting.  By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in the

41

Case ID: 190800135

Scouting program, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

94.     Denied as stated.   The allegations of paragraph 94 of Plaintiff's Complaint purport to characterize written documents, including the referenced writing attached as "Exhibit 'A'" to Plaintiff's Complaint, the contents of which speak for themselves, and Plaintiff's characterizations thereof are denied.   It is specifically denied that the document attached as "Exhibit 'A'" to Plaintiff's Complaint and referenced in paragraph 94 of Plaintiff's Complaint "evidence[s] the BSA and the local council's [alleged] ongoing conspiracy to suppress from the public its [alleged] certain knowledge of its [purported] pedophile infiltration problem."  By way of further response, it is averred that the ineligible volunteer files contain documents that speak to various allegations of inappropriate conduct.   It is denied that the ineligible volunteer files contain internal memoranda demonstrating BSA's purported "awareness and concern about the threat that pedophiles in BSA posed to its name, reputation, and economic interests, but little concern for the danger pedophiles presented to scouts and others in the community."  To the contrary, the purpose of the ineligible volunteer files was to protect Scouts and those who reported inappropriate behavior by those associated with Scouting.  By way of further answer, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in the Scouting program, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, the

Case ID: 190800135

BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

95.     Denied as stated.  The allegations of paragraph 95 of Plaintiff's Complaint purport to characterize written documents, the contents of which speak for themselves, and Plaintiff's characterizations thereof are denied.  By way of further answer, it is averred that the ineligible volunteer files contain documents that speak to various allegations of inappropriate conduct, including, but not limited to, allegations against individuals accused of inappropriate sexual behavior with youths.  By way of further answer, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in the Scouting program, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

96.     Denied as stated.  The allegations of paragraph 96 of Plaintiff's Complaint purport to characterize written documents, the contents of which speak for themselves, and Plaintiff's characterizations thereof are denied.  By way of further answer, the allegations of paragraph 96 of Plaintiff's Complaint are denied insofar as the word "overwhelming" is vague and undefined. It is further denied that the ineligible volunteer files show that BSA has any distinctive characteristics that render Scouts particularly prone to pedophile's abuse.  By way of further answer, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in the Scouting program, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, the BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

Case ID: 190800135

97.     Denied.   The averments of paragraph 97 of Plaintiff's Complaint purport to characterize written documents, the contents of which speak for themselves, and Plaintiff's characterizations thereof are denied.  By way of further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 97 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.

98.     Denied.  It is specifically denied that the BSA maintained a "secret cache of files on pedophiles" and that, by 2005, BSA had more than 20,000 files on pedophiles.  By way of further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 98 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.

99.     Denied. After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 99 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.  By way of further answer, on information and belief, at some time in the past, in order to make its identification system more effective, certain ineligible volunteer files pertaining to individuals who had passed away or exceeded a certain age were purged from the BSA's records.

100.    Denied. After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 100 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.

101.    Denied as stated.  It is specifically denied that BSA conducted a "file-purge" as alleged in paragraph 101 of Plaintiff's Complaint.  By way of further response, it is averred that 1247 ineligible volunteer files were released into the public domain by the Oregon Supreme

Case ID: 190800135

Court in 2012.  It is further averred, on information and belief, that another group of ineligible volunteer files associated with other court proceedings, not subject to a confidentiality order, are in the possession of an attorney who offers those files for sale to other attorneys.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 101 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.

102.    Denied.  The allegations of paragraph 102 of Plaintiff's Complaint purport to characterize written documents, the contents of which speak for themselves, and Plaintiff's characterizations thereof are denied.  By way of further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 102 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.

103.    The allegations of paragraph 103 of Plaintiff's Complaint, including subparts (a) through (r) thereof, are denied as stated and pursuant to Pa.R.C.P. 1029(e).   It is specifically denied that the ineligible volunteer files demonstrate that Scouting attracts pedophiles at an alarming rate or that Scouting has distinctive characteristics that make it attractive to pedophiles, and the enumerated allegations of paragraph 103, including subparts (a)-(r), of Plaintiff's Complaint are denied pursuant to Pa.R.C.P. 1029(e).  The allegations of paragraph 103, and its subparts, of Plaintiff's Complaint are further denied as vague insofar as they lack any specificity as to time period.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of

Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

104.    Denied as stated.    The allegations contained in paragraph 104 of Plaintiff's Complaint constitute a conclusory statement which is irrelevant, even if true, and inadmissible at trial and constitutes scandalous and impertinent information.   To the extent a further response is required, the allegations are denied insofar as after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 104.   Strict proof thereof is demanded.

105.    Denied as stated.    The allegations contained in paragraph 105 of Plaintiff's Complaint constitute a conclusory statement which is irrelevant, even if true, and inadmissible at trial and constitute scandalous and impertinent information interposed for an improper purpose. To the extent a further response is required, the allegations are denied insofar as after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 105 of Plaintiff's Complaint.   Strict proof thereof is demanded.

106.    Denied as stated. It is specifically denied that BSA continues to make purportedly false and misleading public statements regarding the risks of sexual abuse in Scouting; continues to purportedly minimize and downplay the harm of sexual abuse to children in Scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the purported truth about its historical knowledge of the nature and extent of sexual abuse of Scouts by adult scout leaders.   On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times

35940673.6 10/08/2019

Case ID: 190800135

relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

107.     Denied as stated and denied pursuant to Pa.R.C.P. 1029(e).  It is specifically denied that BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

108.     Denied as stated and denied pursuant to Pa.R.C.P. 1029(e).  It is further denied that the BSA made any claims that were knowingly false or in reckless disregard for the truth or falsity of the claim, as alleged in paragraph 108 of Plaintiff's Complaint.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

Case ID: 190800135

109.   Denied.  It is denied that BSA made any representations as alleged by Plaintiff in paragraph 109 of Plaintiff's Complaint.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 109 of Plaintiff's Complaint and the same are denied and strict proof thereof demanded.

110.   Denied as stated and denied pursuant to Pa.R.C.P. 1029(e).   Inasmuch as the allegations of Paragraph 110 of Plaintiff's Complaint are purely speculative and hypothetical in nature, the BSA is not required to respond further.  By way of further answer, it is specifically denied that BSA deliberately withheld information from Congress, Scouts and their parents, including Plaintiff and his parents.  It is further specifically denied that the alleged withheld information included:  "the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was [allegedly] aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent," as alleged by Plaintiff.  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

111.   Denied as stated.  It is specifically denied that BSA withheld any facts of information about predatory and pedophilic Scoutmasters and/or Assistant Scoutmaster, and it is specifically denied that the BSA had a financial incentive to allegedly withhold facts and

48

Case ID: 190800135

information about the same. On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

112. Denied. After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 112 of Plaintiff's Complaint and the same are denied and strict proof thereof demanded.

113. Denied as stated. It is admitted that BSA seeks to encourage parents to enroll their children in Scouting. It is admitting that Scouting involves Scouts' exposure to adults and others, and includes over-night outings, camping events, and trips that may be away from parents. It is admitted that Scouts earn badges and other achievements in Scouting. The remaining allegations of paragraph 113 of Plaintiff's Complaint are denied pursuant to Pa.R.C.P. 1029(e), and strict proof thereof is demanded.

114. Admitted in part; denied in part. The allegations of paragraph 114 of Plaintiff's Complaint are denied insofar as the phrase "special events" is vague and undefined. By way of further answer, it is admitted only that BSA is funded by private donations, membership dues, and corporate sponsors. It is specifically denied that BSA is funded by the federal government, and strict proof thereof is demanded. Except as so admitted, denied.

49

Case ID: 190800135

115.    Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 115 of Plaintiff's Complaint and the same are denied and strict proof thereof is demanded.

116.    Denied.   The allegations of paragraph 116 of Plaintiff's Complaint are denied insofar as the word "subsidies" is vague and undefined.   By way of further answer, the allegations of paragraph 1116 of Plaintiff's Complaint refer to federal statutes which are written documents that speak for themselves.   Plaintiff's characterizations of those statutes are denied.

117.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA engaged in any "plan of action to cover up incidents of [alleged] sexual abuse of minors by Scoutmaster and Assistant Scoutmasters and prevent disclosure, prosecution and civil litigation including" the purported enumerated bases in paragraph 117 of Plaintiff's Complaint.   The allegations of paragraph 117 of Plaintiff's Complaint are further denied pursuant to Pa.R.C.P. 1029(e).  On the contrary, it is averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

35940673.6 10/08/2019

Case ID: 190800135

118.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 118 of Plaintiff's Complaint constitute conclusions of law to which no response is required.   To the extent those allegations are deemed factual, they are denied.   By way of further answer, it is specifically denied that the BSA engaged in any such "actions" as purportedly alleged in paragraph 118 of Plaintiff's Complaint.   It is further denied that the BSA engaged in any purported "fraudulent concealment" or that BSA is estopped from asserting a defense of statute of limitations and/or laches.   On the contrary, each of Plaintiff's purported claims in Plaintiff's Complaint are unequivocally time-barred by the applicable statutes of limitations and laches.

119.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 119 of Plaintiff's Complaint constitute conclusions of law to which no response is required.   To the extent those allegations are deemed factual, they are denied.   By way of further answer, it is specifically denied that the BSA engaged in conduct that was willful and outrageous or was committed in reckless disregard of the probability of causing Plaintiff severe emotional distress, mental anguish, humiliation, and psychological, spiritual, and physical injury and illness of Plaintiff.   By

35940673.6 10/08/2019

Case ID: 190800135

way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

120.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations set forth in paragraph 120 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that the BSA was or is guilty of fraud, oppression, or malice.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

121.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations set forth in paragraph 121 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, it is specifically denied that the BSA at any time engaged in the practice of deceit, deception, concealment, or fraud, or that then minor-Plaintiff was victimized by Defendant Antosh as a direct or proximate result of any such acts or omissions by the BSA and strict proof to the contrary is hereby demanded.  By way of further defense, it is averred that

Case ID: 190800135

at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT II
### (Civil Conspiracy)
### (Plaintiff v. All Defendants)

122.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to paragraphs 1-121 of Plaintiff's Complaint.

123.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA in any way, by and through its agents and representatives, conspired to cover up incidents of sexual abuse of minors by Scoutmasters and Assistant Scoutmasters, including Defendant Antosh, as alleged by Plaintiff.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.  By way of further answers, the allegations of paragraph 123 of Plaintiff's Complaint are denied pursuant to Pa. R.C.P. 1029(e).

35940673.6 10/08/2019

Case ID: 190800135

124.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 124 of Plaintiff's Complaint contain conclusions of law to which no response it required.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that the BSA in any way, by and through its agents and representatives, "conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that Defendant Antosh [allegedly] posed to unsuspecting children, including S.D."  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

125.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA placed its own interests ahead of the protection of children, including Plaintiff.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

54

Case ID: 190800135

126.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 126 of Plaintiff's Complaint contain conclusions of law to which no response it required.   To the extent those allegations are deemed factual, they are denied.   It is specifically denied that the BSA engaged in any "conspiratorial conduct in concealing the dangers of sexual abuse of Assistant Scoutmasters, including Defendant Antosh," and that any such purported conduct constitutes outrageous or egregious wrongdoing in willful disregard for Plaintiff's rights.   By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

127.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 127 contain conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA engaged in any "conspiratorial conduct" or that Plaintiff was victimized by Defendant Antosh as a direct and proximate result of said alleged conspiratorial conduct.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.  In further answer, after reasonable investigation, the

Case ID: 190800135

BSA lacks information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's alleged "injuries, losses and damages," and such allegations are accordingly denied and strict proof is hereby demanded.

128.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 128 constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA engaged in any "conspiracy" and that such alleged conspiracy "was ongoing and continues to this date."  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

### COUNT III
### Willful Misconduct, Wanton Misconduct and Reckless Misconduct
### (Plaintiff v. All Defendants)

129.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to paragraphs 1-128 of Plaintiff's Complaint.

130.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

56

Case ID: 190800135

the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 130 constitute conclusions of law to which no response is required. To the extent those allegations are deemed factual, they are denied. By way of further answer, it is specifically denied that the BSA engaged in any willful, wanton, and/or reckless misconduct that reflects a conscious disregard of children's health and safety, including Plaintiff. It is further denied that the BSA at any time acted with intent to harm anyone, including, but not limited to, Plaintiff. By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

131.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 131 constitute conclusions of law to which no response is required. To the extent those allegations are deemed factual, they are denied. By way of further answer, it is specifically denied that the BSA acted with reckless indifference to injury that would likely result from its alleged acts or omissions. It is further denied that the BSA committed the alleged "acts or omissions" referenced in paragraph 131 of Plaintiff's Complaint. It is also specifically denied that the BSA "knew that pedophiles were infiltrating scouting at an alarming rate," and that "it knew children would suffer severe damage and harm from being sexually abused as a result of this infiltration." On the contrary, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that

35940673.6 10/08/2019

Case ID: 190800135

at all times relevant to the facts which are the subject of Plaintiff's Complaint, the BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

132.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 132 constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA acted with reckless indifference and that their conduct was willful or wanton and it is specifically denied that Plaintiff was a victim as a result of such alleged conduct.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

133.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 133 constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA engaged in conduct that was willful, wanton, and/or reckless misconduct and it is specifically

58

Case ID: 190800135

denied that any alleged victimization of Plaintiff by Defendant Antosh was a direct and proximate result of alleged conduct on the part of the BSA.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

### COUNT IV
### (Intentional Infliction of Emotional Distress)
### (Plaintiff v. All Defendants)

134.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-133 of Plaintiff's Complaint.

135.    Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 135 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

136.    Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 136 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

137.    Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 137 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

138.    Denied.   After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 138 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

35940673.6 10/08/2019

Case ID: 190800135

139.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA knew or should have known that Defendant Antosh was an alleged "dangerous child molester and sexual predator" and strict proof thereof is hereby demanded.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

140.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA knew or should have known of Defendant Antosh's alleged sexual misconduct or that such alleged conduct would cause Plaintiff injury and strict proof thereof is hereby demanded.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

35940673.6 10/08/2019

Case ID: 190800135

141.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations are also denied pursuant to Pa.R.C.P. 1029(e).  It is averred also that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further answer, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in the Scouting program, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, the BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

142.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 142 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA engaged in any conduct as alleged in paragraph 142 of Plaintiff's Complaint and the same are also denied pursuant to Pa.R.C.P. 1029(e).  It is further denied that any such

61

Case ID: 190800135

alleged conduct resulted in injury to the Plaintiff and strict proof thereof is hereby demanded. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

143.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 143 of Plaintiff's Complaint constitute conclusions of law to which no response is required.   To the extent those allegations are deemed factual, they are denied.   By way of further answer, it is specifically denied that the BSA engaged in any conduct as alleged in paragraph 143 of Plaintiff's Complaint.   It is further denied that the BSA engaged in conduct that was willful, reckless, or with outrageous indifference to an alleged highly unreasonable risk of harm and an alleged conscious indifference to Plaintiff's health, safety, and welfare and strict proof thereof is hereby demanded.   On the contrary, it is averred that the BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in Scouting, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, the BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.   By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

144.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Case ID: 190800135

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 144 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA engaged in any conduct as alleged in Plaintiff's Complaint, intentional or otherwise, and denied that as a result of such alleged conduct, Plaintiff sustained injury and strict proof thereof is hereby demanded.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT V
### (Negligent Infliction of Emotional Distress)
### (Plaintiff v. All Defendants)

145.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-144 of Plaintiff's Complaint.

146.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 146 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those

63

Case ID: 190800135

allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA was negligent in any way and that such alleged negligence was the direct and proximate result of the injuries and damages Plaintiff claims.  The remaining allegations of paragraph 146 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and the same are denied and strict proof thereof is hereby demanded. To the extent a further response is required, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT VI
### (Assault and battery)
### (Plaintiff v. Defendant Antosh)

147.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-146 of Plaintiff's Complaint.

148.    The allegations set forth in paragraph 148 of Plaintiff's Complaint pertain to a defendant other than the Answering BSA Defendant and no response is required on behalf of the Answering BSA Defendant.

149.    The allegations set forth in paragraph 149 of Plaintiff's Complaint pertain to a defendant other than the Answering BSA Defendant and no response is required on behalf of the Answering BSA Defendant.

64

Case ID: 190800135

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT VII
### (Negligence)
### (Plaintiff v. All Defendants)

150.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-149 of Plaintiff's Complaint.

151.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.   By way of further answer, the allegations of paragraph 151 of Plaintiff's Complaint constitute conclusions of law to which no response is required.   To the extent those allegations are deemed factual, they are denied.   By way of further answer, it is specifically denied that Defendant Antosh was ever under the direction, supervision, and control of the BSA. By way of further response, the BSA expressly denies that it selects leaders of Scouting units or that it controlled or had the right to control the means and manner of staffing operation and oversight of Scouting units, including, but not limited to, selection or control of Defendant Antosh.   By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

152.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

35940673.6 10/08/2019

Case ID: 190800135

the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is specifically denied that the BSA selected, accepted, ratified, approved, and authorized Defendant Antosh to serve and act as an Assistant Scoutmaster for the benefit of members of Troop 100.  On the contrary, it is averred that Defendant Antosh was never under the direction, supervision, and control of the BSA.  By way of further response, the BSA expressly denies that it selects leaders of Scouting units or that it controlled or had the right to control the means and manner of staffing operation and oversight of such Scouting units, including, but not limited to, selection or control of Defendant Antosh.  In further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

153.    Denied.  It is specifically denied that any knowledge or information relating to any previous incidents involving other pedophiles within or outside of Scouting imposed a duty or ability on behalf of the BSA to reasonably foresee or predict other incidents allegedly involving pedophile Scoutmasters, Assistant Scoutmasters, volunteers, employees, agents and/or apparent agents, representatives, or Defendant Antosh.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  On the contrary, it is averred that Defendant Antosh was never under the direction, supervision, and control of the BSA.  By way of further response, the BSA expressly denies that it selects leaders of Scouting units or that it controlled or had the right to control the means and manner of staffing operation and oversight of such Scouting units, including, but not limited to, selection or control of scout leaders such as Defendant Antosh is alleged to have been.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently

66

Case ID: 190800135

and fulfilled any duty owed as imposed by law.  It is further averred that BSA has, historically and to the present time, placed great importance on creating a secure environment for the youth participants in the Scouting program, and it is further averred that at all times relevant to the facts which are the subject of Plaintiff's Complaint, BSA took the necessary and reasonable actions and steps to protect Scouts from sexual molestation.

154.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 154 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, the BSA avers that any duty that may be determined that the BSA owed to then minor-Plaintiff was fulfilled in accord with applicable law and strict proof to the contrary is hereby demanded.

155.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 155 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, the enumerated allegations of paragraph 155 of Plaintiff's Complaint are denied pursuant to Pa.R.C.P. 1029(e). It is also specifically denied that the BSA screened, trained, hired, supervised, and/or retained

35940673.6 10/08/2019

Case ID: 190800135

Defendant Antosh as an Assistant Scoutmaster and it is expressly denied that the BSA selects, hires, supervises, or retains leaders of Scouting units and it is denied that the BSA controlled or had the right to control the means and manner of staffing, operation, and oversight of Scouting units, including, but not limited to, the leaders of such Scouting units selected by the independent community organizations.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

156.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to what conduct Defendant Antosh may have engaged at any time relevant.  The allegations of paragraph 156 of Plaintiff's Complaint are further denied insofar as the phrase "during all relevant times hereto" is vague and undefined.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

35940673.6 10/08/2019

Case ID: 190800135

157.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 157 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA was negligent in any way, including, but not limited to, by failing adequately to supervise the conduct and the activities of Defendant Antosh. It is specifically denied that the BSA had a duty to supervise the conduct and activities of Defendant Antosh and it is expressly denied that the BSA selects, hires, supervises, or retains leaders of Scouting units or that the BSA controlled or had the right to control the means and manner of staffing, operation, and oversight of Scouting units, including, but not limited to, the leaders of such Scouting units selected by the independent community organizations.  It is expressly denied that the BSA operates, promotes, or oversees any Scouting units, including "Boy Scout Troop 100" and it is further averred that the BSA does not control nor have the right to control the means and manner of staffing, operation, and oversight of such Scouting units such that it had no duty to supervise the conduct and activities of Defendant Antosh.  On the contrary, it is averred that under its congressionally issued charter, BSA offers its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

158.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent Plaintiff's allegations in paragraph 158 of Plaintiff's Complaint are speculative and hypothetical in nature, no further response is required.  To the extent the allegations set forth in paragraph 158 of Plaintiff's Complaint constitute a conclusion of law, no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA had a duty to supervise the conduct and activities of Defendant Antosh and it is expressly denied that the BSA selects, hires, supervises, or retains leaders of Scouting units or that the BSA controlled or had the right to control the means and manner of staffing, operation, and oversight of Scouting units, including, but not limited to, the leaders of such Scouting units selected by the independent community organizations.  On the contrary, it is averred that under its congressionally issued charter, BSA offers its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.   It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

159.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains

Case ID: 190800135

Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations in paragraph 159 of Plaintiff's Complaint are speculative and hypothetical in nature, no further response is required.  To the extent a further response is deemed required, it is specifically denied that the BSA acted in a careless, negligent, or reckless manner, and denied that such alleged conduct, caused or contributed to the damages Plaintiff claims he sustained.  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

160.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations of paragraph 160 of Plaintiff's Complaint are speculative and hypothetical in nature, no further response is required. To the extent a further response is deemed required, it is specifically denied that the BSA knew or should have known of Defendant Antosh's alleged propensities as described in paragraph 160 of Plaintiff's Complaint and it is denied that such knowledge or duty to know caused the damages Plaintiff now claims.  It is further denied that the BSA "failed to take any disciplinary or remedial action to prevent Defendant Antosh from having contact with minor children."  It is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct

35940673.6 10/08/2019

Case ID: 190800135

and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

161.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations of paragraph 161 of Plaintiff's Complaint are speculative and hypothetical in nature, no further response is required. To the extent a further response is deemed required, it is specifically denied that the BSA knew or should have known that Defendant Antosh allegedly "had committed acts of sexual deviance and impropriety upon minor children" and that the BSA "failed to take any remedial or disciplinary measures against Defendant Antosh" and that any such alleged failure "directly resulted in the sexual abuse of S.D."  The allegations of this paragraph are also denied pursuant to Pa.R.C.P. 1029(e).  It is also averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.

It is specifically denied that the BSA hired, supervised, and/or retained Defendant Antosh as an Assistant Scoutmaster or that the BSA had a duty to do so and it is expressly denied that the BSA selects, hires, supervises, or retains leaders of Scouting units and it is denied that the BSA controlled or had the right to control the means and manner of staffing, operation, and oversight of Scouting units, including, but not limited to, the leaders of such Scouting units

35940673.6 10/08/2019

Case ID: 190800135

selected by the independent community organizations. It is specifically denied that any alleged

failure on the part of the BSA resulted in the alleged sexual abuse of then minor-Plaintiff, and it

is denied the BSA had the duty or right to take any remedial or disciplinary measures against

Defendant Antosh.  By way of further answer, it is averred that at all times relevant, the BSA

acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by

law.

162.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's

collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

the Penn Mountains Council and does not authorize the Council to make representations on

behalf of BSA.  By way of further answer, it is specifically  denied that any alleged failure on the

part of the BSA resulted in the alleged sexual abuse of then minor-Plaintiff and it is denied that

the BSA had the duty or right to take any remedial or disciplinary measures against Defendant

Antosh.  It is expressly denied that the BSA selects, hires, supervises, or retains leaders of

Scouting units or that the BSA controlled or had the right to control the means and manner of

staffing, operation, and oversight of Scouting units, including, but not limited to, the leaders of

such Scouting units selected by the independent community organizations.   By way of further

answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and

prudently and fulfilled any duty owed as imposed by law.

163.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's

collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy

Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of

the Penn Mountains Council and does not authorize the Council to make representations on

35940673.6 10/08/2019

Case ID: 190800135

behalf of BSA.  By way of further answer, the allegations of paragraph 163 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA's conduct was outrageous, shocking, or committed with utter disregard for the welfare of Plaintiff and strict proof thereof is hereby demanded.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

164.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 164 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA was negligent in any way and that such alleged negligence was the cause of the injuries and damages Plaintiff claims.  The remaining allegations of paragraph 164 of Plaintiff's Complaint are denied in that after reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations and the same are denied and strict proof thereof is hereby demanded. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

74

Case ID: 190800135

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT VIII
### (Statutory Violation; Negligence *Per Se*)
### (Plaintiff v. All Defendants)

165.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-164 of Plaintiff's Complaint.

166.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is admitted only that certain agents, volunteers, or employees of the BSA may in the course of their practice and profession, regularly come into contact with children.  Except as so admitted, denied.

167.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 167 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

168.    Denied.    The allegations set forth in paragraph 168 of Plaintiff's Complaint pertain to a defendant other than the Answering BSA Defendant and no response is required on behalf of the BSA. To the extent a further response is deemed required, to the extent the allegations constitute a conclusion of law to which no response is required.  To the extent a further response is deemed required, after reasonable investigation the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 168 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

169.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.   By way of further response, it is specifically averred that the BSA had no knowledge of and did not acquiesce or consent to Defendant Antosh's alleged sexual assault and exploitation of Plaintiff and strict proof thereof is hereby demanded.  By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.  In further answer, to the extent the allegations in paragraph 169 of Plaintiff's Complaint constitute conclusions of law, no response it required.  To the extent a response is deemed required, after reasonable investigation the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 169

35940673.6 10/08/2019

Case ID: 190800135

regarding Defendant Antosh's alleged sexual assault and exploitation of Plaintiff, and the same are denied and strict proof thereof is hereby demanded.

170.   Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, it is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  It is further averred that law enforcement was notified of the allegations made by Plaintiff against Antosh. By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

171.   Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 171 of Plaintiff's Complaint contain conclusions of law to which no response is required and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is averred that the BSA had no actual or constructive notice of Defendant Antosh's alleged conduct and/or propensities such that the injuries complained of in Plaintiff's Complaint were not foreseeable by the BSA.  It is further averred that law enforcement was notified of the allegations made by Plaintiff against Antosh.  By way of further answer, it is

35940673.6 10/08/2019

Case ID: 190800135

averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT IX
### (Breach of Fiduciary Duty)
### (Plaintiff v. All Defendants)

172.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-171 of Plaintiff's Complaint.

173.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 173 of Plaintiff's Complaint constitute conclusions of law to which no response is required and the same are therefore denied.  To the extent those allegations are deemed factual, they are denied.  By way of further answer, it is specifically denied that the BSA had a special fiduciary relationship of human and spiritual trust or concomitant in loco parentis duties with the Plaintiff and strict proof thereof is hereby demanded.  In further answer, the BSA fulfilled any duty to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in Scouting. It is averred that the only role of the BSA pursuant to its congressional charter was and is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth. By

way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

174.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations set forth in paragraph 174 of Plaintiff's Complaint constitute conclusions of law, no response is required.  To the extent those allegations are deemed factual, it is specifically denied that the BSA was entrusted with the well-being, care, and safety of the then minor-Plaintiff as a result of his status as a Boy Scout and strict proof thereof is hereby demanded.  By way of further answer, the BSA fulfilled any duty to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in Scouting.  It is averred that the only role of the BSA pursuant to its congressional charter was and is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth. By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

175.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph 175 of Plaintiff's

Case ID: 190800135

Complaint constitute conclusions of law to which no response is required. To the extent those allegations are deemed factual, it is specifically denied that any fiduciary relationship existed between the BSA and the Plaintiff, including, but not limited to, a fiduciary duty to provide a safe haven and to ensure the then minor-Plaintiff's physical and emotional care and safety. On the contrary, it is averred that the BSA fulfilled any duty to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in Scouting. The only role of the BSA pursuant to its congressional charter was and is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

176.   Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 176 of Plaintiff's Complaint constitute conclusions of law to which no response is required. To the extent those allegations are deemed factual, it is specifically denied that any fiduciary relationship of trust, confidence and reliance existed between the BSA and the Plaintiff or that the BSA undertook, at any time, to provide Plaintiff with religious instructions, training, spiritual guidance or counseling. On the contrary, it is averred that the BSA fulfilled any duty to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in Scouting. The only role of the BSA pursuant to its congressional charter was and is to offer its Scouting

80

Case ID: 190800135

program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

177. Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, it is admitted only that the BSA did not, does not, and would not tolerate criminal misconduct. The remaining allegations are denied as stated. To the extent the allegations of paragraph 177 of Plaintiff's Complaint contain conclusions of law, no further response is required. To the extent those allegations are deemed factual, they are denied. It is specifically denied that the BSA made any representations whatsoever with respect to Scoutmasters and Assistant Scoutmasters, including, but not limited to Defendant Antosh and strict proof thereof is demanded. It is further denied that Plaintiff had a right to rely or did rely upon the representations alleged to have been made by the BSA relating to locally-selected Scoutmasters and strict proof thereof is demanded. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

178. Denied. After reasonable investigation, the BSA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 178 of Plaintiff's Complaint and the same are denied and strict proof thereof is hereby demanded.

35940673.6 10/08/2019

Case ID: 190800135

179.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations set forth in paragraph 179 of Plaintiff's Complaint constitute conclusions of law, no response is required.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that the BSA had any fiduciary relationship or breached any fiduciary duty as alleged in paragraph 179 of Plaintiff's Complaint and strict proof thereof is hereby demanded.   It is further denied that the BSA engaged in any "inaction, manipulation, intimidation, evasion, intended deception, concealment, undue influence, duress or otherwise" as alleged in paragraph 179 of Plaintiff's Complaint.  On the contrary, it is averred that the BSA fulfilled any duty to advise, counsel, or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in Scouting. The only role of the BSA pursuant to its congressional charter was and is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

180.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations of paragraph

35940673.6 10/08/2019

Case ID: 190800135

180 of Plaintiff's Complaint constitute conclusions of law to which no response is required. To the extent those allegations are deemed factual, it is specifically denied that the BSA owed any fiduciary duty to Plaintiff, that the BSA breached any such duty, and that any such alleged breach caused the injuries and damages Plaintiff claims and strict proof thereof is hereby demanded. On the contrary, it is averred that the BSA fulfilled any duty to advise council or protect Plaintiff or his parents or guardians with respect to Plaintiff's participation in Scouting. The only role of the BSA pursuant to its congressional charter was and is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth. By way of further defense, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

## COUNT X
### (Respondeat Superior)
### (Plaintiff v. Boy Scout Defendants)

181.    The BSA Answering Defendant incorporates as if fully set forth at length its Answers to Paragraphs 1-180 of Plaintiff's Complaint.

182.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA. By way of further answer, the allegations of paragraph 182 of Plaintiff's

Case ID: 190800135

Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that the BSA is liable for any alleged sexual abuse of minor-Plaintiff under the doctrine of respondeat superior.  By way of further response, the BSA expressly denies that it selected local leaders of Scouting units, or that it controlled or had the right to control the means and manner of staffing, operation and oversight of local Scouting units, and it is averred, by way of further answer, that the BSA is not liable for the acts or omissions of any other party or party entity or individual named as a defendant herein.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

183.     Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations set forth in paragraph 183 of Plaintiff's Complaint constitute conclusions of law, no response is required.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that Defendant Antosh held any official positions and/or performed official duties for the BSA at any time relevant hereto.  It is specifically denied that Defendant Antosh at any time relevant was acting as an agent of the BSA in relation to his purported sexual abuse of Plaintiff.  By way of further response, the BSA expressly denies that it selected leaders of Scouting units, or that it controlled or had the right to control the means and manner of staffing, operation and oversight of Scouting units, and it is averred, by way of further answer, that the BSA is not liable for the acts or

84

Case ID: 190800135

omissions of any other party or party entity or individual named as a defendant herein.  By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

184.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, to the extent the allegations set forth in paragraph 184 of Plaintiff's Complaint constitute conclusions of law, no response is required.  To the extent a response is deemed required, those allegations are denied.  It is specifically denied that at any time relevant, Defendant Antosh was under the dominion, authority, and control of the BSA or was acting within the scope of any agency relationship and/or employment with the BSA with regard to his alleged abuse of Plaintiff, and strict proof thereof is hereby demanded.  By way of further response, the BSA expressly denies that it selected leaders of Scouting units, or that it controlled or had the right to control the means and manner of staffing, operation and oversight of Scouting units, and it is averred, by way of further answer, that the BSA is not liable for the acts or omissions of any other party or party entity or individual named as a defendant herein. By way of further response, even if Defendant Antosh had been under the dominion, authority, or control of the BSA at any time relevant hereto, which he was not, the acts alleged in the Complaint would fall outside the scope of any alleged agency or employment as a matter of law. By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

Case ID: 190800135

185.    Denied as stated and averred, to the contrary, that BSA objects to the Complaint's collective reference to "Defendants" as including Defendant Penn Mountains Council and Boy Scouts of America, and in answering this Complaint, BSA makes no representations on behalf of the Penn Mountains Council and does not authorize the Council to make representations on behalf of BSA.  By way of further answer, the allegations set forth in paragraph 185 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  To the extent those allegations are deemed factual, they are denied.  It is specifically denied that the BSA is or was vicariously liable as principal for any or all torts allegedly committed by Defendant Antosh.  It is further denied that any individuals determined to be agents or employees of the BSA committed any tortious acts from which liability flows based upon any facts or circumstances described in Plaintiff's Complaint.   By way of further answer, it is averred that at all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.

By way of further Answer, the Answering BSA Defendant asserts the following:

## NEW MATTER

186.    Defendant Boy Scouts of America ("BSA") incorporates herein by reference, as if fully set forth at length, its Answers to Plaintiff's Complaint, paragraph Nos. 1 – 185, inclusive, as hereinabove set forth.

35940673.6 10/08/2019

Case ID: 190800135

187.    Plaintiff's Complaint fails to state a cause of action against the BSA upon which relief can be granted.

188.    Plaintiff's claims as asserted and Plaintiff's Complaint are barred by applicable statutes of limitation.

189.    Plaintiff's claims, as set forth in Plaintiff's Complaint, are barred, in whole or in part, by the Doctrines of Waiver, Estoppel, and/or Laches.

190.    Plaintiff's injuries and damages, if any, were proximately or factually caused, in whole or in part, by the negligent or intentional acts or omissions, including but not limited to acts or omissions of Defendant Paul Antosh, over whom the BSA had no right of control and for whom the BSA had no legal responsibility such that the BSA has no liability to Plaintiff.

191.    The BSA is not liable to Plaintiff because the adult members of the Plaintiff's scout troop were not chosen, ratified, or supervised by the BSA, and the BSA is not liable for the acts of adult members of such local troop because the BSA does not exercise the requisite dominion or control over them for such liability to be imposed.

192.    The BSA is a charitable corporation chartered by the United States Congress in 1916 and, under its federal charter, the BSA offers its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.

193.    The BSA does not own, supervise, operate, or control the day-to-day activities of the individual local Scouting units and, therefore, has improperly been named as a party Defendant to this lawsuit.

194.    The BSA had no actual or constructive knowledge of Paul Antosh's alleged conduct or propensities, and the injuries and damages complained of were not reasonably

foreseeable by the BSA such that Plaintiff's Complaint does not state any causes of action against the BSA.

195.    The BSA had no duty to disclose information about Defendant Antosh about which BSA has no knowledge or duty or reason to know.

196.    There existed no special relationship or custodial relationship between the BSA and then minor-Plaintiff or his parents or guardians which would give rise to any fiduciary duty.

197.    Under the facts and circumstances alleged in Plaintiff's Complaint, the BSA owed no fiduciary duty to Plaintiff.

198.    Under the facts and circumstances alleged in Plaintiff's Complaint, neither Plaintiff nor his parents or guardians at the time placed any special confidence in the BSA in connection with Plaintiff's participation in his locally-operated troop.

199.    The BSA did not undertake to advise, counsel, or protect then minor-Plaintiff with respect to Plaintiff's participation in Scouting any Scouting program.

200.    The only role of the BSA pursuant to its congressional charter was and is to offer its Scouting program throughout the United States by making it available to independent chartered organizations to help those organizations accomplish their goals for their youth.

201.    Plaintiff's Complaint fails to state a cause of action as a matter of law against the BSA based upon a theory of respondeat superior or vicarious liability.

202.    The BSA had no right of control or supervision over any person or party who may have caused or contributed to the Plaintiff's alleged injuries or damages.

203.    The BSA owed no duty to Plaintiff to foresee or prevent a criminal assault by a third person and had no basis upon which to foresee the same.

35940673.6 10/08/2019

Case ID: 190800135

204. Paul Antosh was not under the supervision, direction, or control of the BSA as a matter of law, and the BSA cannot be held vicariously liable for his conduct or actions.

205. Plaintiff's alleged injuries and damages were caused by an intervening or superseding act for which the BSA are not responsible and the BSA's potential liability, if any, was extinguished by the intervening or superseding act.

206. To the extent Plaintiff has suffered any injury or damage as a result of any intentional act or tort, the BSA cannot be held jointly and severally liable therefor because damages due to intentional acts must be segregated from damages caused by any fault-based or negligent acts or omissions.

207. The BSA is not liable to Plaintiff because any actions and steps undertaken by the BSA during the relevant time period to protect youth from possible sexual molestation were reasonable and were the best available and "state of the art" during that time period and, therefore, constitute due care.

208. Plaintiff's damages and/or recovery, if any, must be reduced to the extent that he has received compensation from collateral sources.

209. Plaintiff's action is barred by the due process clauses of the United States of America and the Commonwealth of Pennsylvania.

210. Plaintiff's action is barred, in whole or in part, by his failure to join as parties those entities whose presence in the action are indispensable and in whose absence the action should not proceed.

211. Plaintiff's damages for medical care and other similar economic damages are limited to those which have been paid by or on behalf of Plaintiff and to those for which the Plaintiff is legally responsible for payment.

89

Case ID: 190800135

212. The BSA is entitled to a reduction in economic damages awarded in favor of Plaintiff to the extent they have been or are written off, contractually reduced, or subject to contractual discounts or otherwise similar discounts or otherwise similarly reduced.

213. Plaintiff's Complaint fails to allege a cause of action for Fraudulent Concealment and Estoppel with sufficient particularity and specificity and to that extent, fails to state a cause of action against the BSA pursuant to Count I of Plaintiff's Complaint.

214. The BSA committed no independent act of concealment upon which Plaintiff justifiably relied.

215. Plaintiff's claims for fraudulent concealment are barred by applicable statutes of limitation.

216. Plaintiff had a duty to use all reasonable diligence to discover facts and circumstances upon which his potential cause of action and recovery is based and to institute suit with the prescribed statutory period and Plaintiff has failed in his duty in this regard as imposed by law.

217. The BSA did not in any way act, intentionally or unintentionally, to cause Plaintiff's parents or Plaintiff to relax their vigilance or deviate from their right of inquiry to discover the factual basis for and/or causal connection to his alleged injuries and damages.

218. The BSA did not act in any way to conceal information from Plaintiff's parents or Plaintiff or to deceive them in any way.

219. Plaintiff's Complaint fails to allege a cause of action for Civil Conspiracy with sufficient particularity and specificity and to that extent, fails to state a cause of action against the BSA pursuant to Count II of Plaintiff's Complaint.

35940673.6 10/08/2019

Case ID: 190800135

220.    The BSA did not, either by any acts or omissions, intend to injure then minor Plaintiff such that Plaintiff's claims for civil conspiracy must fail.

221.    Plaintiff's Complaint fails to allege a cause of action for Willful Misconduct, Wanton Misconduct, and Reckless Misconduct with sufficient particularity and specificity and to that extent, fails to state a cause of action against the BSA pursuant to Count III of Plaintiff's Complaint.

222.    The BSA did not act in any willful, wanton, reckless, or intentional manner and/or in conscious disregard or reckless indifference to then minor Plaintiff or in disregard of then minor Plaintiff's safety such that the BSA can be held liable for punitive damages.

223.    The BSA cannot be held directly liable for punitive damages under the facts presented by this case.

224.    The BSA cannot be held vicariously liable for punitive damages under the facts presented by this case.

225.    Plaintiff's Complaint fails to allege a cause of action for Intentional Infliction of Emotional Distress with sufficient particularity and specificity and to that extent, fails to state a cause of action against the  BSA pursuant to Count IV of Plaintiff's Complaint.

226.    The BSA did not act in any manner such that it can be held liable for intentional infliction of emotional distress.

227.    Plaintiff's Complaint fails to allege a cause of action for Negligent Infliction of Emotional Distress with sufficient particularity and specificity and to that extent, fails to state a cause of action against the BSA pursuant to Count V of Plaintiff's Complaint.

35940673.6 10/08/2019

Case ID: 190800135

228.    The BSA did not act in any manner such that they can be held liable for negligent infliction of emotional distress inasmuch as the BSA owed no fiduciary duty or contractual obligation to the then minor Plaintiff.

229.    The BSA did not breach any duty owed to Plaintiff and therefore cannot be held liable for negligence, and Plaintiff therefore fails to state a cause of action for negligence pursuant to Count VII of Plaintiff's Complaint.

230.    Count VIII of Plaintiff's Complaint fails to allege a viable cause of action for Negligence Per Se against the BSA.

231.    The BSA did not violate any statutory duty with regard to then minor plaintiff such that the BSA can be held liable for Negligence Per Se.

232.    At all times relevant, the BSA acted carefully, lawfully, reasonably, and prudently and fulfilled any duty owed as imposed by law.

WHEREFORE, the Answering Defendant, Boy Scouts of America, demands judgment in its favor and against the Plaintiff together with costs of suit and other relief as the Court deems just and equitable.


## NEW MATTER/CROSS-CLAIM

## BSA v. PAUL ANTOSH

233.    The Answering BSA Defendant incorporates herein by reference, as if fully set forth at length, its Answers to Plaintiff's Complaint and New Matter, paragraph Nos. 1 – 232, inclusive, as hereinabove set forth.

234.    The allegations of Plaintiff's Complaint insofar as they are directed to Defendant Antosh or allege negligent, intentional, and tortious conduct on his part with respect to his

alleged sexual abuse of the minor-Plaintiff, are incorporated herein by reference for the limited purpose of this Cross-Claim.

235.    If Plaintiff is entitled to recover from any party, which recovery is specifically denied as against the BSA, then Defendant Antosh is solely and alone liable to Plaintiff, or liable over to the BSA or, alternatively, liable to the BSA by way of contribution and/or indemnification based upon the alleged conduct of Defendant Antosh and all liability of the BSA to Plaintiff is expressly denied.

WHEREFORE, the Answering BSA Defendant requests judgment in its favor and against the Plaintiff or, alternatively, request judgment in favor of the BSA and against Paul Antosh, for any sums that may be adjudged against the BSA in favor of Plaintiff, including, but not limited to, the BSA's claims against Defendant Antosh for contribution and indemnification, together with costs of suit.


**SAUL EWING ARNSTEIN & LEHR LLP**


By:     __/s/ Joseph F. O'Dea_____
        Joseph F. O'Dea, Jr. (I.D. No. 48370)
        Joshua W. B. Richards (I.D. No. 204315)
        Centre Square West
        1500 Market St., 38th Floor
        Philadelphia, PA  19102
        215-972-7777
        Joseph.Odea@saul.com
        Joshua.Richards@saul.com

        *Attorneys for Defendants Boy Scouts of America*

35940673.6 10/08/2019

Case ID: 190800135

VERIFICATION

I, Thomas McDermott, hereby verify I am the Corporate Representative and Council Services Department Manager, that I am authorized to make this verification on behalf of Defendant Boy Scouts of America and that the statements made in the foregoing Answer and New Matter and Cross-Claim of Defendant Boy Scouts of America to Plaintiff's Complaint are true and correct to the best of my personal knowledge or information and belief, as well as reports, records, conferences and other investigatory material made available to me. To the extent that the foregoing contains averments which are inconsistent in fact, I verify that my knowledge or information is sufficient to form a belief that one or more of them is true, although I am currently unable, after reasonable investigation, to ascertain which of the inconsistent averments are true.

To the extent that the foregoing contains legal conclusions or opinions, I hereby state that my Verification is made upon the advice of counsel, upon whom I have relied in the filing this document.

This Verification is made subject to the penalties of 18 Pa. C.S. § 4904 related to unsworn falsifications to authorities.

Boy Scouts of America

By: _____
       Thomas McDermott
       Council Services Department Manager

Dated: _____10/01_____, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com

*Attorneys for Defendants Boy Scouts of America*

|  |  |  |
|---|---|---|
| S.D, | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
|  | : |  |
| Plaintiff, | : |  |
|  | : | Case No. 190800135 |
| v. | : |  |
|  | : | CIVIL ACTION - LAW |
| Boy Scouts of America, et al. | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## CERTIFICATE OF SERVICE

AND NOW, on this day, I hereby certify that I have caused to be served a copy of the foregoing **Answer with New Matter and Cross-Claim of Defendant Boy Scouts of America to Plaintiff's Complaint** by electronic filing upon the following:

Stewart J. Eisenberg, Esquire
Joshua B. Schwartz, Esquire
Eisenberg, Rothweiler, Winkler,
Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA  19103
215-546-6636

*Counsel for Plaintiffs*

Joseph G. Price, Esquire
Corbett Price, LLC
612 Spruce Street
Scranton, PA 18503

*Counsel for Defendant Paul Antosh*

Dated: October 8, 2019

35940673.6 10/08/2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By:     __/s/ *Joseph F. O'Dea*_____
Joseph F. O'Dea, Jr. (I.D. No. 48370)
Joshua W. B. Richards (I.D. No. 204315)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA  19102
215-972-7777
Joseph.Odea@saul.com
Joshua.Richards@saul.com

*Attorneys for Boy Scouts of America*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing *Answer With New Matter and Cross-Claim of Defendant Boy Scouts of America To Plaintiff's Complaint* complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that requires filing confidential information and documents differently than non-confidential information and documents.

Dated: October 8, 2019                    /s/ *Joseph F. O'Dea*

                                          Joseph F. O'Dea

Case ID: 190800135